IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re: | ) |
| | ) |
| Zachair, Ltd., | ) Case No.: 20-10691-TJC |
| | ) |
| Debtor. | ) Chapter 11 |
| | ) |

**DEBTOR'S MOTION TO EXTEND THE EXCLUSIVITY PERIODS
AND EMERGENCY REQUEST FOR ENTRY OF BRIDGE ORDER**

Zachair, Ltd. (the "Debtor"), the debtor and debtor in possession in the above captioned case, files this *Motion to Extend the Exclusivity Periods and Emergency Request for Entry of Bridge Order* (the "Motion") seeking entry of an order extending by an additional 120 days the period in which the Debtor has the exclusive right to propose and file a plan of reorganization pursuant to 11 U.S.C. § 1121(b) and the period in which the Debtor has the exclusive right to solicit acceptance of such plan pursuant to 11 U.S.C. § 1121(c)(3), without prejudice to seeking further extensions. The Debtor further requests the immediate entry of a bridge order granting the foregoing relief pending final resolution of this Motion. In support thereof, the Debtor states as follows:

**Jurisdiction**

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

2. The relief sought by the Motion is based upon 11 U.S.C. § 1121(d).

**The Chapter 11 Case**

3. On January 17, 2020 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is

1

continuing in possession of its property and the management of its business as a debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. The Debtor is a Maryland corporation which owns an assemblage of real property totaling 423.45 acres located in Prince George's County, Maryland (the "Property"). The Property historically has been operated as an airfield known as Hyde Field (the "Airfield"). The Airfield generates revenue for the Debtor through the rental of hanger and parking spaces for aircraft.

5. In addition to the Airfield, portions of the Property not used in Airfield operations previously were mined for sand and gravel. The cavities created by the sand and gravel mining were used for surcharge fill operations, whereby the Debtor contracted for the acceptance of clean fill dirt removed from other third-party sites in exchange for a fee. Surcharge operations were suspended in March 2020.

### Relief Requested

6. The period in which the Debtor has the exclusive right to file a plan of reorganization pursuant to 11 U.S.C. § 1121(b) (the "Exclusive Proposal Period") currently expires on May 16, 2020. Likewise, the period in which the Debtor has the exclusive right to solicit acceptance of a plan pursuant to 11 U.S.C. § 1121(c)(3) (the "Exclusive Solicitation Period," together with the Exclusive Proposal Period, the "Exclusivity Periods") currently expires on July 15, 2020. By this Motion, the Debtor seeks entry of an Order extending each of the Exclusivity Periods by an additional 120 days, without prejudice to seeking further extensions.

**Basis for Relief**

7. Under section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a Chapter 11 plan in the first 120 days following the commencement of a Chapter 11 case. If a debtor files a plan during this exclusive filing period, section 1121(c)(3) of the Bankruptcy Code provides a debtor with 60 days following the expiration of the exclusive filing period (or 180 days following the commencement of the case) to solicit acceptances of a plan.

8. Section 1121(d) of the Bankruptcy Code provides a debtor with a mechanism to extend the Exclusivity Periods, stating that "[o]n request of a party in interest made . . . and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1). The ultimate decision to extend a debtor's exclusive periods rests within the discretion of the bankruptcy court. *See First Am. Bank of N.Y. v. S.W. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965–66 (D. Del. 1986) (finding the authority to extend debtor's exclusivity within the discretion of the bankruptcy court).

9. Although the Bankruptcy Code does not define the term "cause," the legislative history provides that it is intended to be a flexible standard to balance the competing interests between a debtor and its creditors. See H.R. Rep. No. 95-595, at 231–32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference of other parties in interest).

10. Congress built flexibility into section 1121 of the Bankruptcy Code to give the debtor an adequate opportunity to stabilize its business operations at the outset of its Chapter 11 case and to negotiate an effective plan of reorganization with its creditors. *Gaines v. Perkins (In*

3

*re Perkins)*, 71 B.R. 294, 297–98 (W.D. Tenn. 1987) (noting that Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization); *In re Newark Airport/Hotel Ltd. P'ship.*, 156 B.R. 444, 451 (Bankr. D. N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies).

11. In determining whether cause exists to extend the Exclusivity Periods, a court may consider a variety of factors to assess the totality of circumstances in each case. *See In re Dow Corning Corp.*, 208 B.R. 661, 664, 670 (Bankr. E.D. Mich. 1997). These factors include: (i) the size and complexity of the debtor's case; (ii) the debtor's good faith progress towards resolving issues facing the estate; (iii) whether the debtor is seeking exclusivity to pressure creditors "to accede to [the Debtors'] . . . demands"; (iv) whether the debtor has demonstrated reasonable prospects for filing a viable plan; and (v) whether the debtor has progressed in negotiations with creditors. *See, e.g.*, *In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (listing the above factors); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409–10 (E.D.N.Y. 1989) (listing certain of the above factors); *In re Grand Traverse Dev. Co. Ltd. P'ship.*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992) (same); *In re Gen. Bearing Corp.*, 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992) (same); *In re Southwest Oil Co. of Jourdanton, Inc.*, 84 B.R. 448, 451–54 (Bankr. W.D. Tex. 1987) (same). Other factors the court may consider are: (vi) the necessity of sufficient time to negotiate and prepare adequate information; (vii) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (viii) whether the debtor has made progress negotiating with creditors, and (ix) the length of time the case has been pending. *See In re Service Merchandise Co.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000).

12. For the reasons set forth below, the Debtor submits that the above factors support the relief requested.

### I. Factor I: The Size and Complexity of the Debtor's Case

13. While the Debtor is not of massive size, its case is sufficiently complex for an extension of exclusivity to be appropriate. The Debtor intends to market and sell a 423.45 acre parcel of property, which is a significant undertaking that can require a lengthy period of time to complete. *See In re Express One Int'l*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (it is not "necessary to be a Texaco, Johns-Manville Forest Products, or Ames Department Stores to be considered 'large and complex' within the meaning of section 1121.").

14. The history of the Property demonstrates that selling a 423 acre tract of land is time-consuming. In 2010, the Debtor engaged a broker to sell the Property. A contract of sale was entered in 2013. Closing under that contract did not occur, and the Debtor eventually terminated the contract. These events led to disputes that are pending in the Circuit Court for Prince George's County, Maryland. The Debtor believes that the Property can be sold in this Bankruptcy Case far more promptly than occurred previously. However, the marketing, due diligence, and zoning activities that are likely to be required mean that more time is needed than the time initially available under Sections 1121(b) and (c).

### II. Factors II, VII and VIII: The Existence of Good Faith Progress Towards Reorganization, Whether The Debtors Have Demonstrated Reasonable Prospects For Filing A Viable Plan, and Whether the Debtors have Made Progress Negotiating with Creditors

15. The Debtor is making progress towards resolution of this case. In evaluating whether good faith progress has been made towards reorganization, the question is whether the Debtors are further along from where they started. *Dow Corning*, 208 B.R. at 665.

16. The Debtor filed this bankruptcy case primarily due to its inability to continue to fund costly and protracted litigation over the Property. Since the commencement of the case, the Debtor has focused its limited resources on selling its primary asset, the Property, to satisfy its obligations to creditors. It has made substantial progress towards this goal. The Debtor interviewed four real estate brokers, and has selected the broker it intends to engage. The engagement agreement with the Debtor's proposed broker presently is in circulation for execution. The Debtor expects to file an application to employ the broker within several business days.

17. The Debtor engaged an appraiser to prepare an opinion of value with respect to the Property. Based on recent discussions with the appraiser, a report is expected within one to two weeks. Based on those discussions, and the Debtor's understanding regarding the total claims in the case, it appears that the Property, if marketed properly, will generate sufficient proceeds to pay all creditors in full, to pay all taxes resulting from the sale, and to provide for a meaningful distribution to the Debtor's equity owners.

18. In addition to implementing its plans to market and sell the Property, the Debtor and its professionals have taken substantial efforts to preserve the Property and to comply with regulatory requirements. The Debtor and its professionals met with representatives of the Maryland Department of the Environment. Based on the discussions with the MDE, the Debtor determined to cease its surcharge operations. The Debtor has worked with its contractor, Metro Earthworks, to ensure that the Property is stabilized and maintained in accordance with legal requirements.

19. The Debtor has undertaken to reorganize its airport operations to ensure that such operations can be conducted in accordance with law, and on a positive cash flow basis. To this

end, the Debtor entered into a contract with its airport manager and submitted a motion for approval of such contract to the Court. Such motion remains pending.

20. Prior to and continuing after the commencement of this case, the Debtor undertook a thorough review of its expenses. As a result, the Debtor cut its expense structure massively. The Debtor entered into a consensual cash collateral order with its lender, Sandy Spring Bank. The Debtor has complied with such order and presently is discussing terms of a modified budget for continued use of cash collateral.

21. Prior to the commencement of this case, little progress toward settlement of the litigation between the Debtor and PD Hyde Field LLC had been made. Following the Petition Date, and particularly during the past 30 days, discussions have accelerated. The disputes have not been resolved yet, but progress is being made. Maintaining exclusivity is essential to ensuring that the Debtor has an even playing field. Termination of exclusivity would disrupt negotiations and create an untenable situation for the Debtor.

### III. Factor III: The Debtors are Not Seeking an Extension to Pressure Creditors to Accede To The Debtor's Reorganization Demands

22. The Debtor is not seeking to pressure creditors to "accede to the Debtor's reorganization demands" in requesting an extension of the Exclusivity Periods. Indeed, the Debtor has made few, if any, demands of its creditors. As mentioned above, the Debtor continues to negotiate resolution of the largest disputed claim. The Debtor is negotiating in good faith and believes that maintaining the balance and even playing field afforded by exclusivity will be essential to a fair resolution of the disputes.

**IV.     Factors 4 and 6: The Necessity of Sufficient Time to Negotiate a Plan of Reorganization and the Existence of an Unresolved Contingency**

23.     The requested extension of the Exclusivity Periods will allow the Debtor to continue its diligent efforts to market and sell the Property, which presents the best possible path toward confirming a viable plan that provides a meaningful distribution to creditors in this case.

24.     At this stage, the sale of the Property is a significant unresolved contingency the outcome of which will determine the ultimate path of this case. Permitting creditors to file competing plans of reorganization while the Debtor is focusing its efforts on the marketing and sale of the Property would cause unnecessary distraction and divert the Debtor's limited resources, hindering the prospects of achieving a successful resolution of this case.  Further, any competing plan proposed by creditors which does not involve a sale of the Property after a thorough marketing process will not maximize the value of the Property for the benefit of all creditors.  The Debtor's current marketing and sale efforts, which it seeks further time to complete, therefore are in the interest of all parties in this case.

25.     Allowing the Debtor to market and sell the Property, either prior to or in conjunction with the filing of a plan of reorganization, presents the best possible path to confirming a viable plan that provides for a meaningful distribution to creditors in this case.

26.     These contingencies weigh in favor of an extension of the Exclusivity Periods. *See In re R&G Props.*, 2009 Bankr. LEXIS 221 (Bankr. D. Vt.) (Debtor's difficulty in obtaining appraisal required for exit financing necessitated extension of exclusivity); *see also In re AMAP Sales & Collision, Inc.*, 403 B.R. 244, 250 (Bankr. E.D.N.Y. 2009) (uncertainty concerning large amount of claims against Debtor weighed in favor of extension of exclusivity); *In re Lionel, LLC*, 2007 Bankr. LEXIS 2652 at *18 (Bankr. S.D.N.Y.) (necessity of fixing amount of claims against Debtor weighed in favor of extension of exclusivity).

8

V. **Factor IX: Length of Time Case Has Been Pending**

27. This case has been pending for four months, which is well short of the maximum length to which the Court can extend the Exclusivity Periods under Section 1121 of the Bankruptcy Code.

28. Thus, the requested extension is reasonable given the continuing progress the Debtor has made toward resolution of this case.

29. For these reasons, the Debtor believes that good cause exists to extend the Exclusivity Periods in this case for an additional 120 days, through and including September 14, 2020 as to the Exclusive Proposal Period and through and including November 12, 2020 as to the Exclusive Solicitation Period.

**Request for Entry of Bridge Order**

30. By this Motion, the Debtor also requests the entry of a bridge order substantially in the form attached hereto as Exhibit A (the "Bridge Order") extending the Exclusivity Periods through and including that date on which the Court enters an order on this Motion.

31. Local Rule 9013-1(b)(3) ordinarily would require that any responsive pleadings be filed within fourteen days of service of this Motion. But, on April 10, 2020, the United States District Court for the District of Maryland (the "District Court") issued *Standing Order 2020-07, Court Operations Under the Exigent Circumstances Created by COVID-19*, Misc. No. 20-146 ("SO 2020-07") in response to the continuing COVID-19 pandemic. SO 2020-07 provides that all filing deadlines originally set to fall between March 16, 2020, and June 5, 2020, are extended by eighty-four days, and any hearings scheduled to occur on or before June 5, 2020, are postponed. While the Bankruptcy Court's Administrative Order 20-09 excepted certain enumerated motions from SO 2020-07, motions to extend the Exclusivity Periods are

not included in SO 2020-07 and thus apparently remain subject to the eighty-four day extension. The deadline to object to the Motion thus falls ninety-eight days after service of notice thereof.

32. The Debtor believes that the filing of this Motion prior to the expiration of the Exclusivity Periods is sufficient to extend such periods pending the Court's ruling on this Motion. *See In re Michigan Produce Haulers, Inc.*, 525 B.R. 408 (Bankr. W.D. Mich. 2015) ("The Debtor's request for extension of the 180–day portion of the exclusivity period was timely made prior to the expiration of that time period."). But, out of an abundance of caution due to the extended response deadline pursuant to SO 2020-07 and the continued uncertainty created by the ongoing pandemic, the Debtor requests that the Court enter the Bridge Order making clear that the Exclusivity Periods are extended through and including a date that is at least ten (10) business days following the date on which the Court enters an order on this Motion.

## Notice

33. Notice of this Motion has been given to the following parties or their counsel: (i) the Office of the United States Trustee; (ii) all creditors, and (iii) all parties specifically requesting notice in this case. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtor respectfully requests that the Court (1) enter a Bridge Order substantially in the form attached hereto as Exhibit A extending the Exclusivity Periods pending the Court's entry of an order on this Motion; and (2) enter a final order substantially in the form attached hereto as Exhibit B (i) granting the Motion, (ii) extending the period in which the Debtor has the exclusive right to propose and file a plan of reorganization pursuant to 11 U.S.C.

§ 1121(b) to September 14, 2020, and (iii) extending the period in which the Debtor has the exclusive right to solicit acceptances to such plan pursuant to 11 U.S.C. § 1121(c)(3) to November 12, 2020; and (3) grant such other and further relief as the Court deems just and proper.

Dated: May 1, 2020                           ZACHAIR, LTD.

*/s/ Bradford F. Englander*
Bradford F. Englander, Esq., Bar No. 11951
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Facsimile: (703) 280-3370
Email: benglander@wtplaw.com

*Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

   I hereby certify that on May 1, 2020, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing Motion will be served electronically by the Court's CM/ECF system on the following parties:

- Bradford F. Englander benglander@wtplaw.com, rodom@wtplaw.com
- Bruce W. Henry bwh@henrylaw.com, kmo@henrylaw.com;jtm@henrylaw.com;mbp@henrylaw.com
- Nicole C. Kenworthy bdept@mrrlaw.net
- Michael J. Lichtenstein mjl@shulmanrogers.com, tlockwood@shulmanrogers.com
- Jeffery Thomas Martin jtm@henrylaw.com, mbp@henrylaw.com
- M. Evan Meyers bdept@mrrlaw.net
- L. Jeanette Rice Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- Jeffrey L. Tarkenton Jeffrey.tarkenton@wbd-us.com, karla.radtke@wbd-us.com,pascal.naples@wbd-us.com,morgan.patterson@wbd-us.com,matthew.ward@wbd-us.com
- US Trustee - Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV
- Jacob Christian Zweig jzweig@evanspetree.com, crecord@evanspetree.com

   I hereby further certify that on May 1, 2020, a copy of the foregoing *Motion* was also served by first-class mail, postage prepaid, on the parties listed on the attached service list.

                 */s/ Bradford F. Englander*
                 Counsel