IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Zachair, Ltd., | ) | Case No.: 20-10691-TJC |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

**REPLY IN SUPPORT OF DEBTOR'S MOTION
TO EXTEND THE EXCLUSIVITY PERIODS**

Zachair, Ltd. (the "Debtor"), the debtor and debtor in possession in the above captioned case, files this reply (the "Reply") to PD Hyde Field LLC's ("PD Hyde") Opposition (the "Objection") to the *Debtor's Motion to Extend the Exclusivity Periods and Emergency Request for Entry of Bridge Order* (the "Motion")[1]. In support thereof, the Debtor states as follows:

**Preliminary Statement**

The sole objector to the Debtor's request to extend the exclusivity periods is PD Hyde Field LLC ("Hyde"). Hyde's motive for opposing exclusivity is obvious: it wants to seize ownership of the Debtor's 423.45-acre real estate (the "Property") for a fraction of its value. Hyde is a single-purpose entity created for the specific purpose of acquiring and developing the Property, and has admitted that acquiring the Property on the cheap is exactly what it wants to do. Hyde is a competing purchaser.

Absent interference with the sale process, the Property can and will be sold for enough to pay all creditors – secured and unsecured – in full with interest, and return substantial profits

---

[1] All capitalized terms not otherwise defined herein will have the meaning ascribed to them in the Motion.

1

to the Debtor and its equity owners.  The appraised as-is fair market value of the Property is between $19.3 and $22.1 million, which far exceeds the total claims filed and scheduled in the case – including Hyde's disputed claim.

Extending exclusivity will not impede or delay the sale of the property.  The Debtor is highly motivated to sell the Property as quickly as is reasonably possible.  The Debtor is owned by Dr. Nabil Asterbadi, a 74-year-old retired ob/gyn, and his wife, Maureen.  The Property is their retirement plan.  Pre-petition, the Property was their principal source of revenue.  Post-petition, Dr. Asterbadi and his wife have not received any compensation from the Debtor.  They want the Property to be sold as promptly as is reasonably possible, so that they can enjoy their retirement.

Hyde argues that settlement discussions have been "unsuccessful" and "unfruitful," and suggests that the Debtor is using exclusivity to obtain settlement leverage.  Hyde fails to acknowledge that the parties spent nearly four months in settlement discussions and made substantial progress in narrowing their disputes.  Hyde terminated its participation in settlement discussions, apparently because of a change of business plans and personnel.  The Debtor hopes that when the dust settles and Hyde's new management becomes familiar with the project, Hyde will come back to the table.

Despite the COVID-19 pandemic, which has led other chapter 11 cases to falter and even be "mothballed" indefinitely, the Debtor is proceeding toward a sale of the Property and the payment of all creditors in full.  The Debtor is proceeding rapidly and intends to continue and complete the sale and plan process as quickly as is reasonably possible.  The extension of exclusivity will promote the Debtor's exit from bankruptcy.  Termination of exclusivity, on the other hand, would disrupt the sale process.

**Argument**

**The Debtor has made substantial progress during the early stages of this case.**

Hyde contends that the Debtor has done nothing in this case other than file an application to engage a broker. *See* Opposition ¶ 10. Hyde ignores the clear facts set forth in the Motion and distorts the Debtor's activities and progress to date, including nearly four months of negotiations with Hyde.

As a threshold matter, courts have recognized that a chapter 11 debtor's engagement of professionals to appraise and market its property in itself are material steps to advance the chapter 11 case and thus can justify continuance of exclusivity. *See In re Hoffinger Indus., Inc*., 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) (affirming a decision to extend exclusivity and finding cause to extend when the Debtor "hired expert appraisers approved by the court to appraise equipment as well as real estate."). But factually, the Debtor has made much more progress than merely filing an application to employ a broker.

The application to engage a broker was the result of more than two months of meetings and negotiations with three broker candidates. As discussed below, the Property is not a simple cookie-cutter tract of real estate. It is a complicated development project, and the selection of a broker required meaningful consideration and study by each of the candidates. The engagement process was completed promptly under the circumstances. As a byproduct of the Debtor's selection of Fraser Forbes as its broker, the Debtor also procured a waiver by Fraser Forbes of its proof of claim, which grew out of the failed sale to Hyde under the 2013 purchase agreement.

This resolution, which the Court approved, has avoided a potential dispute over what could have been a claim in excess of $700,000. Hyde ignores this material positive development.

In addition to selecting and completing the engagement of a broker, the Debtor engaged an appraiser, William C. Harvey. *See* clerk's docket nos. 26 and 47. The Debtor worked extensively with Mr. Harvey, who has completed his expert report. Mr. Harvey has opined that the fair market value of the Property is between $19.3 and $22.1 million. A sale in this range would generate sufficient funds to pay in full all creditors (including Hyde's disputed claim), to pay capital gains taxes on the sale, and to return substantial returns to the Debtor's equity owners.

The Debtor has negotiated and entered into two cash collateral orders with its lender, Sandy Spring Bank. The fact that the Debtor obtained agreement with its lender without the need for litigation is a credit to the Debtor and its professionals; not a factor to be disregarded as a non-event.

The Debtor and its counsel have worked vigorously during the early stage of this case to manage the condition and use of the Property. Hyde's chief excuse for failing to close on the acquisition of the Property was that the Debtor continued to import fill dirt on to the Property. The fill or "surcharge" operations were a major source of revenue for the Debtor ($62,000 per month). The Debtor was advised in early March by the Maryland Department of the Environment that the surcharge operations must cease. The Debtor worked with its consultants and counsel to ensure compliance with MDE's directives, to stabilize the final surcharge grade in the area of fill operations, to explore alternatives that protect the value of and marketability of the Property, and to permit the Debtor to proceed expeditiously with its sale.

The Debtor and counsel have worked closely with the Debtor's airport operations manager, and early on re-negotiated the terms of his engagement.  The Debtor filed a motion for approval of the engagement, which the Court approved.  *See* clerk's docket nos. 44, 45 and 71.  The airport manager is integrally involved in monitoring the condition of the Property, and the Debtor's compliance with its obligations with respect to sediment control.  The Debtor, the manager and counsel, communicate daily regarding the condition of the Property.  Their efforts have been rewarded with positive inspection reports by MDE.

The Debtor's progress to date has occurred despite the obstacles presented by the COVID-19 pandemic.  Other chapter 11 bankruptcy cases have ground to a halt because of the pandemic, and some courts even have stayed the cases because they could not move forward.  *See*, *e.g.*, <u>Order (i) Establishing Temporary Procedures and (II) Granting Related Relief</u>, *In re Craftworks Parent, LLC*, chapter 11 case no. 20-10475-BLS, clerk's docket no 217 (Bankr. D. Del. March 30, 2020) (approving case management procedures to address debtor's cessation of business on account of COVID-19 pandemic); <u>Order Temporarily Suspending The Debtors' Chapter 11 Cases Pursuant To 11 U.S.C. §§ 105 And 305</u>, *In re Modell's Sporting Goods, Inc.*, chapter 11 case no. 20-14179-VFP, clerk's docket no. 166 (Bankr. D.N.J. March 27, 2020).  As these courts have recognized (and as is obvious to virtually everyone), the pandemic was unexpected and unforeseen by the business and legal communities, and has resulted in a world-wide state of emergency.  As noted by the Bankruptcy Court for the Eastern District of Virginia, "the world has changed since the filing of these chapter 11 cases."  *See* <u>Memorandum Opinion</u>, *In re Pier 1 Imports, Inc.*, chapter 11 case no. 20-30805-KRH, clerk's docket no. 637, at page 2 (Bankr. E.D. Va. May 10, 2020).

The pandemic has resulted in procedural delays in this Court. The District Court imposed an 84-day suspension of filing deadlines. *See* District Court Standing Order 2020-07. This Court modified the 84-day extension for certain motions and applications. *See* Bankruptcy Court Administrative Order 20-09 Setting Deadlines For Certain Motions And Applications ("AO 20-09"). Notably, AO 20-09 did not modify the 84-day extension with respect to motions to extend exclusivity. But rather than resting on the 84-day extension, at the hearing on June 2, 2020, Debtor's counsel brought the matter to the Court's attention and requested entry of a scheduling order with respect to the Motion. Again, the Debtor is not looking to slow down progress in the case, but rather is taking affirmative steps to keep moving forward despite hurdles that all of us face.

Remarkably, Hyde's Opposition fails to acknowledge the impediments that the pandemic has imposed; the words, "COVID" and "pandemic" are absent from the Opposition. Thankfully, the Debtor does not operate restaurants or retail stores, and its business is not crippled by the pandemic. Most certainly, the Debtor is not hiding behind COVID-19 or seeking to stay any activities on account of this international emergency. The Debtor continues moving forward with this case.

**This Chapter 11 case is not simple.**

Hyde characterizes this as a simple chapter 11 case that does not merit an extension of exclusivity. This assertion is contrary to fact.

The sale of the Property is the centerpiece of this case. The sale itself is not a simple task. The highest and best use for the Property is as a residential development. Preparing to sell the Property requires that the Debtor's broker study the Property and the market, and formulate a plan for the sale, and to prepare marketing materials. The process also may include

6

conducting tests and studies, such as obtaining updated environmental and geotechnical studies and reports. Engineering analyses and plans also may be useful to facilitate the sale. Selling a large tract of land that is intended for residential development also will require the Debtor to obtain advice of land use counsel in Prince George's County.

Hyde spent the better part of five years (and allegedly paid more than $5,000,000) to obtain studies, engineering and legal work necessary to develop the Property. If Hyde genuinely were concerned about delay, it would share its work product to expedite the sale process. But Hyde has not agreed to do so.

The engineers and consultants who worked for Hyde (and previously for the Debtor) have substantial familiarity with the Property. They are not in a position to share their work product because Hyde has instructed them not to share this information. Some of the engineering work and other testing will need to be redone because of Hyde's position.

Further, prior to the contract with Hyde, the Debtor had relied on land use counsel who is intimately familiar with the Property and Prince George's County land use issues. In connection with the 2013 purchase agreement, the Debtor consented to Hyde engaging that lawyer to assist in the zoning process. That lawyer no longer is available to the Debtor because of conflicts with Hyde. The Debtor is in discussions with replacement counsel to assist in the sale and development process. But again, if Hyde genuinely were concerned about moving the process forward expeditiously, Hyde would waive any conflict so that the Debtor could take advantage of counsel's deep expertise.

Despite these impediments, the Debtor and its team are moving forward expeditiously. Indeed, promptly following the Court's entry of the order approving the engagement of Fraser Forbes, the entire Fraser Forbes team, along with the Debtor's principal and staff, counsel, and

7

other consultants, met at the Property. The Fraser Forbes team has been active daily since its engagement, aggressively preparing for marketing and sale of the Property. Conference calls, meetings and Zoom calls are taking place daily (even on weekends) among Fraser Forbes, various consultants, engineers, bankruptcy counsel and prospective land use counsel. A data room containing all relevant documents has been established. Initial discussions with possible stalking horse bidders have commenced. The assertion that this is a simple case that can be resolved without extending exclusivity is not realistic.[2]

**Terminating Exclusivity would have disastrous consequences for the sale process**

Courts look to several factors to determine if extending exclusivity is warranted, such as (1) whether the debtor is making good faith progress toward resolving issues facing the estate; and (2) whether the debtor has progressed in negotiations with creditors. *See In re Dow Corning Corp.*, 208 B.R. 661, 664-670 (Bankr. E.D. Mich. 1997); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 588 (Bankr. S.D.N.Y. 2006), clarified on denial of reconsideration, No. 02-41729, 2006 WL 2927222 (Bankr. S.D.N.Y. Oct. 10, 2006). Courts also look to whether terminating exclusivity will move the case forward. *Dow Corning*, 208 B.R. at 669 (denying the Committee's motion to terminate exclusivity and holding that "[w]hen the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors."); *see also In re Adelphia Commc'ns Corp., 352 B.R. 578, 590*

---

[2] The Motion cites and relies upon the complexity of the case and the marketing process for the Property as grounds for its extension of exclusivity. *See, e.g.,* Motion at ¶¶ 13, 14, 16, 17. Curiously, Hyde ignores these facts and seizes on an inapt assertion that "pending litigation" is not sufficient to justify continued exclusivity. Nowhere in the Motion does the Debtor rely on pending litigation to support an extension of exclusivity. Hyde sets up, and proceeds to attack, this "straw man" argument in order to avoid addressing the actual bases set forth by the Debtor, which strongly support an extension of exclusivity in this case.

8

(Bankr. S.D.N.Y. 2006), clarified on denial of reconsideration, No. 02-41729, 2006 WL 2927222 (Bankr. S.D.N.Y. Oct. 10, 2006) (agreeing with *Dow Corning*, and stating that "the test is better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case.").

The Debtor has commenced a process to sell its Property. Termination of exclusivity (or the failure to extend it), would crush the Debtor's sale efforts. Any prospective purchaser needs to know that its efforts and expenses in studying the Property, negotiating with the Debtor, and documenting a possible sale will not be wasted. Absent an extension of exclusivity, Hyde would be in a position to file its own creditor plan, and attempt to acquire the Property without reasonable marketing or payment of fair value. Ending exclusivity would sow uncertainty among other prospective purchasers regarding the Debtor's ability to close a sale. The terms and conditions for a sale would be unclear, and the Debtor's sale process likely would grind to a halt. If Hyde — or any other creditor — were allowed to propose a competing plan during the marketing process, the Debtor would be forced to shift its focus from the marketing and sale of the Property to the competing plans. This would negatively impact a successful sale process and stymie any forward progress. *See In re Borders Grp., Inc.*, 460 B.R. 818, 824 (Bankr. S.D.N.Y. 2011) (granting an extension of exclusivity and noting that "the sale process is likely to proceed most efficiently if the Debtors retain exclusivity and can manage the sale process"); *In re Lehigh Valley Prof'l Sports Club, Inc.*, No. 00-11296DWS, 2000 WL 290187, at *8 (Bankr. E.D. Pa. Mar. 14, 2000), (denying a creditor's motion to terminate exclusivity when doing so would remove incentives for parties to work with the debtor or result in the forfeiture of a valuable asset). Extending exclusivity ensures that an open and fair sale process will proceed, that the value of the Property will be maximized, and that all creditors (including

Hyde, to the extent its claim ultimately is allowed) would proceed. The Court should not end exclusivity so that Hyde can push its own agenda to the detriment of the Debtor's successful reorganization.

An open and fair sale process may not be what Hyde desires, but an open and fair process does not prejudice Hyde in any way. Hyde is welcome to bid and, if it is the high bidder, acquire the Property.

**The Debtor has negotiated in good faith to resolve Hyde's disputed claim**

Hyde states that settlement discussions have failed, and implies they should be given no weight. *See* Opposition ¶ 4. Hyde ignores important facts. In reality, the Debtor has labored consistently to resolve its dispute with Hyde. It seems that Hyde, on the other hand, used the settlement process as a tool to advance its acquisition goals. Contrary to the assertion that settlement discussions were "unfruitful," the parties spent nearly four months negotiating and made material progress in narrowing their disputes.

Following the Petition Date, bankruptcy counsel for the Debtor and Hyde had discussions and exchanged a series of proposals and counterproposals regarding possible resolutions of the dispute. In each stage of these discussions, the Debtor provided detailed term sheets. The Debtor sent its first formal settlement proposal to Hyde on February 4, 2020, and the parties exchanged counterproposals until May 18, 2020. During this time, they succeeded in materially narrowing the amount at issue. On May 18, 2020, Hyde abruptly terminated discussions without providing a counterproposal of any sort. Hyde explained that there had been a change in responsible personnel, and that Hyde would provide a purchase agreement

proposing to be the stalking horse purchaser. As of today, no draft purchase agreement (or any other settlement communication) has been received.[3]

The Debtor has not used the exclusivity period as a sword to obtain settlement leverage. The Debtor has operated in good faith to resolve disputes. Certainly, Hyde is not required to agree to a settlement. But it cannot blame the Debtor for the status of settlement discussions, or use that status as a reason to deny the requested extension of exclusivity. To the contrary, the status of settlement discussions strongly supports the conclusion that the Debtor needs an extension to maintain a level playing field, especially because Hyde is acting as a prospective purchaser of the Property. *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 410 (E.D.N.Y. 1989) (affirming the exclusivity extension where the creditors were reluctant to negotiate and "the recalcitrance of the creditors and their intent to liquidate rather than negotiate with the debtor to agree upon an equitable plan of reorganization" created delay); *In re Perkins*, 71 B.R. 294, 299 (W.D. Tenn. 1987) (extending exclusivity and noting "that certain underlying proceedings involving some of the creditors opposing the plan had been extremely time consuming" creating cause for extension); *In re Grand Traverse Dev. Co. Ltd. P'ship*, 147 B.R. 418, 420–21 (Bankr. W.D. Mich. 1992) (denying a creditor's motion to shorten exclusivity because the creditor's aggressive litigation stance cannot constitute cause).

## Conclusion

Ample cause exists to extend exclusivity, including:

---

[3] Although Hyde's game plan to acquire the Property on the cheap appears evident from its actions, Hyde has not said that it is ready to proceed with its own plan. Nowhere in its opposition does Hyde say it is prepared to file a plan. This in itself is grounds to overrule Hyde's opposition. *See In re Border's Group, Inc.*, 460 B.R. 818, 827 (Bankr. S.D.N.Y. 2011) (denying creditors' committees request to terminate exclusivity solely to give committee the option to file its own plan sometime in the future).

11

- The sale of the Property will result in the payment in full of all creditors;

- The Debtor is seeking to sell the Property and has retained professionals to help guide the process and assist the Debtor;

- The Debtor is moving expeditiously toward a sale, and thus good faith progress toward reorganization exists;

- The value of the Property and the Debtor's progress toward a sale of the Property demonstrate the Debtor has reasonable prospects (indeed a strong likelihood) of filing a viable plan;

- Lapse of exclusivity would burden and disrupt the sale process;

- Obtaining a contract of sale is an important step in formulating and confirming a disclosure statement and a plan of reorganization;

- The sole objector has a disputed claim and an ulterior motive for opposing the extension of exclusivity;

- The Debtor has negotiated in good faith to resolve disputes, has not pressured Hyde or any other creditor to submit to the Debtor's reorganization demands, and remains willing to renew settlement discussions with Hyde; and

- Maintenance of exclusivity will preserve a level playing field, and will enhance prospects for the consensual resolution of disputes.

For these reasons, and such additional grounds as may be presented during the hearing scheduled for July 22, 2020, the Debtor believes that cause exists to continue exclusivity.

**WHEREFORE**, the Debtor respectfully requests that the Court enter its order substantially in the form attached to the Motion (i) granting the Motion, (ii) extending the period in which the Debtor has the exclusive right to propose and file a plan of reorganization pursuant

to 11 U.S.C. § 1121(b) to September 14, 2020, and (iii) extending the period in which the Debtor has the exclusive right to solicit acceptances to such plan pursuant to 11 U.S.C. § 1121(c)(3) to November 12, 2020; and grant such other and further relief as the Court deems just and proper.

Dated: July 2, 2020  WHITEFORD TAYLOR & PRESTON LLP

/s/ *Bradford F. Englander*
Bradford F. Englander, Esq., Bar No. 11951
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Facsimile: (703) 280-3370
Email: benglander@wtplaw.com

*Counsel for the Debtor*

**Certificate of Service**

I hereby certify that on July 2, 2020, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing document will be served electronically by the Court's CM/ECF system on the following parties:

- Bradford F. Englander    benglander@wtplaw.com, rodom@wtplaw.com
- Bruce W. Henry    bwh@henrylaw.com, kmo@henrylaw.com;jtm@henrylaw.com;mbp@henrylaw.com
- Patrick J. Kearney    pkearney@sgrwlaw.com, jnam@sgrwlaw.com
- Nicole C. Kenworthy    bdept@mrrlaw.net
- Michael J. Lichtenstein    mjl@shulmanrogers.com, tlockwood@shulmanrogers.com
- Jeffery Thomas Martin    jtm@henrylaw.com, mbp@henrylaw.com
- M. Evan Meyers    bdept@mrrlaw.net
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- Jeffrey L. Tarkenton    Jeffrey.tarkenton@wbd-us.com, karla.radtke@wbd-us.com,pascal.naples@wbd-us.com,morgan.patterson@wbd-us.com,matthew.ward@wbd-us.com
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Jacob Christian Zweig    jzweig@evanspetree.com, crecord@evanspetree.com

I hereby further certify that on July 2, 2020, a copy of the foregoing document was also served by first-class mail, postage prepaid, on the parties listed in the attached service list:

                                                             */s/ Bradford F. Englander*
                                                            Counsel

American Express
PO Box 1270
Newark, NJ 07101-1270

Arlyn Construction Co
Robert Fry
1005 Dumfries St.
Oxon Hill, MD 20745

ATEC Musical Instrument Service
7349 Old Alexandria Ferry Rd
Clinton, MD 20735

Beaty, Christina T.
127 Pierce St NW
Washington, DC 20001

Biesiadecki, Jan S.
14421 Captain John Smith Dr
Accokeek, MD 20607-9745

Bond Safeguard Insurance Co
Old Hickory Insurance Agency
PO Box 1864
Indianapolis, IN 46206-1864

Bradley, James
7900 Old Falls Rd
Mc Lean, VA 22102-2415

Bristow, S. Michael
1600 S Eads St #1102 N
Arlington, VA 22202

Buchner, Mark
5358 Ravensworth Road
Springfield, VA 22151

Buchner, Mark
5358 Ravensworth Rd
Springfield, VA 22151

Callan, Brian P.
1727 Crestwood Dr.
Alexandria, VA 22302

Clinton Aero Maintenance
10501 Piscataway Rd.
Clinton, MD 20735

Clinton Fence
2630 Old Washington Rd
Waldorf, MD 20601

Comcast
c/o Brian L. Roberts
Comcast Center
1701 John F. Kennedy Blvd.
Philadelphia, PA 19103

Comptroller of Maryland
Revenue Administration Division
110 Carroll Street
Annapolis, MD 21411-0001

Dewberry Consultants LLC
PO Box 821824
Philadelphia, PA 19182-1824

Dewberry Engineers Inc.
2101 Gaither Road, Suite 340
Rockville, MD 20850

ECS Mid-Atlantic
14026 Thunderbolt Pl., Suite 100
Chantilly, VA 20151

Fornshell, John A.
6911 Quander Rd.
Alexandria, VA 22304

Fraser Forbes Real Estate Services
7811 Montrose Road, Suite 500
Potomac, MD 20854

Fry, Michael C.
327 L St. NE (Rear)
Washington, DC 20002

G. S. Proctor & Associates, Inc.
14408 Old Mill Rd., Suite 201
Upper Marlboro, MD 20772

Goldfarb, Alice
639M St. NE
Washington, DC 20002

Gorecki, Greg
8218 Bock Road
Fort Washington, MD 20744

Grayhound Trash Removal, Inc.
8301 Grey Eagle Drive
Upper Marlboro, MD 20772

Howards, Mark
32 N Prospect St.
Amherst, MA 01002

Internal Revenue Service
Centralized Insolvency Operation
PO Box 7346
Philadelphia, PA 19101-7346

Isherwood, Raymond
337 SW Lockheed Lane
Lake City, FL 32025

Jackson, Gary
13000 Katie St.
Clinton, MD 20735

Jeffrey Tarkenton, Esq.
Womble Bond Dickinson (US) LLP
1200 Nineteenth Street, N.W., Suite 500
Washington, DC 20036

Jettmar, R. Uwe
3744 Jenifer Street
Washington, DC 20015

Joseph Chazen, Esq.
Meyers, Rodbell & Rosenbaum
6801 Kenilworth Avenue, Suite 400
Riverdale, MD 20737

Keithley, Terrance C.
8600 Fort Hunt Rd
Alexandria, VA 22308

King, Jerry
J. K. Tuff, Inc.
601 Pennsylvania Ave. NW #504
Washington, DC 20004

Kravit, Richard
100 Luna Park Drive #233
Alexandria, VA 22305

Maltenfort, Andrew J.
5613 Mt. Burnside Way
Burke, VA 22015

Maryland Aviation Administration
Office of Regional Aviation Assistance
PO Box 8766
Baltimore, MD 21240-0766

Maryland Department of the Environment
PO Box 1417
Baltimore, MD 21203-1417

Maureen Asterbadi
2726 Chain Bridge Road NW
Washington, DC 20016

Mencia, M. Lucia
PO Box 5732
Washington, DC 20016

Mercedes Benz Financial Services
c/o Peter Henn, CEO
36455 Corporate Drive
Farmington Hills, MI 48331

Metro Earthworks
Shirley Contracting Company, LLC
c/o The Corporation Trust, Incorporated
2405 York Road, Suite 201
Lutherville Timonium, MD 21093-2264

Metro Earthworks, a division of
Shirley Contracting Company, LLC
8435 Backlick Rd.
Lorton, VA 22079

Meyers Rodbell & Rosenbaum
6801 Kenilworth Ave., Suite 400
Riverdale, MD 20737-1385

Nabil J. Asterbadi
2726 Chain Bridge Road NW
Washington, DC 20016

Naylor, Lisa J.
10651 Piscataway Rd.
Clinton, MD 20735

Parsons, Fred
415 S Lee St.
Alexandria, VA 22314

PD Hyde Field, LLC
13501 Cavanaugh Drive
Rockville, MD 20850

PD Hyde Field, LLC
c/o William F. Gibson, II, Esq.
Shulman Rogers
12505 Park Potomac Avenue
Potomac, MD 20854

PD Hyde Field, LLC
c/o Michael J. Lichtenstein, Esq.
Shulman Rogers
12505 Park Potomac Avenue
Potomac, MD 20854

Pepco
c/o David M. Velazquez
PO Box 97274
Washington, DC 20090-7274

Perry, White, Ross & Jacobson LLC
125 Cathedral Street
Annapolis, MD 21401

Richard Reed, Esq.
c/o Lerch, Early & Brewer
7600 Wisconsin Ave., Suite 700
Bethesda, MD 20814

Riggins, David / P and R Aviation
8610 Cyrus Pl.
Alexandria, VA 22308

Roberts, Roy
1337 A St. NE
Washington, DC 20002

Roesler, Robert D.
1371 Forest Hill Rd/
Gordonsville, VA 22942

Sandy Spring Bank
6831 Benjamin Franklin Drive
Columbia, MD 21046

Sandy Spring Bank
Attn: Bruce Henry, Esq.
300 N. Washington Street, Suite 204
Alexandria, VA 22314

Sandy Spring Bank
c/o Daniel J. Schrider, CEO
17801 Georgia Avenue
Olney, MD 20832

Shannon, Ken
P.O. Box 655
Bryantown, MD 20617

Shapiro, Philip A.
412 S Lee St.
Alexandria, VA 22314

Snyder, Gene
5903 Pontiac Street
College Park, MD 20740

Stan Fetter
dba Fetter Aviation
14908 W Auburn Rd.
Accokeek, MD 20607-9616

Stoner, Brendon
829 Wyth Street
Alexandria, VA 22314

Strittmatter Corp
6400 Van Dusen Road
Laurel, MD 20707

TD Auto Finance
Attn: Andrew Stuart, CEO
PO Box 9223
Farmington Hills, MI 48333-9223

Telford Capital LLC
c/o Patrick John Kearney, Esq.
4416 E. West Highway, 4th Floor
Bethesda, MD 20814

Telford Capital, LLC
4920 Elm Street
Bethesda, MD 20814

Tri-State Ventilation LLC
Attn: Leroy Wooten
7001 Buchanan Rd.
Camp Springs, MD 20748

Verizon Wireless
Verizon Wireless Correspondence Team
PO Box 408
Newark, NJ 07101-0408

Viteri, Melinda Benson
1443 Rock Creek Ford Rd.
Washington, DC 20011

Washington Suburban Sanitary Commission
c/o Carla Reid, CEO
14501 Sweitzer Lane
Laurel, MD 20707

William C. Harvey & Associates, Inc.
1146 Walker Road, Suite H
Great Falls, VA 22066-1838

Womble Bond Dickinson (US) LLP
Attn: Opel Benoit
1200 Nineteenth St., NW, Suite 500
Washington, DC 20036

American Express National Bank
c/o Becket & Lee
P.O. Box 3001
Malvern, PA  19355-0701
PEPCO
P.O. Box 97294
Washington, D.C.  20090

Internal Revenue Service
Centralized Insolvency Operation
PO Box 21126 (DP-N-781)
Philadelphia, PA 19114

Mercedes-Benz Fin. Services USA LLC
c/o BK Servicing, LLC
P.O. Box 131265
Roseville, MN  55113-0011

TD Auto Finance, LLC
c/o Jacob Sweig, Esq.
Evans Petree PC
1715 Aaron Brenner Drive, Suite 800
Memphis, TN  38120

Prince George's County, Maryland
c/o Meyers, Rodbell & Rosenbaum, P.A.
6801 Kenilworth Ave., Suite 400
Riverdale Park, MD  20737

Verizon
c/o American InfoSource
4515 N. Santa Fe Ave.
Oklahoma City, OK  73118

Imperial PFS
c/o Frank Friedman, CEO
1055 Broadway, Floor 11
Kansas City, MO  64105

Meyers, Rodbell & Rosenbaum, P.A.
6801 Kenilworth Ave., Suite 400
Riverdale Park, MD  20737

Bradford F. Englander
Whiteford, Taylor & Preston, LLP
3190 Fairview Park, Suite 800
Falls Church, VA 22042


*11405266*