UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND

In re

ZACHAIR, LTD.,

Debtor.

Chapter 11

Case No. 20-10691 (TJC)

**FINAL ORDER AUTHORIZING DEBTOR-IN-POSSESSION
FINANCING AND GRANTING ADEQUATE PROTECTION**

Upon the motion (the "**Motion**"[1]) of the above-captioned debtor (the "**Debtor**") in this chapter 11 case (the "**Case**") seeking entry of a final order (the "**Final DIP Order**"), *inter alia*:

a) Authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority term loans (the "**DIP Loans**") in an aggregate maximum amount of $1.5

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the DIP Credit Agreement, attached hereto as <u>Exhibit A</u>.

million (the "**DIP Commitment**"), from Legalist SPV II, LP (as lender, agent, and collateral agent, the "**DIP Lender**"), as provided in that certain Debtor-in-Possession Term Loan Credit Agreement, dated as of the date of the entry of this Final DIP Order, among the Debtor and the DIP Lender (the "**DIP Credit Agreement**"), and to incur the DIP Obligations contemplated thereby;[2]

b) Authorizing the Debtor to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the DIP Credit Agreement and other DIP Loan Documents;[3]

c) Authorizing the Debtor to use the proceeds of the DIP Loans, as permitted in the DIP Loan Documents (expressly including the Budget[4]);

d) Providing that all DIP Obligations shall, pursuant to section 364(c)(1) of title 11 of the United States Code (the "**Bankruptcy Code**"), constitute DIP Claims,[5] payable from and

---

[2] "**DIP Obligations**" means DIP Lender Expenses, together with all principal of, and interest and fees on (including, without limitation, any applicable Undrawn Line Fee, Commitment Fee, Underwriting Fee, and any applicable Makewhole Fee) the DIP Loans, any amount owed to any Indemnified Person, and any other amount owed by the Debtor under any DIP Loan Document.

[3] "**DIP Loan Documents**" means this Final DIP Order, the DIP Credit Agreement, all Borrowing Requests, the Budget and related reporting, all documents relating to the Cash-Management Requirements, and all other agreements, documents, and instruments in any way arising from, related to, or connected with the DIP Commitment, DIP Loans, DIP Claims, and/or DIP Liens, together with all schedules, exhibits, and other addenda thereto, all of which shall be in Approved Form.

[4] "**Budget**" means a budget encompassing, on a monthly basis, the period from the date hereof through the satisfaction of the final Milestone and containing detailed line items of the Debtor's projected receipts and disbursements, in Approved Form, including as the same may be revised by the Debtor from time to time in Approved Form. The Budget as of the date hereof is attached as <u>Exhibit C</u> to the DIP Credit Agreement

[5] "**DIP Claims**" means "superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined below)) and (y) all other unsecured claims against the Debtor.

having recourse to all property of the Debtor's estate (expressly including all DIP Collateral,[6] but excluding Excluded Collateral);

    e)    Authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) in all DIP Collateral to secure pay of all DIP Obligations, comprising:

    (i)    Pursuant to Bankruptcy Code section 364(c)(2), senior DIP Liens on all DIP Collateral not subject to Existing Liens;[7]

    (ii)    Pursuant to Bankruptcy Code section 364(c)(3), junior DIP Liens on all DIP Collateral subject to Existing Liens;

    (iii)    Pursuant to Bankruptcy Code section 364(d)(1), equal DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens;[8] and

    (iv)    Pursuant to Bankruptcy Code section 364(d)(1), senior priming DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens;

    f)    Modifying the automatic stay, pursuant to Bankruptcy Code section 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) upon further order of the Court, permit the DIP Lender to exercise any right or remedy provided therein;

    g)    Approving all Cash-Management Requirements (as defined below);

    h)    Authorizing the Debtor's use of Cash Collateral whenever or wherever acquired;

    i)    Granting adequate protection to the Prepetition Lender (as defined below); and

---

[6]   "**DIP Collateral**" means all assets and properties, whether real, personal, intellectual, or otherwise, whether tangible or intangible, whether domestic, foreign, or international, that the Debtor now owns or hereafter acquires, or to or in which the Debtor, now or in the future, holds any right, title, or interest (whether fixed, contingent, inchoate, or otherwise), together with (in each case) all proceeds thereof; provided that the DIP Collateral shall not include Excluded Collateral.

[7]   "**Existing Liens**" means the Liens set forth on <u>Schedule 2</u> to the DIP Credit Agreement.

[8]   "**Permitted Senior Liens**" means the Liens set forth on <u>Schedule 3</u> to the DIP Credit Agreement.

j) Granting the Debtor such other and further relief as is just and proper; and

The Court having held a hearing on the Motion and considered any objection to the Motion, and good cause appearing therefor, it is hereby FOUND and CONCLUDED that:

A. On January 17, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code;

B. Prior to the Petition Date, the Debtor entered into a secured loan with Sandy Spring Bank (the "**Prepetition Lender**") in the original principal amount of $2.5 million (the principal balance as of January 1, 2020, being $2,382,565.48), which loan is secured by Existing Liens on a portion of the DIP Collateral (including certain cash collateral);

C. This Court has jurisdiction over the Case and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Final DIP Order consistent with Article III of the United States Constitution;

D. An immediate and ongoing need exists for the Debtor to obtain postpetition financing in the amount of the DIP Commitment to reorganize under Bankruptcy Code chapter 11, and the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this Case;

E. The Debtor is unable to obtain unsecured credit under Bankruptcy Code section 503 or other postpetition financing in the amount of the DIP Commitment on terms more favorable than those provided by the DIP Lender;

F. Sufficient and adequate notice of the Motion and entry of this Final DIP Order has been given under Bankruptcy Code section 364, Federal Rules of Bankruptcy Procedure (the

4

"**Bankruptcy Rules**") 2002 and 4001, and Local Bankruptcy Rule 4001-4 such that no other or further notice of the Motion or entry of this Final DIP Order is needed;

G.  The terms of the DIP Loans, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtor and DIP Lender, and the DIP Lender is entitled to the protections of Bankruptcy Code section 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender (including, as applicable, the priority, validity, and enforceability thereof);

H.  The terms of the DIP Loans, as set forth in the DIP Loan Documents, are fair and reasonable and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and the DIP Lender has provided fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the DIP Liens, DIP Claims, and all other rights, protections, and benefits obtained by it under any DIP Loan Document (expressly including this Final DIP Order);

I.  Entry of this Final DIP Order (including permitting the use of cash collateral and the grant of adequate protection to the Prepetition Lender) is in the best interests of the Debtor's estate and its various stakeholders because it will facilitate, *inter alia*, the Debtor's reorganization under Bankruptcy Code chapter 11; and

J.  The DIP Lender is willing to provide the DIP Loans to the Debtor, but only on the terms of the DIP Loan Documents (expressly including this Final DIP Order);

WHEREFORE, it is hereby <u>ORDERED</u> that the motion is <u>GRANTED</u> and:

1.  Any remaining objection to the Motion or entry of this Final DIP Order is hereby <u>OVERRULED</u>.

2.    The execution and delivery of the DIP Credit Agreement and all other DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents (expressly including with respect to the priority, validity, and enforceability of the DIP Claims and DIP Liens), and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3.    Subject to the terms hereof, the Debtor is authorized to use all cash collateral, to borrow up to the full amount of the DIP Commitment in DIP Loans in one or more draws on the terms of the DIP Loan Documents, and to grant the adequate protection to the Prepetition Lender contemplated hereby, each without application to or further order by the Court.

4.    All interest (expressly including default interest), fees (expressly including any applicable Undrawn Line Fee, the Commitment Fee, the Underwriting Fee, the Monitoring Fee, and any applicable Makewhole Fee), and expenses (expressly including all DIP Lender Expenses[9]) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Claims, without application to or further order by the Court.

5.    All DIP Obligations, pursuant to Bankruptcy Code section 364(c)(1), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estate (expressly including all DIP Collateral, but excluding Excluded Collateral).

---

[9] The DIP Credit Agreement requires the Debtor to pay promptly all actual and reasonable costs and expenses of the DIP Lender incurred, from and after the occurrence of any Event of Default, in connection with, arising from, or relating to the Debtor or its Case, the DIP Loan Documents, and any exercise of rights or remedies, expressly including all fees, expenses, and disbursement of outside counsel or other advisers and consultants retained by the DIP Lender with respect thereto (collectively, the "**DIP Lender Expenses**"), which shall constitute DIP Obligations for all purposes.

6.  The DIP Lender holds security interests in and Liens on all DIP Collateral, which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "**DIP Liens**"), comprising:

(i)  Pursuant to Bankruptcy Code section 364(c)(2), senior DIP Liens on all DIP Collateral not subject to Existing Liens;

(ii)  Pursuant to Bankruptcy Code section 364(c)(3), junior DIP Liens on all DIP Collateral subject to Existing Liens;

(iii)  Pursuant to Bankruptcy Code section 364(d)(1), equal DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens; and

(iv)  Pursuant to Bankruptcy Code section 364(d)(1), senior DIP Liens on all DIP Collateral subject to Existing Liens, other than Permitted Senior Liens.

6.  The proceeds of the DIP Loans shall be used by the Debtor exclusively to (a) pay DIP Lender Expenses, (b) pay all other DIP Obligations, (c) pay other amounts permitted under the Budget, as such may be revised from time to time in Approved Form; (d) pay amounts permitted under the Carveout, and (e) pay other amounts (if any) approved in advance in writing by the DIP Lender; provided that in no event shall any portion of the DIP Loans be used for payment of fees, costs, or expenses incurred by any party in (x) investigating or pursuing any claim or cause of action against the DIP Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender.

7. So long as any DIP Obligation remains outstanding, the Debtor shall perform each of the covenants contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations), including (for the avoidance of doubt):

(i) No later than the seventh Business Day of each month, the Debtor shall provide the DIP Lender (each in Approved Form[10]) (x) a variance report (certified by an appropriate officer of the Debtor) comparing, on a line-item basis, actual cash receipts and disbursements to those contained in the Budget, for both the preceding month and cumulatively from the date hereof, together with detailed explanations of all variances (if any) and (y) a rolling 13-week cashflow forecast for the Debtor; provided that in no event shall actual cash disbursements vary upward from the Budget (on a categorical, monthly, or cumulative basis) by more than 10% (the "**Permitted Variances**"); provided further that the Debtor may carry forward any used budgeted amount to subsequent periods; and provided further that the Debtor is permitted to use cash on hand as of the entry of this Final DIP Order, and proceeds of airport operations received after the entry of this Final DIP Order, for airport and general administrative expenses, without restriction under the DIP Credit Agreement (but subject to the reporting obligations thereof) or this Final DIP Order.

(ii) The Debtor shall establish and maintain a cash-management system in Approved Form, which system shall (at a minimum) provide for real-time reporting to the DIP Lender of all receipts and disbursements in all deposit accounts of the Debtor (collectively, the "**Cash-Management Requirements**");

---

[10] "**Approved Form**" means in form and substance acceptable to (as evidenced by the prior written consent of) the DIP Lender.

(iii) The Debtor shall comply with all applicable Milestones;[11]

(iv) The Debtor shall promptly provide the DIP Lender with all requested information and full and complete access to all executives, directors, and advisors of the Debtor, together with access to inspect any DIP Collateral, when requested by the DIP Lender; provided that, without any prior request from the DIP Lender, the Debtor shall deliver to the DIP Lender in real time copies of all written offers (whether formal or informal, firm or contingent) to acquire the Debtor, the DIP Collateral, or any part thereof, together with all related correspondence, and all other materials regarding the Debtor's progress on the Milestones; and further provided that DIP Lender shall maintain all information provided by the Debtor in this Paragraph in confidence, pursuant to the terms of the Confidentiality and Non-Circumvention Agreement.

(v) Except as may be agreed in writing in advance by the DIP Lender, the Debtor shall not (directly or indirectly) incur, create, or permit to exist any Debt, other than (w) Debt existing as of the Petition Date, (x) the DIP Obligations, (y) Debt expressly contemplated by the Budget, and (z) obligations and indebtedness permitted by the Carveout;

(vi) The Debtor shall not (directly or indirectly) incur, create, or permit to exist any Lien other than (x) Existing Liens, (y) the DIP Liens, and (z) postpetition liens for real-estate taxes, which shall be timely paid;

(vii) Other than as permitted with respect to the Carveout, the Debtor shall not (directly or indirectly) incur, create, or permit to exist any administrative-expense claim, expense, or cost (x) with priority senior or equal to the DIP Claims or (y) not expressly contemplated by the Budget;

---

[11] "**Milestones**" means, collectively, the events and corresponding deadlines set forth on Schedule 1 to the DIP Credit Agreement.

(viii)    The Debtor shall not make any payment (other than in respect of the DIP Obligations) not expressly contemplated by the Budget or the Carveout;

(ix)    The Debtor shall not (directly or indirectly) (x) merge or consolidate with another Person or (y) unless the net proceeds thereof shall be sufficient to repay the DIP Obligations (including any applicable Makewhole Fee) in full, sell any DIP Collateral; <u>provided</u> any such sale shall be in Approved Form; and

(x)    The Debtor shall not commence any action in, file any motion, application, or proposed order with, or make any other submission to the Bankruptcy Court relating to the DIP Loans, DIP Claims, DIP Liens, and DIP Collateral other than in Approved Form; provided that the DIP Lender shall review all draft submissions promptly, and shall not unreasonably withhold, condition, or delay its consent to such draft submissions.

8.    The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the "**Maturity Date**," meaning the earlier to occur of (x) the second anniversary of the date hereof and (y) the acceleration of the DIP Loans following an Event of Default.

9.    An "**Event of Default**" shall exist during the occurrence and continuation of each of the events so identified in the DIP Loan Documents, including (for the avoidance of doubt):

(i)    The Debtor shall:

(A) Fail to timely pay any DIP Lender Expense or other DIP Obligation when due;

(B) Grant or permit to exist any Lien on any DIP Collateral, other than the DIP Liens, Existing Liens and postpetition real-estate taxes, which shall be timely paid;

(C) Fail to satisfy any Milestone, within 2 business days of its stated deadline;

(D) Make any payment not expressly contemplated by, or otherwise fail to comply with, the Budget (subject to Permitted Variances and the Carveout); or

(E) Fail at any time to satisfy any Cash-Management Requirement;

(ii) Any representation, warranty, certification, or other statement made, or deemed made in or delivered pursuant to any DIP Loan Document, by the Debtor shall be false in any material respect as of the date so made, deemed made, or delivered; and

(iii) The Debtor shall fail to perform or comply with any other agreement, covenant, term, or condition in any DIP Loan Document, other than those listed in the preceding Clauses (i)-(ii); provided such failure has not been remedied (if capable of remedy) within 21 days of the earlier of (x) the Debtor's becoming aware of such failure or (ii) the Debtor's receipt of written notice from the DIP Lender of such failure.

10. Notwithstanding Bankruptcy Code section 362, while any Event of Default has occurred and is continuing, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court, (x) declare the DIP Commitment terminated and (y) declare all DIP Obligations immediately due and payable, without the requirement of presentment, demand, protest, or any other notice, all of which are waived by the Debtor.

11. Furthermore, while any Event of Default has occurred and is continuing, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

(i) Terminating the automatic stay with respect to any DIP Collateral;

(ii) Terminating the Debtor's exclusivity to propose a chapter 11 plan;

(iii) Appointing an examiner or chapter 11 trustee; and

(iv) Converting the Debtor's Case to chapter 7;

provided that if the DIP Lender so moves or applies, the Debtor shall bear the burden of establishing that cause does not exist to grant the requested relief. The Debtor has expressly waived the right to contest such relief whatsoever beyond the foregoing limitation.

11

12. In addition to the rights and remedies enumerated in Paragraphs 10 and 11, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or (subject to further order of the Court) as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection any Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

13. (i) Subject to the following Clause (ii), the DIP Claims shall be subject to a prior claim against the Debtor's estate (the "**Carveout**") to permit the Debtor to pay the aggregate amount of (x) all accrued and unpaid postpetition professional fees (at standard hourly rates) of the Debtor's bankruptcy counsel, appraiser, and financial advisor (whether or not such fees and costs are included in the Budget, but subject to allowance by the Bankruptcy Court); (y) United States Trustee fees; and (z) other administrative expenses, to the extent such administrative expenses have been incurred, but not paid, and are permitted in the Budget; provided, however, that upon delivery of a Carveout Trigger Notice, the Carveout for expenses incurred thereafter shall be limited solely to the Triggered Carveout Cap. The delivery of a Carveout Trigger Notice shall not limit or cap the amounts that have accrued prior to the delivery of the Carveout Trigger Notice. The DIP Liens, DIP Claims, and all other administrative or superpriority claims against the Debtor (if any) shall be subject and subordinate in all respects to the Carveout.

(ii) From and after the date of delivery by the DIP Lender to the counsel to the Debtor and the UST of notice (the "**Carveout Trigger Notice**") that both (a) an Event of Default has occurred and is continuing and (b) the DIP Lender has elected to exercise its right to cap the Carveout, the Carveout for expenses accrued thereafter shall, immediately and without any further

notice or action, be capped at $50,000 (the "**Triggered Carveout Cap**") in the aggregate; provided that in no event whatsoever shall payment of any amount contemplated by the Carveout constitute a personal liability of the DIP Lender, any Affiliate, or any other Indemnified Person. Notwithstanding anything herein to the contrary, in no event shall any amount contemplated by the Carveout be used to fund fees, costs, or expenses incurred in (x) investigating or pursuing any claim or cause of action against the DIP Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender.

14. In consideration of the DIP Lender's (x) consent to the current payment of administrative expenses of the Debtor's estate to the extent of (and solely as expressly permitted by) the Budget and (y) concessions with respect to the Carveout (solely as described Paragraph 13 and the DIP Credit Agreement), the DIP Lender is entitled to a full and complete waiver, with respect to all parties, of Bankruptcy Code section 506(c) and in no event shall any the DIP Lender or DIP Collateral be subject to any "surcharge" or the doctrine of "marshalling" by any party in any way whatsoever.

15. The automatic stay imposed by Bankruptcy Code section 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final DIP Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender, except those expressly requiring further court order) and the transactions contemplated thereby.

16. The substantial value of the DIP Collateral in excess of claims secured by such DIP Collateral provides sufficient adequate protection to which prepetition secured creditors of the

Debtor are entitled.  The Debtor is not required to provide any adequate protection to prepetition secured creditors of the Debtor except as specifically provided in this paragraph with respect to the Prepetition Lender. From the first business day of the first month following entry of this Final DIP Order, until the first to occur of (a) the Maturity Date and (b) the date of termination of the DIP Lender's DIP Commitment, the Debtor shall make a monthly payment in the amount of $11,935.33 to the Prepetition Lender as adequate protection, within the meaning of Bankruptcy Code sections 361(1) and 364(d)(1)(B), of its Existing Liens, including on account of (a) the grant of the priming DIP Liens to the DIP Lender and (b) the Debtor's use of cash collateral secured by such Existing Liens. The Debtor and the Prepetition Lender reserve their rights with respect to application of the foregoing adequate protection payment, and nothing herein constitutes a determination with respect to the application of such payment. The Debtor shall be entitled to use the Prepetition Lender's cash collateral for all purposes permitted under the DIP Credit Agreement until the first to occur of (a) the Maturity Date or (b) the date of termination of the DIP Lender's DIP Commitment.  This Final DIP Order supersedes any prior cash collateral order.

17. Any stay, modification, reversal, or vacation of this Final DIP Order shall not, in any way whatsoever, affect any DIP Loan, DIP Lien, or DIP Claim (or the priority, validity, or enforceability thereof), DIP Obligation, other DIP Loan Document, or right or remedy of the DIP Lender. Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation (including, as applicable, the priority, validity, and enforceability thereof) shall be governed in all respects by this Final DIP Order as originally entered by the Court. The DIP Lender is entitled to and shall have the protections of Bankruptcy Code section 364(e) with

respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender (including, as applicable, the priority, validity, and enforceability thereof) and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final DIP Order.

18. This Final DIP Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a chapter 11 plan of in this Case (and, to the extent not satisfied in full in cash on the effective date thereof, the DIP Obligations shall not be discharged under or by entry of such order, notwithstanding Bankruptcy Code section 1141(d)); (x) appointing an examiner or chapter 11 trustee in this Case; (y) converting this Case to a case under Bankruptcy Code chapter 7, or (z) dismissing this Case. This Final DIP Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender (including, as applicable, the priority, validity, and enforceability thereof) shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

19. In the event of any inconsistency between any other DIP Loan Document and this Final DIP Order, the terms of this Final DIP Order shall govern.

20. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final DIP Order shall be valid, take full effect, and be enforceable immediately upon entry hereof. There shall be no stay of execution or effectiveness of this Final DIP Order, all of which are hereby waived for cause shown.

21. The Court has and shall retain jurisdiction to enforce this Final DIP Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

**\*\*\* End of Order \*\*\***

## **Exhibit A**

**[The DIP Credit Agreement can be located on the Court's docket]**