IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ZACHAIR, LTD. | ) | Case No. 20-10691-TJC |
| | ) | Chapter 11 |
| Debtor | ) | |

**PD HYDE LLC'S OPPOSITION TO DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014; AND LOCAL BANKRUPTCY RULES 4001-4 AND 4001-5; (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDER, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

PD Hyde LLC ("Hyde"), a secured creditor, by and through its undersigned attorneys, hereby opposes the Debtor's Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507 and Fed. R. Bankr. P. 2002, 4001 and 9014; and Local Bankruptcy Rules 4001-4 and 4001-5; (I) Authorizing the Debtor to Obtain Postpetition Financing, (ii) Granting Liens and Super-Priority Claims, (iii) Granting Adequate Protection to Prepetition Secured Lender, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief (the "Motion") [Doc 107]. The Debtor fails to explain why it requires $1,500,000.00 or to discuss alternatives to trying to sell the property over the next two years. Hyde objects to the proposed DIP terms which are onerous and incredibly expensive. In further support, Hyde respectfully states as follows:

1. Hyde objects to DIP financing priming its secured position,[1] especially given Hyde's concern regarding the property value. Hyde filed a proof of claim (Claim #18) in the total amount of $5,617,818.00. As set forth in the proof of claim, $1,200,000.00 is secured.

---

[1] No objection has been filed to Hyde's claim which is therefore *prima facia* evidence of an allowed secured claim.

2.      The proposed DIP is extremely expensive, in the range of 16% to 32% depending on its term. The shorter the term, the more expensive the facility will be. The DIP Lender charges contract interest rate under the DIP loan of 12% per annum, plus the following fees: a 2.75% Commitment Fee, a 1.75% Underwriting Fee, a 1.75% monitoring fee, and a 3.75% undrawn line fee. If the Loan is outstanding for 24 months per the Debtor's exhibit, the APR would be 16% based on the Maximum Drawn Amount. If the loan is outstanding for 12 months, the APR would be an egregious 32%. These APRs are worse than the discount rate utilized by the Debtor's appraiser in determining the required equity return. The DIP lender is asking for equity returns while demanding to be in the most secure position. Finally, the Lender also adds a fee if the Loan is not outstanding for at least 6 months, a 4.75% Make-whole Fee.

3.      Hyde believes the Debtor's assertion that the estate has adequate value to support additional debt is faulty. The Debtor commissioned an appraisal of its real property which suggests a value of approximately $20-22 million. However, there are multiple problems with the Debtor's appraisal including:

- *The appraiser's DCF valuation assumes the entitlement process is complete (which it is not).* It is estimated that entitlements will take 18 to 24 months or more. Thus, the appraisal fails to consider both the higher risk and the longer time frame to entitle the project. The Debtor's appraiser used a 15% to 17% discount rate, referencing a PWC survey reflecting a range of discount rates of 10% to 25% with a 16% median. The appraisal states: "The rates presented below are based on unleveraged, all-cash transactions, including developer's profit and assume that entitlements are in place" (p.33) (emphasis added). Unentitled land like the Debtor's should have a higher discount rate for the 18 to 24-month entitlement process.

- *The appraiser's sales cost valuation uses sales comps that are entitled (which the Debtor's property is not).* He brackets between sales comp 3 ($61K per acre) at the high end and sales comp 2 ($33,000 per acre) at the low end. Comp 3 is a better location, similar size, **entitled site**, and has more units. Comp 2 is a better location, larger size, **entitled site** and has more units. *A two year entitlement process should be discounted by at least 20 to 25% per year to reward the equity investor for the risk.*

- *The appraiser does not factor in the cost to mitigate the excess fill in his valuation. (Such cost could be in the multi-millions of dollars.)* In the sales comparison approach, the Appraiser states on page 37 that "All of the comparables are considered to have superior conditions in comparison to the subject property due to the **excess fill located on the subject property.**" The Debtor's property has an excess and an imbalance of earthwork which deviated from the Surcharge Plan, plus organic compounds and construction debris may also be present in the fill dirt. As of August 2018, over 4.1 million cubic yards of unsuitable fill impacted the development costs as well as the development viability of some of the acreage. Neither the DCF analysis nor the Sales Comp approach reflect the time, cost and potentially lower build out (number of developable lots) that is currently able to be economically developed on the project given the fill issue.

- *The appraiser's DCF valuation needs to be adjusted.* If a 25% discount rate is utilized for an 18-month entitlement period (continue with 16% rate for 7-year development period) plus a $3 to $5 million credit for fewer units and for land fill remediation, then **the DCF value would be approximately $8 million to $10 million.** (37.5% discount to $20.7 million value less $3 to $5 million).

- *The appraiser's sales comp valuation needs to be adjusted.* In the sales comparison approach, as mentioned previously, the appraiser brackets between sales comp 3 ($61K per acre) at the high end and sales comp 2 ($33,000 per acre) at the low end. Comp 3 is a better location, relatively recent sale, similar size, **entitled site**, and has more units. Comp 2 is a better location, larger size, **entitled site** and has more units. Comp 2's only negative would be the market was not as strong when it sold in 2011 versus today. However, one would have to assume that over 9 years, the property appreciated enough to compensate for the 40% to 50% adjustment required to account for the Debtor's site not being entitled. (Two year entitlement process discounted at 20 to 25% per year). If one assumes that the Comp 2 sale date and entitled status cancel each other and one assumes Comp 3 has a 40% reduction due to entitlement status and 10% reduction for better location and more units, then the range for the appraiser's sale comps, adjusting for entitlement status and sale date, should be $30,000 per acre (Comp 3) and $33,000 per acre (Comp 2). Accordingly, **the sales comp value would be approx. $13.3 million less $3 to $5 million for potential lower density and fill mitigation costs resulting in an approx. $8 to $10 million value**.

- *Sandy Spring Bank commissioned an appraisal this summer that resulted in a much lower value than the Debtor.* That appraiser utilized a per lot sales comp method and came up with a range of $7,700 to $13,380 per unit. He

assumed that Phase 1, parcel 90 which is 58 acres, would be first developed with the other three parcels trailing. As such, <u>he valued Phase 1 at the high end ($12,000 per unit)</u> and discounted the <u>other three ($8,000 per unit) due to the longer time frame</u>. Converting this into a value per acre, Phase 1 is $44,000 per acre and Phase II is $29,300 per acre. <u>The weighted average is $32,600 per acre</u> which is in line with the adjustment to the Debtor's sales comps and yields a **$13.25 mm value less $3 to $5 million for potential lower density and fill mitigation costs and we are back in the $8 to $10 mm range**.

4. With the 24-month DIP loan, the Debtor's sole equity security holder (Dr. Asterbadi) is taking no risk and is using the creditors to finance the project while he engages with a prospective purchaser to entitle the property. If the Property is really worth what the Debtor asserts, the Debtor should be able to obtain a loan from a land lender and pay all creditors in full rather than compel them to wait two more years for repayment.[2] The only beneficiary of incurring a long-term DIP loan and stretching out the sale period is Dr. Asterbadi.

5. The Debtor has engaged a real estate broker to market the property. The status of this process is important to know to validate the "as-is" value and the "24-month contingent/entitlement" value. If the Debtor is planning to sell the property "as-is", the Debtor does not need a 24-month DIP loan. The Debtor should only need a short-term financing to pay necessary expenses to consummate a non-contingent sale or refinancing (and pay off the creditors). If a longer-term plan of reorganization is going to be proposed, then creditors should be compensated. Per Debtor's appraiser, compensation should at least be in the 16% to 25% range for assuming such 24-month risk.

6. Additionally, other third-parties should be contacted to consider providing a 6-month short-term bridge loan as part of a plan of reorganization or Section 363 sale.

---

[2] According to the DIP motion, the Debtor will be in default if it does not file a plan and disclosure statement by November, 2021.

7.  While not explicitly disclosed in the Motion or in the DIP budget, upon information and belief, approximately $500,000.00 of the proposed DIP funds are to be used to pay the Debtor's professional fees in this case. The Debtor should disclose the proposed uses of the requested proceeds in greater detail so that creditors can evaluate the actual need for a DIP loan and if so, the appropriate amount.

## Conclusion

For the foregoing reasons, this Court should deny the DIP Motion and grant such other and further relief as is just and proper.

Respectfully submitted,

**SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.**

By:   /s/ Michael J. Lichtenstein
Michael J. Lichtenstein (Bar No. 05604)
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854
TEL:   (301) 230-5231
FAX:   (301) 230-2891
Email: mjl@shulmanrogers.com

*Counsel for PD Hyde Field LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of October, 2020, I reviewed the Court's CM/ECF system and it reports that an electronic copy of **PD Hyde LLC Opposition to Debtor's Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507 and Fed. R. Bankr. P. 2002, 4001 and 9014; and Local Bankruptcy Rules 4001-4 and 4001-5; (I) Authorizing the Debtor to Obtain Postpetition Financing, (ii) Granting Liens and Super-Priority Claims, (iii) Granting Adequate Protection to Prepetition Secured Lender, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief and proposed Order** will be served electronically by the Court's CM/ECF system on the following:

    Bradford F. Englander    benglander@wtplaw.com, rodom@wtplaw.com
    Nancy D. Greene    ndg@ndglaw.com
    Bruce W. Henry    bwh@henrylaw.com, kmo@henrylaw.com;jtm@henrylaw.com;mbp@henrylaw.com
    Patrick J. Kearney    pkearney@sgrwlaw.com, jnam@sgrwlaw.com
    Nicole C. Kenworthy    bdept@mrrlaw.net
    Michael J. Klima    bankruptcy@peroutkalaw.com
    Jeffery Thomas Martin    jtm@henrylaw.com, mbp@henrylaw.com
    M. Evan Meyers    bdept@mrrlaw.net
    L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
    Jeffrey L. Tarkenton    Jeffrey.tarkenton@wbd-us.com, karla.radtke@wbd-us.com,pascal.naples@wbd-us.com,morgan.patterson@wbd-us.com,matthew.ward@wbd-us.com
    US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
    Jacob Christian Zweig    jzweig@evanspetree.com, crecord@evanspetree.com

The following parties received copies via first class mail, postage prepaid, this 21st day of October, 2020:

| | |
|---|---|
| Fraser Forbes Company, LLC<br>Attn: Richard O. Samit<br>7811 Montrose Road, Suite 500<br>Potomac, MD 20854 | William C. Harvey<br>Williams C. Harvey & Associates, Inc.<br>1146 Walker Road, Suite H<br>Great Falls, VA 22066 |
| David W. Gaffey<br>Whiteford Taylor & Preston, L.L.P.<br>3190 Fairview Park Drive<br>Suite 800<br>Falls Church, VA 22042 | Robert L. Patrick<br>Streamline Advisors, LLC<br>2416 Watervale Road, Suite 763<br>Fallston, MD 21047 |

                                            /s/ Michael J. Lichtenstein
                                            Michael J. Lichtenstein

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ZACHAIR, LTD. ) | Case No. 20-10691-TJC |
| ) | Chapter 11 |
| **Debtor** ) | |

**ORDER DENYING DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014; AND LOCAL BANKRUPTCY RULES 4001-4 AND 4001-5; (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDER, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

UPON CONSIDERATION of Debtor's Motion Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507 and fed. R. Bankr. P. 2002, 401 and 9014; and Local Bankruptcy Rules 4001-4 and 4001-5; (I) Authorizing the Debtor to Obtain Postpetition Financing, (ii) Granting Liens and Super-Priority Claims, (III) Granting Adequate Protection to Prepetition Secured Lender, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief (the "DIP Motion") [ECF 107] filed by Debtor Zachair, Ltd ("Debtor"), the Opposition filed by PD Hyde Field, LLC, and any other responses thereto, and for good cause shown, it is hereby

**ORDERED**, that the Motion be, and the same is hereby, DENIED.

<u>Copies to</u>:
Michael J. Lichtenstein, Esquire
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, MD 20854
*Counsel for PD Hyde Field, LLC*

Bradford F. Englander, Esquire
David W. Gaffey, Esquire
Whiteford Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, VA 22402
*Counsel for Debtor*

**END OF ORDER**