IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| In re: | ) |
| | ) |
| Zachair, Ltd., | ) Case No.: 20-10691-TJC |
| | ) |
| Debtor. | ) Chapter 11 |
| | ) |

## LINE RE DIP LOAN MOTION

Zachair, Ltd. (the "Debtor"), by counsel, files this Line re DIP Loan Motion to disclose the terms of its resolution of its *Debtor's Motion Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364; 507 And Fed. R. Bankr. P. 2002, 4001 And 9014; And Local Bankruptcy Rules 4001-4 And 4001-5; (I) Authorizing The Debtor To Obtain Postpetition Financing, (II) Granting Liens And Super-Priority Claims, (III) Granting Adequate Protection To Prepetition Secured Lender, (IV) Modifying The Automatic Stay, And (V) Granting Related Relief*, filed on September 8, 2020 [clerk's docket no. 107]. (the "Motion").  To resolve disputes with respect to the Motion, Sandy Spring Bank ("Sandy Spring") and the Debtor have agreed that Sandy Spring shall provide debtor in possession financing to the Debtor on the terms set forth in the attached **Exhibit A**. Sandy Spring and the Debtor shall prepare and submit a proposed form of order implementing the terms set forth on Exhibit A.

Dated: November 4, 2020                    ZACHAIR, LTD.

*/s/ Bradford F. Englander*
Whiteford, Taylor & Preston, LLP
Bradford F. Englander, Esq., Bar No. 11951
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Facsimile: (703) 280-3370
Email: benglander@wtplaw.com

*Counsel for the Debtor*

# Exhibit A

## Term Sheet re Sandy Spring Bank DIP Loan

<u>Terms</u>

1. Up to $360,000 ("DIP Loan") for expenses approved by the Bank. DIP Loan to be secured by existing first deed of trust.
2. Interest rate of 6.25%, the default rate under the existing loan from the Bank to the Debtor.
3. All budgeted expenses through the maturity date of the DIP Loan set forth in the Site Management/Mining category (other than Environmental Maintenance, which is addressed below) shall be deemed "approved" by the Bank. (Total of such expenses is $21,600 and includes fees for MDE and Haul Road permits, and bonding premiums due on or before December 31, 2021). Such Site Management/Mining expenses shall be paid first from use of cash collateral, and if such is insufficient, from DIP Loan proceeds.
4. The line items in the Debtor's budget for Development/Sale Costs totaling $230,500 shall be deemed "approved" by the Bank. Written proposals for each line item will be provided by the Debtor to the Bank for review before execution. Funds will be advanced for these items as services are rendered and invoices tendered by the service providers. The Bank will be promptly provided with copies of all reports/work product, and will have access to the professionals. The Bank consents to the Debtor's reallocation of budgeted line items set forth in Development/Sale Costs to other line items in the same category.
5. Under General and Administrative Expenses in the Debtor's budget, the Debtor's general liability insurance will be deemed "approved". Additionally, Office of U.S. Trustee quarterly fees in an estimated amount of $17,725 and $70,000 for a retainer for Womble Bond Dickinson will be deemed "approved". The Bank consents to use of cash collateral for payment of all budgeted Airport Costs and Site Management/Mining costs.
6. The Bank consents to use of cash collateral to pay the following line items in General and Administrative Expense: State of MD filing fee, Verizon Wireless, Vehicle Insurance, Tax Accountant, Bookkeeping/MOR, and Other. Such items shall be paid first from use of cash collateral, and if such is insufficient, from DIP Loan proceeds.
7. In addition to the amount of the DIP Loan set forth above, if payment of real estate taxes is required by the Bankruptcy Court, Bank shall make such payment, which shall be added to balance of Bank's pre-petition loan as a protective advance. Bank consents to deferral of payment of real estate taxes unless such payment is required by the Court.
8. No payments to SSB shall be required under the DIP Loan until 12/31/21, at which time all sums under the DIP Loan shall be due and payable. Likewise, no payments shall be required on the existing Bank loan until 12/31/21.
9. The Debtor shall be entitled to maintain a $20,000 cash reserve, and shall not be required to spend such reserve before borrowing under the DIP Loan. References herein to the "budget" mean the budget attached as Exhibit C to the Debtor's DIP loan motion filed on September 8, 2020.

<u>Conditions</u>

1. The Bank and its counsel will be permitted direct access to Mr. Samit, the real estate broker, and the professionals conducting the various studies. All information and documents

    obtained will be maintained in confidence. Debtor's counsel shall be invited to participate in all calls and meetings.

2. The Bank shall be promptly provided any and all offers, letters of intent or expressions of interest in the Debtor's property, or any part thereof. The Bank will be provide regular marketing updates from the Debtor's broker.
3. The Bank will reasonably consider advances for additional professional reports to support the broker's ability to market the Debtor's real property, and site maintenance expenses (not to exceed the site maintenance expenses set forth in the budget), even if these charges exceed the DIP Loan amount set forth above.
4. The Debtor will agree not to propose any further financing with lien priority senior to the Bank during the bankruptcy case without the written consent of the Bank.
5. The Debtor will file its disclosure statement and plan on or before June 30, 2021. The debtor will agree that its exclusive period to file a plan shall be terminated on June 30, 2021, and its exclusive period to obtain acceptances shall be terminated on September 17, 2021. The Bank shall support any request by the Debtor to extend the exclusivity periods through the foregoing dates. The Bank shall not file a plan, or support or vote for another non-Debtor plan, unless and until the forgoing dates have passed.
6. DIP Loan terms to be put on the record and approved at hearing on November 5, 2020. The Debtor and the Bank shall cooperate in good faith regarding any further documentation as may be necessary or appropriate.