Entered: November 9th, 2020
Signed: November 8th, 2020

**SO ORDERED**



THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Zachair, Ltd., | ) | Case No.: 20-10691-TJC |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

### FINAL ORDER AUTHORIZING DEBTOR-IN-POSSESSION
### FINANCING AND USE OF CASH COLLATERAL

This matter came before the Court upon the *Debtor's Motion Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364; 507 and Fed. R. Bankr. P. 2002, 4001 and 9014; and Local Bankruptcy Rules 4001-4 And 4001-5; (I) Authorizing the Debtor To Obtain Postpetition Financing, (II) Granting Liens and Super-Priority Claims, (III) Granting Adequate Protection To Prepetition Secured Lender, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, filed on September 8, 2020 [clerk's docket no. 107] (the "Motion") filed by Zachair, Ltd. (the "Debtor"). Upon due and adequate notice to all necessary parties, and the Court having reviewed the Motion and all objections or responses thereto, and the Court having reviewed all evidence and argument presented in support of the Motion, the Court finds as follows:

1

A.    On January 17, 2020, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtor is a debtor-in-possession and is operating its business pursuant to §1107 and §1108 of the Bankruptcy Code.

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2), among other provisions, and this Court has authority to enter this order (the "Order") under §§ 105, 361, 363 and 364 of the Bankruptcy Code, among other sections.

C.    The Debtor is indebted to Sandy Spring Bank ("Sandy Spring") under and in connection with that certain *Deed of Trust Note* dated December 11, 2015 in the original principal amount of $2,300,000.00, as modified by those certain *Modification and Extension Agreements* dated November 2, 2018, and April 3, 2019 (together, the "2015 Note").

D.    Sandy Spring's claims against the Debtor under the 2015 Note are secured by a first priority duly perfected security interest and lien in, to, and against, among other things, that certain assemblage of real property totaling 423.45 acres located in Prince George's County, Maryland (the "Property"); any improvements and fixtures on the Property; all personal property located in, upon, or about the Property; and any proceeds derived from the foregoing, pursuant to, among other things, that certain *Deed of Trust and Security Agreement* dated December 11, 2015 (the "Deed of Trust"). The security interests granted by the Deed of Trust have been duly perfected by the filing of one or more financing statements recorded among the financing statement records of the Maryland Department of Assessments & Taxation. The 2015 Note and the Deed of Trust, and any documents executed in connection therewith, are hereafter referred to as the "Pre-Petition Loan Documents."

2

E.     All assets of the Debtor which now or hereafter serve as security for the debt to Sandy Spring under the Pre-Petition Loan Documents are hereafter collectively referred to as the "Pre-Petition Collateral."

F.     The 2015 Note matured on June 11, 2019. The Debtor did not pay the outstanding amounts due to Sandy Spring under the 2015 Note, and therefore is in default under the Pre-Petition Loan Documents.

G.     Sandy Spring asserts that, as of January 1, 2020, there was due under the 2015 Note, principal, accrued interest, fees and charges of $2,381,565.48, exclusive of attorneys' fees and expenses (the "2015 Note Indebtedness"). Additional interest, fees, expenses and charges permitted under the Pre-Petition Loan Documents have continued to accrue daily thereafter.

H.     The Debtor's cash, products, and proceeds of the Pre-Petition Collateral constitute cash collateral of Sandy Spring ("Cash Collateral") as defined in the Bankruptcy Code.

I.     PD Hyde Field LLC ("PD Hyde") filed a proof of claim asserting, among other things, a security interest in the Debtor's assets in the amount of $1,200,000. The Debtor disputes PD Hyde's claim and security interest, and no finding is made in this Order with respect to such claim or interest.

J.     The Debtor filed the Motion seeking approval of a debtor-in-possession loan from Legalist DIP SPV II, LP ("Legalist") in the amount of $1,500,000 (the "Legalist Loan"). Among other things, the Legalist Loan required that it be secured by a priming lien under section 364(d) of the Bankruptcy Code, ahead of all other liens and security interests in the Property.

3

K.     Sandy Spring and PD Hyde opposed the Motion.   The parties engaged in extensive discovery, including production of documents, depositions, and a judicial view of the Property.  The hearing on the Motion was scheduled for a two-day trial on November 5 and 6, 2020.

L.     Late on November 3, 2020, Sandy Spring presented the Debtor an alternative proposal for debtor-in-possession financing.  The Debtor and Sandy Spring negotiated with respect to such proposal and reached agreement on it on November 4, 2020.  The material terms of the Sandy Spring proposal, as agreed upon by the Debtor and Sandy Spring, were filed on the court docket [clerk's docket no. 165] (inclusive of all such terms, the "Sandy Spring DIP Loan").   This Court held a status conference with respect to the Motion on November 5, 2020.

M.     The Court has reviewed the Motion and the terms of the Legalist Loan and the Sandy Spring DIP Loan.  The Sandy Spring DIP Loan is immeasurably better for the Debtor and its bankruptcy estate than the Legalist Loan.  Among other things: (1) the interest rate of the Sandy Spring DIP Loan is 6.25%, whereas the Legalist Loan would bear interest at 12%; (2) the Legalist Loan would require monthly payment, and thus would compound monthly, whereas interest under the Sandy Spring DIP Loan will be paid at maturity; (3) the Legalist Loan included substantial additional fees, such as a commitment fee in the amount of 2.75% of the Legalist Loan facility, an underwriting fee in the amount of 1.75% of the Legalist Loan facility, a monitoring fee in the amount of 1.75% of the Legalist Loan facility (payable monthly), and if prepaid, a make whole fee in the amount of 4.75%.  The Sandy Spring Loan has no fees.

4

N.      The Debtor's decision to enter into an agreement with Sandy Spring as to the Sandy Spring DIP Loan (including without limitation replacing Legalist as the proposed lender) was a proper exercise of the Debtor's business judgment and its fiduciary duties.  Entry of this Order (including the authority to enter into the Sandy Spring DIP Loan and the use of cash collateral) is in the best interest of the Debtor, its creditors and the bankruptcy estate in that the Sandy Spring DIP Loan and use of cash collateral will facilitate the Debtor's reorganization.

O.      Sandy Spring and the Debtor acted in good faith, at arms-length, and without any collusion, in connection with the Motion and the Sandy Spring DIP Loan.  Sandy Spring is entitled to the protections set forth in section 364(e) of the Bankruptcy Code with respect to the Sandy Spring DIP Loan, and its liens, claims, priorities, rights and remedies.

P.      The Debtor, Sandy Spring and PD Hyde consent to the entry of this Order, and any opposition to the Motion filed by Sandy Spring and PD Hyde is withdrawn solely for the purpose of this Order and the approval the Sandy Spring DIP Loan.

Q.      The Sandy Spring DIP Loan meets all requirements set forth in the Bankruptcy Code, including without limitation, sections 364(c) and 364(d) of the Bankruptcy Code. Specifically, the Debtor is unable to obtain unsecured credit or credit secured by a junior lien on the Property.  The Debtor has an immediate and ongoing need for financing in the amounts permitted by the Sandy Spring DIP Loan.  The Debtor is unable to obtain financing on terms more favorable than those provided by Sandy Spring under the Sandy Spring DIP Loan.

R.      Sufficient and adequate notice of the Motion has been given.  The terms of the Sandy Spring DIP Loan are well within the scope of the Motion, and no further notice of the Motion, the Sandy Spring DIP Loan, or entry of this Order is required.

Based on the foregoing findings and the record herein, and after due deliberation thereon, and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED and DECREED that:

1.      The Motion is GRANTED as set forth herein with respect to the approval of the Sandy Spring DIP Loan and the Debtor's use of cash collateral.  The Motion is DENIED to the extent it sought approval of the Legalist Loan.

2.      The Debtor is hereby authorized to enter into, and perform with respect to, the Sandy Spring DIP Loan, and to execute documents and instruments necessary or appropriate to evidence and/or secure the Sandy Spring Loan and all transactions contemplated thereby (the "Sandy Spring DIP Loan Documents").  Sandy Spring and the Debtor shall cooperate in good faith with respect to preparation of the Sandy Spring DIP Loan Documents.

3.      Sandy Spring is hereby granted a lien and security interest in all assets of the Debtor (including without limitation, the Property) to secure any and all post-petition loans made by Sandy Spring to the Debtor pursuant to the Sandy Spring DIP Loan, or other obligations arising under the Sandy Spring DIP Loan Documents.

4.       Subject to the terms and conditions of this Order, the Debtor is authorized and permitted to use Cash Collateral in accordance with the budget attached hereto as **Exhibit A** (the "Budget") from the date of this Order through and including December 31, 2021, as may be extended by further order of the Court (the "Cash Collateral Period"), or as otherwise consented to by Sandy Spring.  Except as otherwise expressly provided in this Order or as set forth in the Sandy Spring term sheet (clerk's docket no. 165), Cash Collateral may be used (a) during the Cash Collateral Period, as may be extended, and (b) up to the amounts stated for any line item plus 10% for each line item, during the periods and for the purposes identified in the Budget.

5.      If Cash Collateral is not used for a particular line item in the Budget during the period for which Cash Collateral usage is authorized for such line item in this Order, or if Cash Collateral is used in an amount less than specified in such line item during the budgeted period, then the Debtor may use the unused balance of such line item in subsequent periods.  The Debtor also may use amounts designated as "miscellaneous" or "other" for any business expense, regardless whether such expense falls within a specific budget category.

6.      As adequate protection for the use and/or diminution of the interests of Sandy Spring in the Cash Collateral (the "Adequate Protection"), Sandy Spring shall receive a replacement lien in all post-petition Cash Collateral to the extent of its pre-petition Cash Collateral used pursuant to this Order (or any prior cash collateral order).

7.      This Order shall be sufficient and conclusive evidence of the validity, perfection and priority of any claim or lien granted to Sandy Spring by this Order with respect to the Adequate Protection without the necessity of filing or recording any financing statement, deed of trust, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect in accordance with applicable non-bankruptcy law any claim or lien granted by this Order with respect to the Adequate Protection, or to entitle Sandy Spring to the priorities granted herein. Notwithstanding the foregoing, Sandy Spring is authorized to file, as it deems necessary in its sole discretion, such financing statements, notices of lien and other similar documents to perfect in accordance with applicable non-bankruptcy law any lien granted by this Order with respect to the Adequate Protection, and all such financing statements, notices of lien and other similar documents shall be deemed to have been filed or recorded as of the Petition Date with respect to securing the Debtor's use of cash collateral, and as of the date of the entry of this Order with

respect to the Sandy Spring Loan; provided, however, that no such filing or recordation shall be necessary or required to create or perfect any lien granted by this Order with respect to the Adequate Protection.  The Debtor is authorized and directed to execute and deliver to Sandy Spring all financing statements, notices of lien and other documents as Sandy Spring may reasonably request.

8.      The Debtor shall maintain insurance coverage on the Property.

9.      The automatic stay provisions of Section 362 of the Bankruptcy Code are modified to the extent necessary to permit Sandy Spring to perform any act authorized or permitted under this Order.

10.     In the event any or all of the provisions of this Order are hereafter reversed, stayed, modified, amended, or vacated by a subsequent order of the Court or any other court, such reversal, stay, modification, amendment, or vacation shall not affect the validity of any right or obligation arising under this Order prior to the effective date of such modification, amendment or vacation, and such right or obligation shall be governed in all respects by the provisions of this Order.

11.     Notwithstanding Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules, this Order, the terms of the Sandy Spring DIP Loan and the use of Cash Collateral authorized herein shall become effective immediately upon approval by the Court.  Except with respect to the payment of accrued items set forth in the Budget, the use of Cash Collateral authorized herein shall terminate at the conclusion of the Cash Collateral Period, subject to the Debtor's right to seek further order of the Court authorizing use of Cash Collateral.  Notwithstanding the foregoing or any other authority to the contrary in this Order, the Debtor's authority to use Cash

Collateral pursuant to this Order, and Sandy Spring's obligations with respect to advances under the Sandy Spring DIP Loan, shall terminate immediately and automatically, without notice of any kind, upon the conversion of this chapter 11 case to a chapter 7 case, entry of an order authorizing appointment of a Chapter 11 trustee, or the dismissal of this chapter 11 case. Termination of the use of Cash Collateral authorized herein shall not impair the continuing effectiveness and enforceability of all other provisions in this Order, and shall not act as a waiver or expunge the Debtor's right to request, on an emergency basis, further Court authority for Cash Collateral use.

12.     Within three business days after the entry of this Order, the Debtor shall serve a copy of this Order on: (a) the Office of the United States Trustee; (b) the creditors included on the list filed under Federal Rule of Bankruptcy Procedure 1007(d); (c) counsel to Sandy Spring; and (d) those persons who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002; provided, however, that service by ECF shall suffice with respect to parties who receive ECF notice directly or through their counsel of record.

13.     Subject to applicable law, the terms of this Order shall be binding upon and inure to the benefit of the successors and assigns of each party hereto, including any trustee appointed with regard to the Debtor under the Bankruptcy Code, whether in a chapter 7 or in this chapter 11 case.

14.     This Court retains jurisdiction to enforce or construe the terms of this Order, the Sandy Spring DIP Loan, and the Sandy Spring DIP Loan Documents.

**End of Order**

Agreed, Stipulated, and Consented To:

*/s/ Bradford F. Englander*
Bradford F. Englander, Esq., Bar No. 11951
David W. Gaffey (Admitted *Pro Hac Vice*)
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Facsimile: (703) 280-3370
Email: benglander@wtplaw.com
       dgaffey@wtplaw.com

*Counsel for the Debtor*

*/s/ Bruce Henry*
Bruce Henry, Esq., Bar No. 05873
Henry & O'Donnell, P.C.
300 N. Washington St., Suite 204
Alexandria, Virginia 22314
Telephone: (703) 548-2100
Email: BWH@henrylaw.com

*Counsel to Sandy Spring Bank*

*/s/ Michael J. Lichtenstein*
Michael J. Lichtenstein (Bar No. 05604)
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland  20854
Telephone: (301) 230-5231
Email: mjl@shulmanrogers.com

*Counsel for PD Hyde Field LLC*

**Copies to:**

Bradford F. Englander, Esq.
Whiteford, Taylor & Preston L.L.P.
3190 Fairview Park Drive, Suite 800
Falls Church, VA 22042

Sandy Spring Bank
c/o Bruce W. Henry, Esq.
Henry & O'Donnell, P.C.
300 N Washington Street, Suite 204
Alexandria, VA 22314

Michael J. Lichtenstein (Bar No. 05604)
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland  20854

Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770

**<u>Exhibit A</u>**

DRAFT

Subject to Revision

Exhibit A

**Zachair, Ltd.**
14-Month Cash Flow Forecast

| | | November 2020 | December 2020 | January 2021 | February 2021 | March 2021 | April 2021 | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 | December 2021 | 14-month |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Month 13 | Month 14 | Total |
| I. | **Receipts** | | | | | | | | | | | | | | | |
| | a) Airport Operations | | | | | | | | | | | | | | | |
| | Rental Income | 10,790.00 | 10,790.00 | 10,585.00 | 10,585.00 | 10,585.00 | 10,585.00 | 10,585.00 | 10,585.00 | 10,585.00 | 10,585.00 | 10,585.00 | 10,585.00 | 10,585.00 | 10,585.00 | 148,600.00 |
| | b) Other | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 8,400.00 |
| | Total receipts | 11,390.00 | 11,390.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 157,000.00 |
| II. | **Disbursements** | | | | | | | | | | | | | | | |
| | a) Airport Costs | | | | | | | | | | | | | | | |
| | Computer Maintenance Agreement | 222.00 | - | - | - | 222.00 | - | - | - | 222.00 | - | - | - | 222.00 | - | 888.00 |
| | Comcast/Internet | 690.00 | 690.00 | 690.00 | 690.00 | 690.00 | 690.00 | 690.00 | 690.00 | 690.00 | 690.00 | 690.00 | 690.00 | 690.00 | 690.00 | 9,660.00 |
| | WSSC Water | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,400.00 |
| | PEPCO | 610.00 | 610.00 | 610.00 | 610.00 | 610.00 | 610.00 | 610.00 | 610.00 | 610.00 | 610.00 | 610.00 | 610.00 | 610.00 | 610.00 | 8,540.00 |
| | Verizon FIOS | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 1,680.00 |
| | Heating/Diesel Fuel | - | 500.00 | - | - | - | 500.00 | - | - | - | - | 500.00 | - | - | - | 1,500.00 |
| | Airport License | - | - | - | - | - | - | - | - | - | - | 10.00 | - | - | - | 10.00 |
| | Discharge Permit | - | - | - | - | - | - | - | - | - | - | 120.00 | - | - | - | 120.00 |
| | Maintenance/Repairs | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 16,000.00 |
| | Pest Control | - | 175.00 | - | - | - | 175.00 | - | - | - | 175.00 | - | - | - | - | 525.00 |
| | Trash removal | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 1,540.00 |
| | Fetter Aviation Management Fee | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 5,064.73 | 70,906.22 |
| | Total Airport Costs | 7,916.73 | 8,369.73 | 7,694.73 | 7,694.73 | 7,916.73 | 8,369.73 | 8,194.73 | 8,194.73 | 8,416.73 | 8,369.73 | 8,324.73 | 7,694.73 | 7,916.73 | 7,694.73 | 112,769.22 |
| | b) Site Management/Mining | | | | | | | | | | | | | | | |
| | MDE Permits | - | 150.00 | - | - | 1,000.00 | - | - | - | - | - | - | - | - | 150.00 | 1,300.00 |
| | Mining Bond (Annual) | - | - | - | - | 15,000.00 | - | - | - | - | - | - | - | - | - | 15,000.00 |
| | Hall Road Bond (Annual) | 2,400.00 | - | - | - | - | - | - | - | - | - | 2,400.00 | - | - | - | 4,800.00 |
| | Hall Road Permit (Annual) | 250.00 | - | - | - | - | - | - | - | - | - | 250.00 | - | - | - | 500.00 |
| | Site/Environmental Maintenance | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Total Site Management/Mining Costs | 2,650.00 | 150.00 | - | - | 16,000.00 | - | - | - | - | - | 2,650.00 | - | - | 150.00 | 21,600.00 |
| | c) Development/Sale Costs | | | | | | | | | | | | | | | |
| | Project Development/Concept Plan | 5,000.00 | 5,000.00 | - | - | - | - | - | - | - | - | - | - | - | - | 10,000.00 |
| | Earthwork Grading Analysis/Utility Layout/Geo | - | 10,000.00 | - | - | - | - | - | - | - | - | - | - | - | - | 10,000.00 |
| | Land Use/Zoning Counsel | 5,000.00 | - | 20,000.00 | - | - | - | 15,000.00 | - | - | 10,000.00 | - | - | - | - | 50,000.00 |
| | GeoTech Consultant | - | 50,000.00 | - | - | - | - | - | - | - | - | - | - | - | - | 50,000.00 |
| | Engineer | 10,500.00 | 25,000.00 | 25,000.00 | 25,000.00 | - | - | - | - | - | - | - | - | - | - | 85,500.00 |
| | Environmental Consultant | 10,000.00 | - | - | - | - | - | - | - | - | - | - | - | - | - | 10,000.00 |
| | Development Consultant | 5,000.00 | 5,000.00 | 5,000.00 | - | - | - | - | - | - | - | - | - | - | - | 15,000.00 |

Prepared by SC&H Group, Inc. on 11/6/2020 at 2:47 PM

DRAFT

Subject to Revision

Exhibit A

**Zachair, Ltd.**
14-Month Cash Flow Forecast

| | November 2020 Month 1 | December 2020 Month 2 | January 2021 Month 3 | February 2021 Month 4 | March 2021 Month 5 | April 2021 Month 6 | May 2021 Month 7 | June 2021 Month 8 | July 2021 Month 9 | August 2021 Month 10 | September 2021 Month 11 | October 2021 Month 12 | November 2021 Month 13 | December 2021 Month 14 | 14-month Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Development/Sale Costs | 35,500.00 | 95,000.00 | 50,000.00 | 25,000.00 | - | - | 15,000.00 | - | - | 10,000.00 | - | - | - | - | 230,500.00 |
| **d) General and Administrative Expenses** | | | | | | | | | | | | | | | |
| Company Vehicle Insurance | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 3,500.00 |
| Business Insurance | - | - | - | - | 15,446.00 | - | - | - | - | - | - | - | - | - | 15,446.00 |
| State of MD - filing fee (Zachair, Ltd.) | - | - | - | - | - | 300.00 | - | - | - | - | - | - | - | - | 300.00 |
| Verizon Wireless | 429.61 | 429.61 | 429.61 | 429.61 | 429.61 | 429.61 | 429.61 | 429.61 | 429.61 | 429.61 | 429.61 | 429.61 | 429.61 | 600.00 | 6,184.93 |
| Real Estate Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tax Accountant | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,800.00 |
| Bookkeeping/MORs | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 5,600.00 |
| Other | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 14,000.00 |
| Total General and Administrative Expenses | 2,279.61 | 2,279.61 | 2,279.61 | 2,279.61 | 17,725.61 | 2,579.61 | 2,279.61 | 2,279.61 | 2,279.61 | 2,279.61 | 2,279.61 | 2,279.61 | 2,279.61 | 2,450.00 | 47,830.93 |
| **e) Secured Lender - Sandy Spring Bank** | | | | | | | | | | | | | | | |
| Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Secured Lender - Sandy Spring Bank Costs | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **f) Non-Operating/Restructuring** | | | | | | | | | | | | | | | |
| Professional Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Litigation Professionals | 70,000.00 | - | - | - | - | - | - | - | - | - | - | - | - | - | 70,000.00 |
| US Trustee Fees | - | - | 1,950.00 | - | - | 975.00 | - | - | 650.00 | - | - | 650.00 | - | 650.00 | 4,875.00 |
| Total Non-Operating/Restructuring | 70,000.00 | - | 1,950.00 | - | - | 975.00 | - | - | 650.00 | - | - | 650.00 | - | 650.00 | 74,875.00 |
| **III. Cash Reconciliation** | | | | | | | | | | | | | | | |
| Citibank Account | | | | | | | | | | | | | | | |
| Beginning Balance | 37,592.12 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,710.66 | 20,549.32 | 20,000.00 | 20,000.00 | 20,560.66 | 21,549.32 | |
| Operating Deposits | 11,390.00 | 11,390.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | 11,185.00 | | |
| DIP Loan Deposits | 89,364.22 | 94,409.34 | 50,739.34 | 23,789.34 | 30,457.34 | 739.34 | 14,289.34 | - | - | 8,915.02 | 2,069.34 | - | - | - | |
| Transfers Out | (118,346.34) | (105,799.34) | (61,924.34) | (34,974.34) | (41,642.34) | (11,924.34) | (25,474.34) | (10,474.34) | (11,346.34) | (20,649.34) | (13,254.34) | (10,624.34) | (10,196.34) | (10,944.73) | |
| Ending Balance | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,710.66 | 20,549.32 | 20,000.00 | 20,000.00 | 20,560.66 | 21,549.32 | 21,789.59 | |

Prepared by SC&H Group, Inc. on 11/6/2020 at 2:47 PM