DocuSign Envelope ID: 9B2986EB-C70B-4218-ABEF-CB108AAE5F68

## Settlement and Plan Support Agreement

This Settlement and Plan Support Agreement (the "Agreement") is entered into as of this 8th day of ~~August, 2021~~ September, 2021, by and among Zachair Ltd., Maryland corporation ("Zachair" or the "Debtor"), Dr. Nabil Asterbadi ("Asterbadi") (Zachair and Asterbadi are referred to collectively as the "Zachair Parties"), PD Hyde Field LLC, a limited liability company organized under the laws of Maryland ("PD") and Watt Companies, Inc. a corporation organized under the laws of California ("Watt") (PD and Watt are referred to collectively as the "PD Parties"). Zachair, Asterbadi, PD and Watt are referred to individually as a "Party" and collectively as the "Parties."

### Recitals

A. On January 17, 2020 (the "Petition Date"), Zachair filed a voluntary chapter 11 petition, commencing bankruptcy case, no. 20-10691-TJC (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"). Zachair is the debtor and debtor-in-possession in the Bankruptcy Case.

B. Zachair and WV/B Palisades Development LLC, a California limited liability company ("WV/B") entered into a Real Estate Sale Contract dated as of March 22, 2013, which was amended pursuant to Agreement and First Amendment to Real Estate Sale Contract dated April 8, 2013, and further amended pursuant to Second Amendment to Real Estate Sale Contract dated April 19, 2013, and further amended pursuant to Third Amendment to Real Estate Contract, and a letter agreement, each dated November 12, 2015 (collectively, the "PD Sale Contract"). WV/B assigned its rights under the PD Sale Contract to PD pursuant to Assignment of Real Estate Sale Contract dated November 9, 2015.

C. The PD Sale Contract provided for Zachair's sale to PD of approximately 423.45 acres of real property located in Prince George's County, Maryland (the "Property"), more fully described in Exhibit A to the *Amended Order (A) Approving the Stale of the Debtor's Property Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Sales Contract, (C) Approving Bid Procedures, (D) Scheduling Bid Deadline, Auction and Sale Hearing, (E) Approving Form and Manner of Notice Thereof, and (F) Granting Certain Related Relief*, entered on July 27, 2021 at clerk's docket no. 235 (the "Sale Order").

D. Disputes arose under the PD Sale Contract, and PD filed a complaint against Zachair and Asterbadi (as amended, the "Complaint") in the Circuit Court for Prince George's County, Maryland (the "Circuit Court"), case no. 18-42893 (the "Circuit Court Case"). The Zachair Parties dispute the assertions in the Complaint, and believe that, if litigated, Zachair would assert counterclaims against the PD Parties.

E. In connection with the Complaint, PD filed a lis pendens on the Property. Pursuant to the requirements of the Sale Order, PD has released the lis pendens.

F. On or about May 20, 2020, PD filed proof of claim no. 18-1 (the "PD Proof of Claim") in the Bankruptcy Case asserting a claim in the aggregate amount of $5,617,818.00, and asserting that $1,200,000.00 of such claim was secured (the remainder asserted to be an unsecured non-priority claim).

DocuSign Envelope ID: 9B2986EB-C70B-4218-ABEF-CB108AAE5F68

G.  On June 11, 2021, Zachair filed Debtor's *Motion for an Order (A) Approving the Stale of the Debtor's Property Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Sales Contract, (C) Approving Bid Procedures, (D) Scheduling Bid Deadline, Auction and Sale Hearing, (E) Approving Form and Manner of Notice Thereof, and (F) Granting Certain Related Relief*, clerk's docket no. 215 (the "Sale and Bid Procedure Motion"). Among other relief, the Sale and Bid Procedure Motion sought preliminary approval of a Real Estate Sales Contract dated June 1, 2021, between Zachair as seller, and JP Land Holdings, LLC as purchaser attached as Exhibit B to the Sale and Bid Procedure Motion (as may be amended, the "JP Sale Contract").

H.  On June 28, 2021, Zachair filed its *Debtor's Plan of Reorganization*, clerk's docket no. 224 (as may be amended, the "Plan"), and *Disclosure Statement with Respect to Debtor's Plan of Reorganization*, clerk's docket no 225 (as may be amended, the "Disclosure Statement").

I.  To facilitate confirmation and consummation of the Plan, Zachair is seeking a commitment for a loan in an amount not less than $7,550,000 (net of lender's points, fees, prepaid interest, escrows and closing costs) to provide funds for payments under the Plan ("Exit Financing").

J.  Without admitting liability for, or the validity of, any pending or threatened claims or counterclaims, the Parties desire to settle and resolve their disputes on the terms set forth in this Agreement.

## Agreement

1.  PD Proof of Claim. Effective on the Approval Date, PD shall have an allowed non-priority unsecured claim in the Bankruptcy Case in the amount of Three Million Two Hundred Thousand and No/100 Dollars ($3,200,000.00), and the PD Proof of Claim shall be deemed amended to reflect the amount and character of PD's claim, as set forth in this section. The Approval Order shall provide for the allowance of the PD Proof of Claim for all purposes in this Bankruptcy Case, or otherwise. The PD Proof of Claim shall be treated as set forth below. Except as set forth in this section, the Parties waive any and all right to amend or seek reconsideration of the PD Proof of Claim under Section 502(j) of the United States Bankruptcy Code (the "Bankruptcy Code"), Rule 3008 of the Federal Rule of Bankruptcy Procedures (the "Bankruptcy Rules"), or otherwise. Except for the PD Proof of Claim, the PD Parties shall not file, or cause any other person to file on their behalf, or on behalf of any of their affiliates, any proof of claim or motion for allowance of an administrative expense.

2.  Treatment of PD Proof of Claim.

    a.  Treatment of PD Proof of Claim if Exit Financing is Obtained. The Debtor diligently shall pursue Exit Financing. If the Debtor succeeds in obtaining Exit Financing that provides funds in a principal amount not less than $7,550,000 (net of lender's points, fees, prepaid interest, escrows and closing costs), or such lesser amount as the Debtor in its sole discretion may elect, and if the Exit Financing is funded prior to the end of 2021, the Debtor shall pay $1,600,000 (the "Effective Date Payment") to PD concurrently with the funding of such financing, and shall

2

DocuSign Envelope ID: 9B2986EB-C70B-4218-ABEF-CB108AAE5F68

        pay an additional $500,000 (the "Back End Payment") to PD concurrently with the Debtor's receipt of the second installment payment due under the Note, as such term is defined in the JP Sales Contract. No interest shall accrue or be paid on the payments set forth in this subsection.

    b. Treatment of PD Proof of Claim if Exit Financing is Not Obtained. If the Debtor is not able to arrange or consummate Exit Financing on the terms set forth in Subsection 2(a), the Debtor shall pay the PD Proof of Claim in full *pari passu* with the payment of principal to other allowed general unsecured claims. The PD Proof of Claim shall be paid in full not later than the due date for the payment of the second installment under the Note (i.e., if extended, i.e., March 1, 2025). No interest shall accrue or be paid on the payments set forth in this subsection.

    c. Overbid. In the event that there is a competing bid for the Property that results in a net increase in the purchase price payable under the JP Sales Contract (or a replacement for the JP Sales Contract), in addition to the payments provided above, PD shall be paid an amount equal to 10% of the net increase in the purchase price, capped at $500,000.

    3.     Mutual General Release. Effective on the Approval Date, the Zachair Parties, on the one hand, and the PD Parties, on the other, on behalf of themselves and their respective affiliates, hereby release, acquit and forever discharge each other, and each of their respective affiliates, agents, employees, managers, officers, directors, owners, servants, representatives, attorneys, accountants, predecessors in interest, successors, assigns, spouses, heirs, and legatees (individually, a "Released Party", and collectively, the "Released Parties") from any and all liabilities, claims, suits, debts, liens, losses, causes of action, demands, rights, damages, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, liquidated or unliquidated, disputed or undisputed, that either of them may have or claim to have against the other (and its respective Released Parties) arising out of any act, omission or circumstance arising or existing from the beginning of time through the date of this Agreement (collectively, "Released Claims"). The parties each hereby represent, warrant and covenant that none of them will sue, or otherwise prosecute in any way, any Released Party with respect to any of the Released Claims. Each party hereby further represents, warrants and covenants that he or it has not assigned, sold, encumbered or otherwise transferred or disposed of, any interest in any of the Released Claims, and that he or it will not assign, sell or otherwise transfer, encumber or dispose of, any interest in any of the Released Claims. Without acknowledging or admitting the applicability of California law, each of the Parties acknowledge and agree that they understand the meaning and effect of Section 1542 of the California Civil Code, and waive the applicability of such Section to the fullest extent permitted under law. Section 1542 provides:

> **"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

Notwithstanding anything to the contrary in this Section, nothing in this Section releases, acquits, waives or discharges any of the following: (a) the PD Proof of Claim (as amended pursuant to

DocuSign Envelope ID: 9B2986EB-C70B-4218-ABEF-CB108AAE5F68

this Agreement); (b) any obligations under the Sale Order; (c) any obligations under this Agreement; or (d) liability for acts or omissions occurring after the date of this Agreement. Without waiving any right to assert or deny that that the he Parties further agree that the PD Sale Contract previously was terminated, for purposes of eliminating any doubt, the Parties agree that effective as of the Approval Date, the PD Sale Contract is hereby deemed terminated, no Party shall have any prospective performance obligation under the PD Sale Contract, and the PD Parties shall have no right or interest in the Property.

4. Documents and Entitlements. Not later than five (5) business days following the Approval Date, the PD Parties shall deliver to the Debtor all plans, drawings, documents, permits, entitlements, appraisal reports, marketing materials, communications with builders and other materials relating to the Property (the "Materials"). The PD Parties hereby (a) authorize the use of the Materials by the Debtor or any purchaser of the Property, and (b) consent to the Debtor's or any purchaser's engagement of any consultant previously engaged by PD with respect to the Property, and to the consultant sharing with the Debtor or any purchaser its work product generated on behalf of PD. For the purposes of this Section, "purchaser" means any person who is under contract with the Debtor to purchase the Property, or who has closed under such contract.

5. Circuit Court litigation. Any and all complaints filed in PD Hyde Field LLC v. Zachair, Ltd. et al., Civil Case no. 18-42893 (Circuit Court for Prince George's County, Maryland) (the "Circuit Court Case") shall be dismissed with prejudice within ten (10) days after entry of the Approval Order. Upon execution of the Agreement, the Parties will advise the Circuit Court of the pendency of the settlement. Pending the entry of the Approval Order, the Parties will defer all activities in connection with the Circuit Court Case.

6. Amendments to Plan and Disclosure Statement. Promptly upon execution by all Parties of this Agreement, the Debtor shall modify its Plan and Disclosure Statement to provide for the terms set forth in this Agreement. The Debtor shall have the right to make such further and additional amendments to the Plan and Disclosure Statement as the Debtor determines is appropriate. Such amendments may include altering the treatment of other creditors under the Plan. PD will not oppose the Debtor's amendments to the Plan or the Disclosure Statement and, if requested by the Debtor, will affirmatively consent to such amendments, provided that the amendments do not adversely alter the allowance or treatment of the PD Claim under the Agreement.

7. Amendments to Sales Contract. The Debtor anticipates the possibility of amendments to the Sales Contract, or the possibility of different terms in the event that a competing bidder becomes the Purchaser. PD will not oppose modifications to the Sales Contract, or the Debtor entering into a competing real estate purchase agreement, and, if requested by the Debtor, will affirmatively consent to such amendments or replacements, provided that the amendments and/or replacements do not adversely alter the treatment of PD under the Agreement. The possible extensions of time mentioned above are not considered material or adverse for purposes of this subsection. In the event that adverse amendments or replacements are proposed, the Debtor may request PD's consent to such amendments or replacements with respect to the Sales Contract, and PD will not unreasonably withhold, condition or delay its consent.

DocuSign Envelope ID: 9B2986EB-C70B-4218-ABEF-CB108AAE5F68

8. <u>Standstill</u>. PD shall not file any motion, or take any action, that would impede the Debtor from marketing or selling the Property, conducting the Bankruptcy Case, obtaining approval of its Disclosure Statement confirming its Plan, or seeking conversion or dismissal of the chapter 11 case (provided that any dismissal order preserve the Approval Order and the terms of this Agreement). Upon the occurrence of the Approval Date, the PD Parties will have no further active involvement in the Bankruptcy Case, including without limitation filing a plan in the Bankruptcy Case, except as expressly provided in this Agreement.

9. <u>Plan Support</u>. PD shall vote in favor of any plan proposed by the Debtor that implements and is consistent with the terms of the Agreement. Absent the Debtor's written consent, PD shall vote to reject any plan of liquidation or reorganization filed in the Bankruptcy Case, other than the Debtor's Plan.

10. <u>Representations and Warranties</u>. Each Party represents and warrants:

    a. He, she or it has received independent legal advice from its attorneys with respect to the advisability of making the settlement provided for in this Agreement.

    b. He, she or it has made such independent investigation of the facts pertaining to this Agreement, and of all matters pertaining to it, as he, she or it deems necessary.

    c. No Party (nor any officer, agent, partner, employee, representative, or attorney for any party), has made any statement or representation to any other Party regarding any fact relied upon in entering into this Agreement, and neither Party relies upon any statement, representation or promise of any other Party (or any officer, agent, partner, employee, representative, or attorney of or for any Party), in executing this Agreement, or in making the settlement provided for in this Agreement.

    d. He, she or it, or a responsible officer, has read this Agreement and understands the contents hereof. Each individual executing this Agreement represents that he or she is empowered to do so and has the authority to bind the Party on whose behalf this Agreement is signed; provided, however, that the Debtor's authority is subject to approval by the Bankruptcy Court.

    e. The recitals set forth above are true and correct.

11. <u>No Admissions</u>. This Agreement memorializes the settlement of the Transfers that are denied and contested, and nothing contained in this Agreement shall be construed as an admission by any Party of any liability or defense of any kind to any other Party.

12. <u>Miscellaneous Provisions</u>.

    a. This Agreement shall be deemed to have been executed and delivered in the State of Maryland, and the rights and obligations of the Parties to this Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Maryland. The Parties expressly consent to the jurisdiction of the Bankruptcy Court to enforce this Agreement and to resolve any and all disputes

5

DocuSign Envelope ID: 9B2986EB-C70B-4218-ABEF-CB108AAE5F68

arising hereunder, and to enter final orders enforcing and/or construing this Agreement.

b. This Agreement is the entire and exclusive agreement between the Parties. This Agreement supersedes all prior and contemporaneous oral and written agreements and discussions. This Agreement may be amended only by an Agreement in writing signed by all Parties to this Agreement.

c. Headings or captions contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

d. This Agreement is binding upon and shall inure to the benefit of the Parties and each of their present and former agents, servants, officers, directors, employees, shareholders, principals, predecessors, alter egos, partners, parents, subsidiaries, attorneys, insurers, reinsurers, sureties, spouses, heirs, executors, administrators, trustees, successors, assigns and any other such similarly situated person or entity. The releases set forth above further shall inure to the benefit of the Released Parties.

e. In the event of any lawsuit or other proceeding, between the Parties arising out of or in connection with this Agreement or in the event of any effort by a Party to enforce this Agreement (including without limitation any collection proceedings), in addition to all other relief to which the prevailing party may be entitled, the prevailing party shall be entitled to recover reasonable attorneys' fees, court costs, and all other expenses incurred in connection with such litigation or proceeding, including expert and witness fees.

f. Except as otherwise set forth in this Agreement, the Parties shall each pay their own legal fees and other expenses relating to the cause or causes of action asserted or resolved by this Agreement, or in any way relating to this Agreement.

g. This Agreement may be executed in counterparts, each of which shall be an original and all of which together shall constitute one and the same document.

h. Executed facsimile or emailed transmissions of this Agreement shall be deemed originals and shall be fully enforceable as the original signature.

13. Bankruptcy Court Approval. The Parties acknowledge that this Agreement is subject to approval by the Bankruptcy Court and shall not be effective until the entry of an order by the Bankruptcy Court approving this Agreement (the "Approval Order"), and the expiration of any stay of the Approval Order. The "Approval Date," as such term is used in this Agreement, shall be the first business day following the entry of the Approval Order and the expiration of any stay as may be imposed with respect to the Approval Order under the Bankruptcy Rules or any court order. The Debtor reserves the right to seek the inclusion in the Approval Order of a waiver of all stays imposed under the Bankruptcy Rules. In the event that the Bankruptcy Court denies approval of this Agreement, or the Approval Order is reversed by a final order that is not subject to any further appeal, either Party may terminate this Agreement by

DocuSign Envelope ID: 9B2986EB-C70B-4218-ABEF-CB108AAE5F68

providing written notice to all other Parties. In the event this Agreement is terminated in accordance with this Section, all Parties shall reserve their respective rights.

Having read the foregoing, and with a full understanding of all of the terms and covenants included in the Agreement, the undersigned freely, knowingly and voluntarily, agree to be bound by the Agreement as of the date first set forth above.

**Zachair Ltd.**

By: _____
Nabil J. Asterbadi
President

_____
Nabil J. Asterbadi, Individually

**PD Hyde Field LLC**

By: _____
    Tony Dolim

[print name]: Tony Dolim

[title]: SVP, Finance & Accounting

**Watt Companies, Inc.**

By: _____
    Tony Dolim

[print name]: Tony Dolim

[title]: SVP, Finance & Accounting

11909710