IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| In re: | ) |
| | ) |
| Zachair, Ltd., | ) Case No.: 20-10691-TJC |
| | ) |
| Debtor. | ) Chapter 11 |
| | ) |

**ORDER (A) APPROVING THE SALE OF THE DEBTOR'S PROPERTY
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES,
(B) APPROVING THE CONTRACT, (C) APPROVING
BID PROCEDURES, (D) SCHEDULING BID DEADLINE, AUCTION
AND SALE HEARING, (E) APPROVING FORM AND MANNER OF NOTICE
<u>THEREOF, AND (F) GRANTING CERTAIN RELATED RELIEF</u>**

Upon the *Debtor's Second Motion for an Order (A) Approving the Sale of the Debtor's Property Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Contract, (C) Approving Bid Procedures, (D) Scheduling Bid Deadline, Auction and Sale Hearing, (E) Approving Form and Manner of Notice Thereof, and (F) Granting Certain Related*

1

*Relief*, filed on June 5, 2022 [clerk's docket no. 321] (the "Motion")[1] of Zachair, Ltd., the debtor and debtor in the above-captioned case (the "Debtor"), it appearing that the relief granted herein is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, **THE COURT FINDS THAT:**

      A.    <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

      B.    <u>Jurisdiction and Final Order</u>. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    <u>Bases for Relief Requested</u>. The bases for the relief requested in the Motion are: (1) sections 105 and 363 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the attached Bid Procedures and the Motion.

Code"); (2) Rules 2002(a)(2), 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (3) Rule 6004-1 of the Local Bankruptcy Rules for the District of Maryland (the "Local Rules").

D.    Notice. Notice of the Motion and the hearing on the Motion was sufficient under the circumstances and no other or further notice need be provided except as set forth in the Bid Procedures. A reasonable opportunity to object and be heard regarding the relief requested in the Motion has been afforded to parties in interest.

E.    Sale of the Property; Bid Procedures. The Debtor is seeking authority to sell its real property, consisting of approximately 423.45 acres located in Prince George's County, Maryland, as more fully described in **Exhibit A** hereto (the "Property"). The Debtor has entered into a Real Estate Sales Contract dated June 1, 2022 (the "Contract"), which is attached hereto as **Exhibit B**. The Contract is subject to potential overbid. The purchaser under the Contract is NVR, Inc., a Virginia corporation, or to the extent permitted in the Contract, its assignee (the "Stalking Horse Purchaser"). The Property has been marketed amply by the Debtor and its approved broker, Fraser Forbes Real Estate Services, LLC (the "Broker"). Notwithstanding the already ample marketing efforts, the Debtor is permitted under the Contract to continue marketing the Property. The Debtor has proposed Bid Procedures to maximize the recovery on the sale of the Property, and to ensure an orderly sale process (the "Sale"). A copy of the Bid Procedures is attached hereto as **Exhibit C**. The Debtor has articulated good and sufficient cause for authorizing and approving the Bid Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Property. Both the sale to the Stalking Horse Purchaser under the Contract and the Bid Procedures are a proper exercise of the Debtor's business judgment.

F. **Sale Notice**. The Sale Notice, substantially in the form attached hereto as **Exhibit D**, is reasonably calculated to provide all interested parties with timely and proper notice of the Sale, including, without limitation: (a) the date, time, and place of the Auction (if one is held); (b) the Bid Procedures; (c) reasonably specific identification of the Property to be sold; and (d) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests. No other or further notice of the Sale shall be required.

G. **Best Interests of the Estate**. Approval of the Contract and (subject to the outcome of any Auction) the consummation of the Sale under the Contract is in the best interest of the Debtor, its creditors, its estate, and all other parties in interest. The Debtor has demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for this Court to approve the Contract and consummation of the Sale.

H. **Good Faith Purchaser**. The Stalking Horse Purchaser is an arm's length, third-party purchaser and is unrelated to the Debtor. Neither the Stalking Horse Purchaser, nor any of its affiliates, subsidiaries, officers, directors, members, partners, principals, or any of their respective representatives, successors, or assigns is an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. The Contract was negotiated, proposed, and entered into by the Debtor and the Stalking Horse Purchaser without collusion or fraud, in good faith, and on an arm's-length basis. Neither the Debtor, nor the Stalking Horse Purchaser, nor any affiliate of the Stalking Horse Purchaser has engaged in any conduct, action or inaction that would cause or permit the Contract to be avoided under section 363(n) of the Bankruptcy Code. The Stalking Horse Purchaser is purchasing the Property in good faith and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code. The Stalking Horse Purchaser is, therefore, entitled to all of the protections afforded thereby. The consideration provided by

the Stalking Horse Purchaser pursuant to the Contract is (a) reasonably equivalent value under the Bankruptcy Code and any Uniform Fraudulent Transfer Act, (b) fair consideration under any Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, fair salable value, and fair value under any such laws as applicable or any other applicable laws of the United States, any state, territory, or possession thereof, or the District of Columbia. Neither the Debtor nor the Stalking Horse Purchaser has entered into the Contract or is consummating the Sale with any fraudulent or otherwise improper purpose, including, but not limited to, the purpose of hindering, delaying, or defrauding present or future creditors of the Debtor or its estate. The terms of the Contract and the transactions contemplated in connection therewith are fair and reasonable in light of the circumstances of the Debtor's business and the Chapter 11 Case.

I. <u>Free and Clear</u>. Effective as of the Closing, pursuant and subject to the terms of the Contract, the transfer of the Property and the Sale will effect a legal, valid, enforceable, and effective transfer of the Property and will vest the Stalking Horse Purchaser with all of the legal, equitable and beneficial right, title, and interest of the Debtor in the Property, free and clear of (i) all claims, liens, and encumbrances (including any liens as that term is defined in section 101(37) of the Bankruptcy Code and as the term "Liens" is defined in the Contract) relating to, accruing, or arising at any time prior to the Closing Date, including but not limited to the Lien securing the claims of Sandy Spring and real estate taxes and (ii) except as otherwise provided in this Order or the Contract, all debts arising from, relating to, or in any way connected with the Debtor or the Property including any claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guarantees, options in favor of third parties, rights, contractual commitments, restrictions, interests of any kind or nature, mortgages,

hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, covenant or other restrictions of any kind, restrictions, defects of title, attachments, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use or transfer, voting, transfer, receipt of income or other exercise of any attributes of ownership, alter-ego, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this Chapter 11 case, and whether imposed by agreement, understanding, law, equity, or otherwise, known or unknown, contingent or matured, liquidated or unliquidated, including, without limitation, all rights and remedies with respect to the Liens in this clause (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtor's or the Purchaser's interests in the Property, or any similar rights (collectively, as defined in this clause (ii), "Claims"), relating to, accruing or arising at any time prior to the Closing Date.  The Stalking Horse Purchaser would not have entered into the Contract and will not consummate the Sale, thus adversely affecting the Debtor, its estate, and its creditors, unless the Sale is free and clear of all Liens, Claims, encumbrances, and other interests of any kind or nature whatsoever.

      J.      <u>Section 363(f) is Satisfied</u>.  The Debtor may sell the Property free and clear of all Liens, Claims, encumbrances, and other interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Specifically, the Court finds that the standards set forth in sections

363(f)(3) and (5) of the Bankruptcy Code have been satisfied. Without limiting the generality of the foregoing, the Court finds that (1) the affected interests are Liens, and that the price at which the Property is to be sold is greater than the aggregate value of all Liens on the Property; and (2) the holders of Liens and alleged interests in the Property could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Liens or interests.

K. <u>Transaction Not a Sub Rosa Plan.</u> In the event that the Sale of the Property occurs separately from the confirmation of a chapter 11 plan, the sale and assignment of the Property outside of a plan of reorganization pursuant to the Contract neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor. The transaction of the Sale does not constitute a sub rosa chapter 11 plan.

L. <u>Executory Contracts and Unexpired Leases</u>. Nothing in this Order constitutes or approves the assumption or rejection of any executory contract or unexpired lease.

M. <u>Break-Up Fee and Reimbursement</u>. The Stalking Horse Purchaser has expended, and will continue to expend, considerable time, money and energy pursuing closing under the Contract. Recognizing this expenditure of time, energy and resources, the Debtor has agreed to pay a break-up fee (the "Break-Up Fee") in the amount of $600,000 (*i.e.*, approximately 3.5% of the Purchase Price), and to reimburse certain fees and expenses (the "Expense Reimbursement") that have been and may be incurred by the Stalking Horse Purchaser, all on the terms and conditions set forth in the Contract. The Break-Up Fee and Expense Reimbursement are (i) the product of extensive negotiations between the Debtor and the Stalking Horse Purchaser, (ii) a material inducement for, and condition of, the Stalking Horse Purchaser's entry into the Contract, and (iii) fair and reasonable in view of the fact that, if the Break-Up Fee and/or the Expense

7

Reimbursement are triggered, the Stalking Horse Purchaser's efforts will have substantially increased the chances that the Debtor will receive the highest or otherwise best offer for the Property. Payment of the Break-Up Fee and the Expense Reimbursement under the circumstances described in the Contract is: (i) an actual and necessary cost and expense of preserving the Debtor's estate within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefit conferred upon the Debtor's estate by the Stalking Horse Purchaser; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Purchaser; and (iv) necessary to induce the Stalking Horse Purchaser to continue to pursue closing under the Contract and to continue to be bound by the Contract.

      N.      <u>Consumer Privacy Ombudsman</u>. The Sale does not include the transfer of any personally identifiable information. Thus, the appointment of a consumer privacy ombudsman is not required.

      O.      <u>Immediate Effect of Order / Waiver of Stay</u>. Time is of the essence in consummating the Sale. The Court expressly finds that there is no just reason for delay in the implementation of this Order, waives any stay including as contemplated by Bankruptcy Rule 6004(h) directs that this Order be effective immediately upon its entry, and expressly directs entry of this Order as set forth herein.

      **IT IS HEREBY ORDERED THAT:**

      1.      The Motion is **GRANTED** as provided herein.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to this Court at the hearing on the Motion or by stipulation filed with this Court, are **OVERRULED**.

3. The Contract is **APPROVED** subject only to (i) potential Overbid(s) at the Auction, in which case the Debtor will seek approval of the Sale to the Prevailing Bidder at the Sale Hearing; (ii) the entry of an order (the "Confirmation Order") confirming the Debtor's plan of reorganization (the "Plan") providing for and authorizing the Sale of the Property to the Prevailing Bidder; and (iii) the finality of this Order and the Confirmation Order. The Debtor reserves the right to waive either or both of the conditions set forth in subsections (ii) and (iii) of this paragraph and proceed to close on the Sale of the Property pursuant to the Contract without further notice or hearing except as otherwise required pursuant to the Bid Procedures.

4. The Debtor is authorized to execute and deliver, perform under, consummate, implement, comply with and close fully the Contract, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Contract and the Sale, consummate the Sale subject and pursuant to, and in accordance with, the terms and conditions of the Contract, and to take all further actions as may be necessary or appropriate for the purpose of assigning, transferring, granting, conveying and conferring to the Stalking Horse Purchaser all of the Debtor's right, title and interest to the Property, free and clear of all Liens and Claims, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Contract. Effective as of Closing (as such term is defined in the Contract), the Sale of the Property shall be free and clear of all Liens and Claims of all persons and entities, including without limitation the Claims and Interests of Sandy Spring. Pending Closing, the Liens and

Claims of all creditors shall remain in place, subject to all claims, counterclaims, causes of action, rights and defenses of the Debtor.

5. Unless modified in the Plan or Confirmation Order, or otherwise ordered by the Court or agreed to by the Debtor and the affected creditor, the secured claims of Sandy Spring and any real estate tax claims then due and owing, shall be paid and discharged in full in cash at Closing.

6. Subject only to the restrictions set forth in this Order and the Contract, the Debtor and the Stalking Horse Purchaser are hereby authorized to take any and all actions as may be necessary or desirable to implement the Sale, and any actions taken by the Debtor and the Stalking Horse Purchaser necessary or desirable to implement the Sale prior to the date of this Order (including without limitation the execution of the Contract), are hereby approved and ratified.

7. The sale of the Property to the Stalking Horse Purchaser pursuant to the Contract and the consummation of the transactions contemplated by the Contract do not require any consents other than as specifically provided for in the Contract. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Contract. A certified copy of this Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to cancel any of the Liens, Claims, and other encumbrances of record.

8. This Order shall be binding in all respects upon the Debtor and its estate, successors, and assigns, all creditors of and equity holders in the Debtor, and any and all other parties in interest, including, without limitation, any and all holders of Liens, Claims, encumbrances, and other interests (including holders of any rights or claims based on any

putative successor or transferee liability) of any kind or nature whatsoever in the Property and any trustee or successor trustee appointed in this chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code.

9. The Purchaser is a good faith purchaser of the Property and is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the Contract or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal prior to the Closing Date) and, notwithstanding any reversal, modification or vacatur, any sale, transfer or assignment, shall be governed in all respects by the original provisions of this Order or the Contract, as the case may be.

10. The Sale to the Stalking Horse Purchaser approved by this Order is not subject to avoidance or any recovery of damages pursuant to section 363(n) of the Bankruptcy Code.

11. Except as expressly permitted or otherwise specifically provided by the Contract or this Order, upon Closing, all entities and persons (as defined in sections 101(15) and (41) of the Bankruptcy Code), including, but not limited to, all lenders, debt security holders, creditors, vendors, suppliers, equity security holders, governmental, tax, regulatory authorities, lenders, trade creditors, contract counterparties, customers, landlords, licensors, employees, litigation claimants and other persons and parties to executory contracts and unexpired leases holding Liens or Claims, encumbrances or interests of any kind or nature whatsoever in or against the Debtor or any of the Property (whether known or unknown, legal or equitable, secured or

unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, the operation of the Debtor's business before the Closing or the transfer of the Debtor's interests in the Property to the Purchaser) are and shall be forever barred, estopped, and permanently enjoined from asserting any such Liens, Claims, encumbrances or interests against the Purchaser, its successors, designees, assigns, or against the Property.

12. Neither the Stalking Horse Purchaser, nor any of its assignees, affiliates, agents, officers or employees (together, "Related Parties") are or shall be deemed, as a result of the consummation of the Sale contemplated herein, to: (a) be legal successors to the Debtor or its estate by reason of any theory of law or equity, (b) be an affiliate of the Debtor, (c) have, *de facto* or otherwise, merged with or into the Debtor or its estate, (d) be an alter ego or a mere continuation or substantial continuation or successor of the Debtor in any respect. Except as expressly permitted or otherwise specifically provided for in the Contract or this Order, neither the Purchaser nor any of its Related Parties shall (i) assume or in any way be responsible for any liability or obligation of the Debtor and/or its estate or (ii) have any liability or responsibility for any liability or other obligation or any acts or omissions of the Debtor in the conduct of business, arising under or related to the Property or otherwise, other than as set forth in the Contract. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Contract, the Stalking Horse Purchaser and its Related Parties shall not be liable for any Liens, Claims, encumbrances or interests against the Debtor or the Property. The Stalking Horse Purchaser and its Related Parties shall have no successor or vicarious liabilities

of any kind or character including but not limited to any theory of warranty, product liability, environmental, successor or transferee liability, labor law, merger or *de facto* merger, or substantial continuity, for Claims known or unknown, and whether asserted or unasserted at the time of the Closing Date including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the Closing.

13. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Property to the Stalking Horse Purchaser in accordance with the terms of the Contract and this Order.

14. The Break-Up Fee and Expense Reimbursement afforded to the Stalking Horse Purchaser are reasonable, necessary, and a proper exercise of the Debtor's business judgment, and hereby are approved. The Debtor's obligation to pay the Break-Up Fee and Expense Reimbursement shall constitute an administrative expense obligation under Section 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code. No other person or entity (including without limitation a Potential Bidder, a Qualified Bidder, or a Prevailing Bidder) shall be entitled to allowance or payment of a break-up fee, expense reimbursement, or other compensation on account of any bid, offer or proposal that such person or entity may submit.

15. The following dates and deadlines are hereby approved (and may be adjourned from time to time by the Debtor):

    a. **Bid Deadline: [●], 2022 at 5:00 p.m., prevailing Eastern Time,** is the deadline by which all Bids must be actually received pursuant to the Bid Procedures;

*provided,* that the Debtor, may extend the Bid Deadline in its reasonable business judgment for all or certain Potential Bidders without further order of the Court.

    b. **Auction:** The Auction, if needed, will take place at the date, time and place this Court convenes a hearing on the Debtor's confirmation of a plan of reorganization, or at such other date, time and location as may be determined by the Debtor or the Court.

    c. **Notice of Prevailing Bidder:** If the Auction is held, as soon as reasonably practicable after the Auction, the Debtor shall notify all Qualified Bidders of the identity of the Prevailing Bidder.

    d. **Sale Hearing:** The Sale Hearing, if held, will be held at the Confirmation Hearing or at such other date, time and location as may be determined by the Debtor or this Court. The Sale Hearing will be the hearing on approval of the Sale of the Debtor's Property to the designated Prevailing Bidder in connection with the Auction and may be adjourned by announcement in open Court or by filing a notice of adjournment on the Court's docket without any additional notice required. The Sale Hearing may take place in open Court or by Zoom or similar platform, to be determined by further order of this Court.

16.    The Bid Procedures are incorporated herein and are approved in their entirety. The Bid Procedures shall govern the submission, receipt, and analysis of all Bids related to the Sale. Any party desiring to submit a Bid shall comply with the Bid Procedures and this Order. The Debtor is authorized to take any and all actions necessary to implement the Bid Procedures.

17.    Each Bidder participating at the Auction shall confirm in writing that it has not engaged in any collusion with respect to the Bid or the Sale.

18. If the Debtor receives no more than one Qualified Bid (including from the Stalking Horse Purchaser), the Debtor may determine in its discretion and in consultation with the Debtor's Advisors not to hold the Auction and shall have the right to declare such Qualified Bidder as the Prevailing Bidder and, if the Stalking Horse Purchaser is not in the Prevailing Bidder, request that the Court approve the applicable sales contract.

19. At or following the Auction, and subject to the Bid Procedures, the Debtor may, in consultation with the Debtor's Advisors: (a) select, in its business judgment, pursuant to the Bid Procedures, the highest or otherwise best Bid as the Prevailing Bidder; and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in such Debtor's business judgment, is (i) inadequate, insufficient, or not the highest or best Bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bid Procedures, or (iii) contrary to, or otherwise not in the best interests of the Debtor's estate, affected stakeholders, or other parties in interest, in each case subject to and in accordance with the Bid Procedures.

20. The Sale Notice, substantially in the form attached to this Order, is approved. Within five (5) business days following entry of the Order, the Debtor shall cause the Sale Notice to be served upon:

(a) All potential buyers previously identified or solicited by the Debtor or the Broker and any additional parties who have previously provided a written expression of interest to the Debtor or the Broker;

(b) Other potentially interested parties identified by the Debtor or its Advisors;

(c) The Office of the United States Trustee for the District of Maryland;

(d) The holders of the 20 largest unsecured claims against the Debtor, as identified in the Debtor's chapter 11 petition;

(e) All parties in interest who have requested notice under Bankruptcy Rule 2002; and

  (f)  All parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Property.

(collectively, the "Notice Parties").

  21.  This Court retains exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of the Contract, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects.

  22.  The failure to include or reference a particular provision of the Contract or other related documents in this Order shall not diminish or impair the effectiveness or enforceability of such provisions, it being the intent of the Court that the Contract and other related documents be authorized and approved in their entirety.

  23.  In the event of any inconsistencies between this Order and the Motion, this Order shall govern.

  24.  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

  25.  The headings in this Order are for convenience of reference only and shall not be deemed to modify or limit the provisions of this Order or the Contract.

  26.  The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

**End of Order**

cc:

Nabil J. Asterbadi
2726 Chain Bridge Road, NW
Washington, DC 20016-3404

Bradford F. Englander, Esq.
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042

U.S. Trustee - Greenbelt
L. Jeanette Rice, Esq.
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770-6305

Sandy Spring Bank
Attn: Bruce Henry, Esq.
300 N Washington Street, Suite 204
Alexandria, VA 22314-2530

Jennifer L. Kneeland, Esq.
Counsel for NVR, Inc.
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102

*12224048*

ALL EXHIBITS REFERENCED IN THIS ORDER ARE OMITTED AT THIS TIME.

SEE THE EXHIBITS ATTACHED TO THE UNDERLYING MOTION.