**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| **ZACHAIR, LTD.,** | : | **Case No.  20-10691-TJC** |
| | : | **Chapter   11** |
| **Debtor(s)** | : | |
| | : | |

**PLAN OF REORGANIZATION OF**
**SANDY SPRING BANK**

**INTRODUCTORY STATEMENT OF**
**PLAN PROPONENT SANDY SPRING BANK**

      Sandy Spring  Bank ("SSB") respectfully submits this proposed Plan of Reorganization (the "SSB Plan"). The SSB Plan is filed as an alternative to the 2nd Amended Plan of Reorganization (the "Debtor Plan") filed by the Debtor, Zachair, Ltd. ("Debtor"). This introductory statement outlines SSB's concerns with respect to the Debtor Plan and its reasons for filing the SSB Plan to compete with the Debtor Plan.

      The Debtor filed this Chapter 11 case on January 17, 2020 (the "Petition Date") and has been operating in Chapter 11 for almost two and a half years while engaging in ongoing efforts to sell the real estate comprising its' principal assets. After almost thirty months of post-petition efforts, the Debtor has had one contract purchaser terminate its contract and walk away from a proposed sale, and now presents the Debtor Plan incorporating a second proposed contract for sale of the Debtor's Property that represents little more than a thinly secured option contract. The NVR Contract[1] currently relied upon as the source of funding for the Debtor Plan essentially provides the proposed purchaser NVR, Inc. ("NVR") with up to fifteen months from a proposed Court approval of the Debtor Plan within which to determine whether or not it will close under the proposed contract. Depending on the timing of potential confirmation hearings herein, the terms of the NVR Contract provide that closing can be delayed till as late as the spring of 2024. The security deposit of NVR required during this time is grossly inadequate to account and pay for accruing real estate taxes, interest carry and professional fees expected to accrue over this time. When combined with the post-petition increase in secured claims (comprised of SSB interest and real estate taxes), as well as millions of dollars in professional fees already approved by the Court, SSB contends that the NVR Contract and the Debtor Plan place an unreasonable continuing risk and financial burden upon the shoulders of creditors herein.

      During the two and a half year pendency of this case, the Debtor has been unable to make payment of accruing real estate taxes, interest payments on the SSB secured claims, and/or professional fees incurred by the Debtor and that have been approved for payment through September of 2021 in amounts exceeding $2,250,000.00. Real estate taxes and post-petition

---

[1] Defined terms shall have the meaning identified in the SSB Plan unless otherwise indicated herein.

accrued interest on SSB's secured claims are estimated to exceed $500,000.00 as of the date of filing of the SSB Plan. The amount of additional professional fees accrued through the current date is unknown, but SSB estimates that total (and unpaid) professional fees now exceed the sum of three million dollars ($3,000,000.00). The result is that after two and a half years in Chapter 11, general unsecured creditors of this estate are at least $3.5 million dollars further away from a sale of the Property resulting in payment on their claims. SSB submits that the prospect of another fifteen to twenty-two months of delay and additional accruals is not warranted given the lack of certainty of closing under the NVR Contract.

Under the Debtor's proposed 2nd Amended Plan, the Debtor proposes that claims and interests will be paid from proceeds of sale of the Debtor's Property under the NVR Contract. From SSB's perspective, the NVR Contract is little more than an approximately eighteen month option contract. Under its' current terms, the deadline for closing under the NVR Contract is twelve (12) months from the date of an order confirming the Debtor's 2nd Amended Plan. NVR can "purchase" an extension of an additional 180 days, or six months, by submitting an agreed extension fee of $250,000.00. All told, NVR can defer a final closing to sometime as late as early 2024, all the while subjecting the Property (and creditors' claims herein) to additional accruals of unpaid real estate taxes, secured interest, and continuing professional fees. Neither the initial deposit of $500,000.00, nor the supplemental $250,000.00 extension fee under the NVR Contract will be sufficient to overcome these additional accruals. The result could very well be that general creditors of this estate find themselves in late 2023 or early 2024 even further behind a growing balance of secured claims and administrative expenses, combined with a contraction in the residential real estate market that will not portend favorably towards an ultimate closing under the NVR Contract. Simply put, the lack of non-refundable deposits sufficient to fund the actual costs of time requested by NVR with respect to a closing render the NVR Contract a substantial and additional financial risk for creditors herein. Essentially the Debtor's Plan requires the creditors to wager that market conditions in the winter of 2023-2024 will be favorable. Only if they are favorable will NVR close, and if unfavorable the creditors will be worse off, and trying to regroup in an unfavorable market.

The SSB Plan also contemplates a sale of the Debtor's Property. However, rather than a multi-year process that permits a prospective purchaser to seek enhanced entitlements, the SSB Plan contemplates engaging a Plan Trustee to conduct an immediate marketing and sale of the Property. Under the SSB Plan, it is anticipated that a Plan Trustee will promptly commence marketing of the Property for a non-contingent, as-is, as zoned, but not entitled value. It is hoped that a marketing of the property in "as-is" condition would result in a sale that would provide for closing in not more than six months. SSB acknowledges that the sale price of the Property without any entitlements will be less than the maximum value potentially recoverable under the NVR Contract. SSB believes that the certainty of a prompt sale and the curtailment of additional accruals of secured debt, taxes and administrative expenses, combine to make this approach more desirable and beneficial to the potential payment of claims in this case, particularly in the current difficult and unstable macroeconomic conditions.

## INTRODUCTION

Sandy Spring Bank ("SSB"), proposes the following Chapter 11 Plan of Reorganization (the "SSB Plan") pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The SSB Plan provides for the liquidation of the Debtor's assets and property, the resolution of the allowance of claims and equity interests, and distributions to creditors in accordance with the priorities of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

1.1     *Scope of Definitions.*

For purposes of this SSB Plan, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this SSB Plan. Any term used in this SSB Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. The words "herein," "hereof," "hereunder," and other words of similar import refer to this SSB Plan as a whole, not to any particular section, subsection or clause, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter.

1.2     *Definitions.*

"Administrative Bar Date" means that date established or to be established by an Administrative Bar Date Order by which all Persons asserting certain Administrative Expense Claims must have filed proofs of such Administrative Expense Claims or requests for payment of such Administrative Expense Claims or be forever barred from asserting such Claims against the Debtor, the Estate, property of the Estate or the Plan Trustee.

"Administrative Bar Date Order" means the order which SSB anticipates will be entered by the Bankruptcy Court upon a motion by the Plan Trustee to establish a bar date for the filing of Administrative Expense Claims, except for administrative expenses previously allowed by order of the Bankruptcy Court or administrative expenses arising in the ordinary course of the administration and performance of the SSB Plan by the Plan Trustee.

"Administrative Convenience Claim" means an Allowed General Unsecured Claim of $5,000 or less or an Allowed General Unsecured Claim held by a creditor who voluntarily elects to reduce its total Allowed General Unsecured Claim by 50 percent or to $5,000, whichever is less, and to participate in the treatment afforded Allowed Administrative Convenience Class Claims.

"Administrative Expense Claim" means a Claim for payment of an administrative expense of a kind specified in § 503(b) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Debtor's Estate and operating the

-3-

business of the Debtor, including any wages, salaries, or commissions for services rendered after the Petition of the Chapter 11 Case, Professional Claims, Claims arising under § 365(g)(2)(A) or § 503(b)(3) of the Bankruptcy Code, all fees and charges assessed against the Debtor's Estate under chapter 123 of title 28, United States Code, and Administrative Tax Claims.

"Administrative Tax Claim" means a Claim by a governmental unit with respect to a tax or duty incurred after the Petition Date that is entitled to be paid as an administrative expense pursuant to § 507(a)(8) of the Bankruptcy Code.

"Allowed Claim" means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court, (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is Scheduled, other than a Claim that is Scheduled at zero or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the SSB Plan.

"Allowed ... Claim" means an Allowed Claim of the type described.

"Assets" means all assets of the Debtor or this bankruptcy Estate.

"Ballot" means each of the ballot forms that are distributed with the Disclosure Statement(s) to holders of Claims in Classes that are Impaired under the SSB Plan and entitled to vote in connection with the solicitation of acceptances of the SSB Plan.

"Bankruptcy Cause of Action" means any Cause of Action the Debtor or Trustee has or may have under sections 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced to prosecute such Causes of Action.

"Bankruptcy Cause of Action Proceeds" means any gross proceeds realized from a Bankruptcy Cause of Action, net of all fees and expenses payable by the Estate to Professionals under contingent-fee or other arrangements in connection with the Plan Trustee's efforts to analyze or prosecute such Bankruptcy Cause of Action or to collect such proceeds.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Maryland, Greenbelt Division.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to

the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"Bar Date" means May 26, 2020, the deadline for filing all proofs of claims established by the Bankruptcy Court, except Claims of governmental units for which proofs of claim are filed in accordance with § 502(b)(9) of the Bankruptcy Code and were due on July 15, 2020.

"Business Day" means any day other than a Saturday or Sunday, or any legal holiday as defined in Bankruptcy Rule 9006(a).

"Cash" means legal tender of the United States of America or a cash equivalent.

"Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on January 17, 2020, in the Bankruptcy Court, styled *In re Zachair, Ltd.,* Case No. 20-10691-TJC.

"Claim" means "claim" as defined in § 101(5) of the Bankruptcy Code, whether or not asserted or Allowed.

"Class" means any group of Claims or Equity Interests classified by the SSB Plan pursuant to
§s 1122 and 1123(a)(1) of the Bankruptcy Code.

"Confirmation Date" means the date of entry of the Confirmation Order.

"Confirmation Hearing" means the hearing, pursuant to § 1129 of the Bankruptcy Code, to consider confirmation of the SSB Plan.

"Confirmation Order" means the order, entered by the Bankruptcy Court, confirming the SSB Plan.

"Consumer Deposit Claim" means a Claim to the extent entitled to priority under § 507(a)(7) of the Bankruptcy Code.

"Cure" means the distribution prior to or within a reasonable period of time following the Effective Date of Cash or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease pursuant to § 365(b) of the Bankruptcy Code, in an amount agreed upon by the parties or ordered by the Bankruptcy Court, in payment of all unpaid monetary obligations, without interest, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

"Debtor Claims" means all Bankruptcy Causes of Action and other claims and causes of action that the Debtor may have against any Person that arise prior to the Effective Date and that, as of the Effective Date, have not been waived, settled, released or denied by Final Order of the court having jurisdiction over a proceeding in which such cause of action was or could have been asserted.

"Debtor" means Zachair, Ltd.

"Disallowed Claim" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order of the Bankruptcy Court, or (b) has not been scheduled by the Debtor or is Scheduled at zero or as contingent, disputed or unliquidated and as to which the Bar Date has passed but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

"Disclosure Statement" means the written disclosure statement that relates to this SSB Plan, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

"Disputed ... Claim" means a Claim, or any portion thereof, of the type described, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, Claims that (a) (i) have not been Scheduled by the Debtor or have been Scheduled at zero, as unknown or as contingent, unliquidated or disputed and are the subject of a timely filed proof of claim, or (ii) are the subject of an objection by the Debtor or SSB or as to which the time for the Debtor or SSB to object has not yet expired, and (b) the allowance or disallowance of which is not yet the subject of a Final Order of the Bankruptcy Court.

"Distribution Date" means, with respect to any Class of Claims, each date after the Effective Date on which the Plan Trustee makes a distribution to a designated Class under the SSB Plan.

"Dr. Asterbadi" means, Dr. Nabil J. Asterbadi, President of the Debtor.

"Equity Interest" means, as of the Petition Date, any rights of any Person attributable to any ownership interest in the Debtor.

"Estate" means the bankruptcy estate of the Debtor pursuant to § 541 of the Bankruptcy Code.

"Exhibit" means an exhibit annexed either to this SSB Plan or as an appendix to the Disclosure Statement.

"Face Amount" means, (a) with respect to a Disputed or Disallowed Claim, the full stated amount claimed by the holder of such Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law; and (b) with respect to an Allowed Claim, the allowed amount of such Claim.

"Fetter Management Agreement" means, the Management Agreement entered into between Fetter Aviation Company ("Fetter") and the Debtor providing for the management of the airfield and surcharge operations upon the Debtor's Property.

-6-

"File" or "Filed" means filed with the Bankruptcy Court in the Chapter 11 Case.

"Final Order" means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired.

"General Unsecured Claim" means a claim that is not a Secured Claim, Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, or Equity Interest.

"Impaired" refers to any Claim or Equity Interest that is impaired within the meaning of §1124 of the Bankruptcy Code.

"Insider" means with respect to the Debtor, any person within the scope of § 101(31) of the Bankruptcy Code.

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

"NVR" means NVR, Inc., a public stock company traded on the New York Stock Exchange under the symbol "NVR" and having a market cap of approximately $3 billion.

"NVR Contract" means the contract entered into by the Debtor and NVR in _____, by which NVR proposes to purchase all of the Debtor's interest in the Property.

"Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

"Petition Date" means January 17, 2020.

"SSB Plan" means this plan of reorganization which is proposed by SSB for the resolution of outstanding Claims and Equity Interests in this Chapter 11 Case, as such Plan may be amended from time to time in accordance with the Bankruptcy Code and Article XIV herein.

"Post-Effective Date Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Effective Date.

"Priority Claim" means any Claim which is entitled to priority in payment as specified in § 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, Professional Fee Claim, Consumer Deposit Claim, or a Priority Tax Claim.

"Priority Tax Claim" means a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code.

"Professional" means a consultant, accountant, attorney or other professional service

-7-

provider retained by the Debtor or Plan Trustee pursuant to §§ 327 and 363 of the Bankruptcy Code or otherwise as provided for under the SSB Plan.

"Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date. Until a timely filed Professional Claim is Allowed or Disallowed, it shall be considered a Disputed Administrative Expense Claim for purposes of § 3.3 hereof.

"Property" means the assemblage of real property owned by the Debtor and totaling approximately 423.45 acres located in Prince George's County, Maryland, as more particularly described in Exhibit A to the Disclosure Statement filed in connection with this SSB Plan.

"Pro Rata" means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the SSB Plan provides otherwise.

"Scheduled" means, with respect to a Claim, that the Claim is listed on the schedules of assets and liabilities filed by the Debtor in the Chapter 11 Case pursuant to Bankruptcy Rule 1007(b)(1).

"Schedules" means the Debtor's Schedules of Assets and Liabilities, including any amendments, filed with the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 1007(b)

"Secured Claim" means a Claim secured by a security interest in or lien upon property of the Estate to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such security interest or lien as determined by a Final Order of the Bankruptcy Court pursuant to § 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the holder of such Claim.

"SSB" means Sandy Spring Bank.

"SSB DIP Loan Claim" means the Secured Claim held by SSB relating to the DIP loan made and advanced by SSB subsequent to the Petition Date herein.

"SSB Secured Claim" means the Secured Claim held by SSB as of the Petition Date, together with any subsequently accruing interest and reasonable fees, costs, or charges, all to the extent permitted under § 506(b) of the Bankruptcy Code.

"Unimpaired" refers to any Claim that is not Impaired within the meaning of that term in § 1124 of the Bankruptcy Code.

1.3    *Rules of Interpretation.*

Unless otherwise specified, all references in the SSB Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the SSB Plan. The words "herein," "hereto," and "hereof refer to the SSB Plan in its entirety

rather than to a particular portion of the SSB Plan. Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the SSB Plan. Except for the rule contained in § 102(5) of the Bankruptcy Code, the rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the SSB Plan.

1.4     *Computation of Time.*

In computing any period of time prescribed or allowed by the SSB Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.5     *Exhibits.*

All Exhibits are incorporated into and are a part of the SSB Plan as if set forth in full herein.

## ARTICLE II

## ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS

2.1     Administrative Expense Claims. Each holder of an Allowed Administrative Expense Claim shall be entitled to receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Expense Claim, and to the extent net proceeds are available from sale of the Property as provided for herein, (a) Cash equal to the unpaid portion of such Allowed Administrative Expense Claim, (b) such other treatment as to which the Plan Trustee and such holder shall have agreed upon in writing, or (c) such other treatment as may be ordered by the Court. Payment shall be made within thirty (30) days from the date of closing under a sale of the Property by the Plan Trustee from net proceeds of sale after payment of all costs of sale and the satisfaction of any and all claims secured by an interest in the Property. All Disputed Administrative Expense Claims shall be reserved for in full on the Effective Date. Administrative Expense Claims that are allowed by a Final Order of the Bankruptcy Court shall be paid from the proceeds of the sale of the Property after payment of all claims secured by an interest in the Property and all costs of such sale.

2.2     Bar Date for Administrative Expense Claims. Any Person that fails or failed, as the case may be, to file a proof of Administrative Expense Claim or request for payment thereof on or before the Administrative Bar Date pursuant to the Administrative Bar Date Order is forever barred from asserting such Claim against any of the Debtor, the Estate, Plan Trustee or property of the Estate, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Expense Claim.

2.3     Professional Fee Claims. Each Person seeking an award by the Bankruptcy Court of a Professional Fee Claim incurred through and including the Effective Date shall, unless otherwise ordered by the Bankruptcy Court, file its respective final application for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is

no later than twenty (20) days after the Effective Date. The Plan Trustee shall reserve all net proceeds from sale of the Property pending payment or other satisfaction of timely filed Professional Fee Claims.

2.4     Post-Effective Date Professional Fee Claims. The Plan Trustee shall reserve funds sufficient to facilitate payment of any fees and expenses charged or incurred by the Trustee or his retained professionals in connection with the administration of this estate and performance of a confirmed SSB Plan. Such fees and expenses may be paid in the ordinary course of business without the necessity for any approval of the Bankruptcy Court. Such professional fees and expenses may be incurred in connection with the implementation and consummation of the SSB Plan, the claims reconciliation process or any other matters as to which such professionals may be engaged by the Plan Trustee.

2.5     Priority Real Estate Tax Claims. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Priority Tax Claim (i) a Cash payment in an aggregate amount equal to such Allowed Priority Tax Claim as it relates to any portion of the Property payable upon a date thirty (30) days from closing under sale of the Property by the Plan Trustee appointed herein; or (ii) such other treatment as to which the Plan Trustee and such holder shall have agreed upon in writing.

2.6     United States Trustee Fees. The Plan Trustee shall pay all fees due to the United States trustee under 28 U.S.C. § 1930(a)(6) within thirty (30) days of closing under the sale of the Property and shall pay all such fees that come due following the Effective Date until such time as the Chapter 11 Case is closed or the Plan Trustee completes all distributions under the SSB Plan, whichever occurs first. Payment of such fees shall be paid from the proceeds of the sale of the Property after payment of all claims secured by an interest in the Property and all costs of such sale.

**ARTICLE III**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

Pursuant to § 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in the Debtor. A Claim or Equity Interest is also placed in a particular Class for the purposes of voting on the SSB Plan and of receiving distributions pursuant to the SSB Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and such Claim or Equity Interest has not been paid, released or otherwise settled prior to the Effective Date. In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims of the kinds specified in §§ 507(a)(2) and 507(a)(8) of the Bankruptcy Code have not been classified and the treatment of such Claims is set forth in Article III above. Only an Allowed Claim within any of the Classes identified below shall be entitled to the treatment and distributions provided for Claims within that Class.

Class 1.          Class 1 consists of the SSB Secured Claim. SSB shall retain its lien against the Debtor's Property until such time as all or any portion of the Property is sold and

conveyed by the Plan Trustee as provided herein. Sale of the entirety of the Property by the SSB Plan Trustee is contemplated under the terms of this SSB Plan. Such sale(s) will be made free and clear of SSB's lien, with SSB's lien attaching to the proceeds of such sale(s). The holder of the SSB Secured Claim shall paid in full from proceeds of such sale(s) within thirty days after closing under contract(s) for sale.

Class 2.        Class 2 consists of the SSB DIP Loan Claim. SSB shall retain its lien against the Debtor's Property until such time as all or any portion of the Property is sold and conveyed by the Plan Trustee as provided herein. Sale of the entirety of the Property by the Plan Trustee is contemplated under the terms of this SSB Plan. Such sale(s) will be made free and clear of SSB's lien, with SSB's lien attaching to the proceeds of such sale(s). The holder of the SSB DIP Loan Claim shall paid in full from proceeds of such sale(s) within thirty days after closing under contract(s) for sale.

Class 3.        Class 3 consists of the Secured Claim of Prince Georges County, Maryland arising from real estate tax obligations secured by tax liens against the Property. Except to the extent that a holder of the Class 3 Secured Claim agrees to a different treatment, the holder of the Class 3 Secured Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for such Secured Claim (i) payment in full from net proceeds of sale of the Property by the Plan Trustee, or (ii) such other treatment as to which the Plan Trustee and such holder shall have agreed upon in writing. Cash payments shall be made to the holder of the Class 3 Secured Claim within five business days of closing under any contract(s) for sale of the Property.

Class 4        Class 4 consists of the Secured Claim of TD Auto Finance arising from the financing of a Mercedes SL co-owned by the Debtor and its principal, Dr. Asterbadi. Except to the extent that a holder of the Class 4 Secured Claim agrees to a different treatment, the holder of the Class 4 Secured Claim shall be satisfied by the Plan Trustee's abandonment of any and all interests in the Mercedes SL. No payments are projected on account of the Class 4 Secured Claim under the SSB Plan. To the extent any unsecured portion of the Class 4 claim is determined or approved by the Court, such claim shall be treated as a General Unsecured Claim pursuant to Class 8 herein.

Class 5        Class 5 consists of the Secured Claim of Mercedes Benz Finance arising from the financing of a Mercedes SUV co-owned by the Debtor and its principal, Dr. Asterbadi. Except to the extent that a holder of the Class 5 Secured Claim agrees to a different treatment, the holder of the Class 4 Secured Claim shall be satisfied by the Plan Trustee's abandonment of any and all interests in the Mercedes SUV. No payments are projected on account of the Class 5 Secured Claim under the SSB Plan. To the extent any unsecured portion of the Class 5 claim is determined or approved by the Court, such claim shall be treated as a General Unsecured Claim pursuant to Class 8 herein.

Class 6        Class 6 consists of the Claim of PD Hyde Field, LLC as more fully set forth and resolved pursuant to that certain Settlement and Plan Support Agreement ("PD Hyde Settlement") dated September 8, 2021 by and between the Debtor and PD Hyde Field and approved by the Court on October 15, 2021 (Dkt. #264). Pursuant to prior order of the Court (and the subsequent failure of the Debtor to effect sale of the Property on or before December 31, 2021), treatment of the Class 6 Claim shall be as follows:

1. PD Hyde Field shall be deemed to have an allowed non-priority unsecured claim in the Bankruptcy Case in the amount of Three Million Two Hundred Thousand and No/100 Dollars ($3,200,000.00).
2. The Class 6 Claim shall be paid *pari passu* with the payment of principal to other allowed general unsecured claims in Class 8 under the SSB Plan and as funds are available from sale of the Property by the Plan Trustee.
3. Should the Plan Trustee sell the Property for a sales price greater than the purchase price set forth in the NVR Contract, then, the Class 6 Claim shall be increased by an amount equal to 10% of the net increase in the purchase price, capped at $500,000.
4. No interest shall be paid on or with respect to the Class 6 Claim.

Class 7         Class 7 consists of other Priority Claims. The Debtor does not believe that any such claims exist, although the Internal Revenue Service has filed a priority claim as Claim #3. To the extent any are determined and allowed, such Class 7 Claims shall be paid from net proceeds of sale of the Property by the Plan Trustee, and after payment of Secured Claims, Administrative Expense Claims and Professional Fee Claims as allowed and provided for payment herein.

Class 8         Class 8 consists of all General Unsecured Claims. Except to the extent that a holder of a General Unsecured Claim agrees to a different treatment, each holder of a General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for such Claim (i) its pro rata share of the residual balance of net proceeds received upon closing under any contract(s) for sale of the Property by the Plan Trustee, after payment of Secured Claims, Administrative Expense Claims, Professional Fee Claims and Priority Claims as outlined hereinabove. To the extent the Plan Trustee is authorized to reserve funds for payment of any claim(s) or expense(s) hereunder, or to the extent the Plan Trustee generates additional funds from avoidance actions or any other settlement of such claim(s) or right(s), a final and supplemental distribution shall be made, pro-rata, to the holders of Allowed Class 8 Claims upon the Plan Trustee's completion of administration of this estate.

Class 9         Class 9 consists of all Equity Interests. Holders of Class 9 Equity Interests shall receive no distributions under the SSB Plan on account of their Equity Interests, unless there is a surplus from the sale of the Property after payment of all Claims, which SSB believes to be highly unlikely. Class 9 is impaired by the SSB Plan and deemed to reject the SSB Plan and, consequently, is not entitled to vote to accept or reject the SSB Plan.

### ARTICLE IV
### IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS
### IMPAIRED AND UNIMPAIRED BY THE SSB PLAN

A.         <u>Unimpaired Classes of Claims and Equity Interests</u>. There are no unimpaired Classes under the SSB Plan.

B.         <u>Impaired Classes of Claims and Equity Interests</u>. Every Class under the SSB Plan, including all numbered classes from and including Class 1 through and including Class 9 is an

Impaired Class under the SSB Plan.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE SSB PLAN;
## EFFECT OF REJECTION BY ONE OR MORE
## IMPAIRED CLASSES OF CLAIMS

5.1     *Impaired Classes of Claims Entitled to Vote.* Subject to § 5.3 of the SSB Plan, the holders of Claims in each Impaired Class of Claims are entitled to vote as a class to accept or reject the SSB Plan.

5.2     *Acceptance by an Impaired Class.* In accordance with § 1126(c) of the Bankruptcy Code and except as provided in § 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the SSB Plan if the SSB Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the SSB Plan. Holders of claims that fail to vote are not counted as either accepting or rejecting a plan. If no votes are cast by holders of claims in a particular class, that class is deemed to accept the SSB Plan.

5.3     *Classes Deemed to Reject SSB Plan.* Holders of Equity Interests in Class 9 will be deemed to reject the SSB Plan and the votes of such holders will not be solicited.

5.4     *Confirmation Pursuant to § 1129(b) of the Bankruptcy Code.* As holders of Equity Interests in Class 9 will be deemed to reject the SSB Plan and should one or more impaired Classes reject the SSB Plan, SSB will request confirmation of the SSB Plan, as it may be modified from time to time, under §§ 1129(b)(1), (2)(A)(i), (2)(A)(iii), ((2)(B), and 2(C) of the Bankruptcy Code. SSB will also request that the Court establish a value for any assets, the value of which is in dispute between SSB and any holder of a Secured Claim, at a valuation hearing under § 506 of the Bankruptcy Code, to be held at the same time as the hearing on confirmation of the SSB Plan or as may otherwise be scheduled by the Court.

5.5     *Confirmability and Severability of the SSB Plan.* The confirmation requirements of § 1129 of the Bankruptcy Code must be satisfied with respect to the SSB Plan. SSB reserves the right to alter, amend, modify, revoke or withdraw the SSB Plan prior to the Confirmation Hearing. A determination by the Bankruptcy Court that the SSB Plan as it applies to SSB is not confirmable pursuant to § 1129 of the Bankruptcy Code shall not limit or affect SSB's ability to modify the SSB Plan to satisfy the confirmation requirements of § 1129 of the Bankruptcy Code.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION

6.1     Sale of the Property.  SSB proposes to have the Plan Trustee sell the entirety of the Property to one or more purchasers upon a marketing and sales process to be managed

exclusively by the Plan Trustee. Payment of Allowed claims, fees and expenses shall be made from proceeds of sale within thirty (30) days of the closing under any such contract(s).

6.2    <u>Sales free and clear of liens and interests</u>. All property sold or transferred under the SSB Plan will be sold free and clear of liens and interests, provided creditors whose Claims are secured by the Debtor's property receive the treatment provided under the SSB Plan for such Secured Claims. In order to expedite the sale process, provide clear title to real property intended to be conveyed thereunder, and in order to satisfy any requirements of title insurance companies providing title insurance to the Debtor's property, SSB will ask the Court to include in the Confirmation Order provisions specifying that all property sold or transferred under the SSB Plan, is sold free and clear of liens and interests and shall be exempt from transfer taxes under section 1146 of the Code.

6.3    <u>Appointment of Plan Trustee.</u>  In order to effectuate the terms of the SSB Plan, the Court will appoint David Bowman as Plan Trustee to commence serving immediately upon entry of an order confirming the SSB Plan. All property of the estate, including the Property and any other real property, personalty and any other choses in action available to the Debtor, shall vest in the Plan Trustee immediately upon confirmation of the SSB Plan. The Plan Trustee shall be specifically empowered to act with respect to any and all such property, including, but not limited to: i) the power to execute, deliver and perform any contracts on behalf of the bankruptcy estate, including, but not limited to, listing contracts, contracts for sale and related matters; ii) the power to execute and deliver deeds or other documents of title conveying the Debtor's or estate's right, title and interest in and to any portion of real or personal property, including any or all of the property included in the Project; iii) the power to engage and retain attorneys and/or other professionals to assist the Plan Trustee in connection with his duties under the SSB Plan, and the authority to make payment of fees and expenses of the Trustee's retained professionals from reserves held pursuant to the terms and conditions of the SSB Plan; iv) the power to open bank account(s) and to collect, preserve and eventually distribute proceeds from the liquidation of assets or property of the Debtor or this estate; and v) the power to perform any other act or to take any other action necessary to the completion of the terms and conditions of the SSB Plan, it being the intent by appointment of the Plan Trustee to vest exclusive authority in such Plan Trustee with respect to the administration of this bankrupt estate and the performance and execution of the SSB Plan.

6.4    <u>Exemption from Certain Transfer Taxes</u>. Pursuant to § 1146(a) of the Bankruptcy Code, any transfers (i) from the Plan Trustee or this bankrupt estate to any Person pursuant to the SSB Plan or (ii) from any other Person pursuant to the SSB Plan, shall not be subject to any stamp tax or similar tax, including any document recording tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order or supplemental order under § 1146 of the Bankruptcy Code shall direct the appropriate state or local governmental officials or agents to
forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the transfer instruments or like documents without the payment of any such tax or governmental assessment. SSB will ask the Court to include provisions in the Confirmation Order expressly directing that any sale(s) of the Property will be subject to the exclusion from applicable taxes under § 1146(a) of the Bankruptcy Code.

6.5    <u>Procedures for Disputed Claims.</u>   After the Effective Date, the Plan Trustee shall be entitled to object to all Claims. Unless otherwise extended by the Court, any objections to such Claims shall be served and filed on or before one hundred twenty (120) days after the Effective Date. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Plan Trustee or his agent(s) effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a claimant is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case.

Notwithstanding any other provision of the SSB Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

After a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder of such Allowed Claim shall be entitled to distributions, if any, to which such holder is then entitled under the SSB Plan in accordance with the provisions hereof. Notwithstanding anything to the contrary in the SSB Plan, no holder of an Allowed Claim shall receive any distribution of a value in excess of the Allowed amount of such Claim.

## ARTICLE VII

## DISTRIBUTIONS

7.1    *Delivery of Distributions.* Subject to Bankruptcy Rule 9010, unless otherwise provided herein, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on any proof of claim filed by any such holder, unless the Plan Trustee has been notified, in advance, in writing of a change of address, including, without limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Plan Trustee has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code at the expiration of one (1) year from the later of (i) the Effective Date and (ii) the date such holder's Claim is Allowed. The Plan Trustee shall not have any obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtor's schedules and proofs of claim filed against the Debtor herein.

## ARTICLE VIII

## PROCEDURES FOR DISPUTED CLAIMS

8.1    *Objections to Claims.* After the Effective Date, the Plan Trustee shall be entitled to object to all Claims. Unless otherwise extended by the Court, any objections to such Claims shall be served and filed on or before one hundred twenty (120) days after the Effective Date. Notwithstanding

any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Plan Trustee or his agent(s) effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a claimant is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case.

8.2     *Payments and Distributions with Respect to Disputed Claims.* Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.3     *Distributions After Allowance.* After a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder of such Allowed Claim shall be entitled to distributions, if any, to which such holder is then entitled under the SSB Plan in accordance with the provisions hereof. Notwithstanding anything to the contrary in the SSB Plan, no holder of an Allowed Claim shall receive any distribution of a value in excess of the Allowed amount of such Claim.

8.4     *No Recourse.* Notwithstanding that the Allowed amount of any Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this SSB Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor, the Plan Trustee or property of the Estate.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1     <u>Executory Contracts and Unexpired Leases.</u>   The Fetter Management Agreement was approved post-petition by this Court and currently provides for management of the airfield and certain surcharge operations upon the Property by Fetter Aviation Company ("Fetter"). The Plan Trustee is expected to seek a continuation or assumption of such Agreement to provide for continuing management of these functions pending sale of the Property. Upon sale of the Property, any and all agreements shall be continued or terminated as provided for under the terms of any contract for sale. Any other executory contract not expressly assumed herein shall be deemed rejected upon confirmation of the SSB Plan.[2]

9.2     <u>Rejection Claims.</u>  Except as otherwise ordered by the Bankruptcy Court, in the event that the rejection of an executory contract or unexpired lease under the SSB Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the estate unless a proof of claim has been filed and served upon counsel for the Plan Trustee on or before thirty (30) days after the Effective Date.

---

[2] The Debtor's Schedule G identifies thirty leases of hangar and tie-down spaces. To the best of SSB's knowledge, all tenant leases are terminable on 30-days' written notice and none are proposed to be assumed under the SSB Plan.

**ARTICLE X**

**CONDITIONS PRECEDENT TO CONFIRMATION**

10.1        Confirmation Conditions Precedent.

Confirmation is subject to:

a)        The Bankruptcy Court having approved the Disclosure Statement by order entered on the docket of the Chapter 11 Case;

b)        The presentment of a Confirmation Order to the Bankruptcy Court in the Chapter 11 Case for entry to confirm the SSB Plan in a form and substance acceptable to SSB; and

c)        The Bankruptcy Court having approved the appointment of the Plan Trustee as part of the SSB Plan.

**ARTICLE XI**

**EFFECT OF CONFIRMATION**

11.1    *Vesting of Assets.* On the Effective Date, pursuant to §§ 1141 (b) and (c) of the Bankruptcy Code, all property of the Estate shall vest in the Plan Trustee, including all claims, rights and Bankruptcy Causes of Action and any property acquired by the Debtor or the Estate under or in connection with the SSB Plan, free and clear of all Claims, liens, encumbrances, charges, and other interests, except as otherwise provided in the SSB Plan and the SSB Plan documents. On and after the Effective Date, the Plan Trustee, so long as consistent with the provisions of this SSB Plan,  may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein.

11.2    *Binding Effect.* Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the SSB Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the SSB Plan and whether or not such holder has accepted the SSB Plan.

**ARTICLE XII**
**MODIFICATION**

12.1    *Pre-Confirmation Amendment.*  SSB reserves the right in accordance with the Bankruptcy Code to amend or modify this SSB Plan prior to the Confirmation Date. After SSB files a modification with the Bankruptcy Court, this SSB Plan, as modified, becomes the SSB Plan.

12.2    *Post-Confirmation Modification.* The Plan Trustee may modify this SSB Plan at any time after the Confirmation Date regardless of whether this SSB Plan has been substantially consummated within the meaning of §§ 1101(2) and 1127(b) of the Bankruptcy Code, if

-17-

circumstances warrant such modification, if all required disclosures under § 1125 of the Bankruptcy Code have been given, and the Bankruptcy Court, after notice and a hearing, confirms the SSB Plan as modified.

12.3  *Correction of Errors; Inconsistencies.* Before or after the Confirmation Date, or in the Confirmation Order, SSB or the Plan Trustee may, with the approval of the Bankruptcy Court, so long as it docs not materially and adversely affect the interests of creditors who have accepted this SSB Plan, remedy any defect or omission, or reconcile any inconsistencies in this SSB Plan or amend this SSB Plan, in such a manner as may be necessary to carry out the purposes and the effect of this SSB Plan without the necessity of re-soliciting acceptances.

# ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1  Headings.    The headings used herein are inserted for convenience only and neither constitute a substantive portion hereof nor in any manner affect the provisions hereof.

13.2  Business Day. If any act or payment under the SSB Plan is required to be made or performed on a date that is not a Business Day, then the performance of such act or the making of such payment may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.3  *Timing.* Wherever the SSB Plan provides that a payment or distribution shall occur "on" any date or during a particular period, it shall mean "on, or as soon as practicable after" such date, or "during, or as soon as practical after such period."

13.4  *Manner of Payment.*  Any payment made under the SSB Plan may be made either by check or by wire transfer.

13.5  *Authorization of Action by Plan Trustee.* The occurrence of the Effective Date shall constitute Bankruptcy Court authorization for the Plan Trustee to take or cause to be taken any action necessary or appropriate after the Effective Date for the effectuation of the SSB Plan and such action will be authorized and approved in all respects and for all purposes without any requirement of further action by any other person.

13.6  *Governing Law.* Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent any SSB Plan document provides otherwise, the rights, duties, and obligations arising under the SSB Plan and the SSB Plan documents shall be governed by, and construed and enforced in conformance with the laws of the State of Maryland, without giving effect to the principles of conflict of laws thereof.

13.7  *Severability.*  Should the Bankruptcy Court or any other court determine that any provision in this SSB Plan is unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the SSB Plan.

13.8    *Reservation of Rights.* Neither the filing of the SSB Plan, nor any statement or provision contained in the SSB Plan or the Disclosure Statement, shall be deemed to be a waiver of any rights, remedies, defenses or claims by SSB or the Estate, and all such rights, remedies, defenses or claims are hereby specifically reserved.

13.9    *SSB Plan Controls.* To the extent the SSB Plan is inconsistent with the Disclosure Statement, the provisions of the SSB Plan shall control.

13.10   *Notices.*

(a)     Any notices or requests made in connection with this SSB Plan shall be in writing and served either by (i) first class mail, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, freight prepaid, and will be deemed to have been given when received by the following parties at the following addresses:

To the Debtor:

Zachair, Ltd
Attn: Dr. Asterbadi
2726 Chain Bridge Road, NW
Washington, DC 20016

and

Whiteford Taylor & Preston, LLP
Attn: Bradford Englandler
3190 Fairview Park, Suite 800
Falls Church, Virginia 22042
*Counsel to the Debtor*

To the Office of the United States Trustee:

Office of the United States Trustee
115 South Union Street, Room 210
Alexandria, VA 22314

To SSB:

Bruce W. Henry
Kevin M. O'Donnell
HENRY & O'DONNELL, PC
300 N. Washington Street, Suite 204
Alexandria, VA 22314
*Counsel to SSB*

(b) All notices, requests and distributions to any creditor shall be sent to the address

given in each creditor's proof of Claim. With regard to those Scheduled creditors who did not file a proof of Claim, all notices, requests and distributions shall be sent to the address listed in the Debtor's Schedule of Liabilities, unless the Plan Trustee receives other instructions in writing from such creditor(s). Notices, requests and distributions to creditors shall be deemed to have been given when mailed to such address. It shall be the obligation of creditors to provide written notice of any change in address to the Plan Trustee.

## ARTICLE XIV

## RETENTION OF JURISDICTION

'

14.1    The Bankruptcy Court shall retain jurisdiction after confirmation of the SSB Plan for the following purposes:

(a)    to determine the allowance and classification of any Claim, the re-examination of Claims which have been allowed for purposes of voting, and the determination of any objections to Claims that may be or may have been filed;

(b)    to determine motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

(c)    to determine motions to subordinate Claims at any time and on any basis permitted by applicable law;

(d)    to construe or take any action to enforce this SSB Plan, and to issue such orders as may be necessary for the implementation, execution, and consummation of this SSB Plan;

(e)    to determine any and all applications for allowance of compensation or reimbursement of expenses incurred prior to the Effective Date;

(f)    to determine any other requests for payment of an Administrative Expense Claim incurred prior to the Effective Date;

(g)    to resolve any disputes arising under or relating to this SSB Plan;

(h)    to modify the SSB Plan pursuant to § 1127 of the Bankruptcy Code and applicable Bankruptcy Rules;

(i)    to take any action to correct any defect, cure any omission, or reconcile any inconsistency in this SSB Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this SSB Plan;

(j)    to enter any order, including injunctions, necessary to enforce the rights, title and powers of the Plan Trustee and to impose such limitations, restrictions, terms and conditions of such rights, title and powers as the Bankruptcy Court may deem necessary;

(k)    to enforce any order previously entered by the Bankruptcy Court in this Chapter 11 Case and to enter an order closing the Chapter 11 Case;

(1)    to determine pending applications for the assumption or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor or the Estate may be liable, and to hear and determine, and if need be to adjudicate, any Claims arising from such applications;

(m)    to determine applications, adversary proceedings and contested or litigated matters and all causes of action relating to the Debtor, the Estate or the Plan Trustee, whether pending on the Effective Date or commenced thereafter, whether or not the Chapter 11 Case has been closed and a final decree entered;

(n)    to issue orders in aid of execution of the SSB Plan to the extent authorized by § 1142 of

the Bankruptcy Code; and

(o)    to determine such other matters as may be set forth in the Confirmation Order.

Respectfully submitted on this 27th day of June, 2022.

**SANDY SPRING BANK**
**By Counsel**

/s/ Bruce W. Henry
**Bruce W. Henry**
**Kevin M. O'Donnell**
**HENRY & O'DONNELL, P.C.**
300 N. Washington Street
Suite 204
Alexandria, Virginia 22314
(703) 548-2100
Counsel for Sandy Spring Bank