## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Zachair, Ltd., | ) | Case No.:  20-10691-TJC |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

## UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S SECOND MOTION FOR AN ORDER (A) APPROVING THE SALE OF THE DEBTOR'S PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) APPROVING THE SALES CONTRACT, (C) APPROVING BID PROCEDURES, (D) SCHEDULING BID DEADLINE, AUCTION AND SALE HEARING, (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (F) GRANTING CERTAIN RELATED RELIEF

John P. Fitzgerald, III, Acting United States Trustee for Region Four ("United States Trustee"), by counsel, in furtherance of the duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5) and pursuant to 11 U.S.C. § 307, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for this District, hereby files this objection to Debtor's Second Motion for an Order (A) Approving the Sale of the Debtor's Property Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Sales Contract, (C) Approving Bid Procedures, (D) Scheduling Bid Deadline, Auction and Sale Hearing, (E) Approving Form and Manner of Notice Thereof, And (F) Granting Certain Related Relief  ("Second Sale Motion"). Dkt. 312.  In support of this objection, the United States Trustee represents and alleges as follows:

## PRELIMINARY STATEMENT

The United States Trustee objects to the Second Sale Motion because it seeks bidding protections for the Stalking Horse Purchaser that exceed normal and customary protections. More specifically, the proposed Break-Up Fee is $600,000, which is 6% of the $10,000,000 initial payment as compared to the customary 1% to 3% approved by courts in similar cases. Also, the United States Trustee requests that the Expense Reimbursement of the Stalking Horse Purchaser be subject to further review and the Bid Procedures be clarified.

## JURISDICTION, VENUE & CONSTITUTIONAL AUTHORITY TO ENTER A FINAL ORDER

1.      The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding under 28 U.S.C. § 157(b)(1). Venue is proper in this district under 28 U.S.C. § 1408. The Court has constitutional authority to enter a final order in this matter. If it is determined that the bankruptcy judge does not have the constitutional authority to enter a final order or judgment in this matter, the United States Trustee consents to the entry of a final order or judgment by this Court in this matter.

3.      John P. Fitzgerald, III is the acting United States Trustee for Region 4, under 28 U.S.C. § 581(a)(7). Pursuant to 11 U.S.C. § 307, the United States Trustee has standing to appear and be heard on any issue in a case or proceeding under the Bankruptcy Code.

4.      Pursuant to 28 U.S.C. § 586(a)(3), the United States Trustee is statutorily obligated to monitor the administration of cases commenced under the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Specifically, he is charged with several supervisory responsibilities in reorganization bankruptcy cases under chapter 11 of the Bankruptcy Code. 28 U.S.C. § 586(a)(3)(B).

## FACTUAL BACKGROUND

5.      On January 17, 2020 (the "Petition Date"), the Debtor filed a voluntary chapter 11 petition for relief under Title 11 of the United States Code (the "Bankruptcy Code").

6.      No creditors committee was appointed in this case.

7.      The Debtor continues to operate as a debtor-in-possession under Sections 1107 and 1108 of the Bankruptcy Code.

8.      The Second Sale Motion was filed on June 5, 2022, and seeks, among other things, approval of notice and bidding procedures, stalking horse protections, and other relief as identified in the Second Sale Motion, the Real Estate Sales Contract ("Contract") and Bid Procedures.

9.      The Second Sale Motion identifies NVR, Inc. ("NVR") as the Stalking Horse Purchaser.  NVR proposes to purchase most of Debtor's assets consisting of four parcels of real property located in Clinton, Maryland.

10.      The Contract provides for certain bid protections to inure to the benefit of NVR in the event the agreement is terminated through the consummation of an Alternative Transaction. The Bid Protections include a cash amount equal to $600,000 (the "Break-Up Fee") and the Expense Reimbursement, in an unspecified amount, for "actual third-party fees and costs incurred in connection with this Contract and the transaction contemplated hereby, including without limitation, engineering and attorneys' fees." (Contract para. 20(a)).

11.      The Second Sale Motion is scheduled to be heard on July 29, 2022.

## LEGAL ARGUMENT

### I. The Break-Up Fee Has the Potential to Exceed the Usual and Customary Fee Approved for Sales of this Size and is Unreasonable

12.      The proposed Break-Up Fee of $600,000 is 6% of the $10,000,000 cash payment or 5% of $12,000,000 and exceeds the usual and customary 1% to 3% fee approved in sales of

this size in other cases.  As such, the United States Trustee proposes that the Break-Up Fee should be 3% or less of the initial cash payment.

13.     It appears from the Contract that the only guaranteed payment to the Debtor is the initial payment of $10,000,000. (Contract para. 2).  The initial payment of $10,000,000 is due the later of August 1, 2023 or twelve (12) months after the Bankruptcy Court's approval of the Seller's Second Amended Bankruptcy Plan at the confirmation hearing on the Second Amended Bankruptcy Plan.  (Contract para. 2).  The Contract provides for an "Additional Minimum Payment" of $2,000,000 payable sixty (60) days after the Plat Approval Date.  Such figure may be higher due to sales of additional real estate lots, (Contract para. 2(b)), or sale of non-residential land, (Contract para. 2(c)) with a total price not to exceed $17,000,000 (Contract para. 2).

14.     In addition to the Break-up fee the Contract provides for reimbursement of NVR's expenses for its "actual third-party fees and costs incurred in connection with this Contract and the transaction, including without limitation, engineering and attorneys' fees actual, reasonable, documented out-of-pocket expenses (including professional fees) incurred in connection with the transaction", (Contract para. 20(a)), and return of NVR's deposit of $500,000.  (Contract para. 3(b)).

15.     The purpose and goal of any asset sale is to maximize the recovery of value for the benefit of the bankruptcy estate.  To that end, the bidding procedures that are proposed through a sale process must establish a framework for competitive bidding to ensure the maximization of such value. *See In re Jon J. Peterson, Inc.*, 411 B.R. 131, 137 (Bankr. W.D.N.Y. 2009) ("[U]nless the bidding process remains fair and equitable, competitors will refrain from the type of full participation that is needed to assure bids for the highest reasonable value.  For those reasons, the court will not approve bidding procedures that undermine principles of fair play."); *In re Cormier*,

382 B.R. 377, 388 (Bankr. W.D. Mich. 2008) (quotations omitted) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

16.     Break-up fees, expense reimbursements, and other forms of bidding protections are a normal and, in many cases, necessary component of asset sales.  While that is true, the general rule "is that if break-up fees encourage bidding, they are enforceable; if they stifle bidding, they are unenforceable."  *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992); *In re On-Site Sourcing, Inc.*, 412 B.R. 817 (Bankr. E.D. Va. 2009) ("Break-up fees can serve a useful purpose in bankruptcy auctions.  But merely reciting the theoretical benefits in a motion does not insure that they inure to the benefit of the estate.").

17.     A break-up fee is a type of bidding incentive designed to encourage potential purchasers to bid for assets.  "Agreements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers."  *In re S.N.A. Nut Co.*, 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995); *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (break-up fee is "an incentive payment to an unsuccessful bidder who placed the estate property in a sales configuration mode . . . to attract other bidders to the auction.").  Break-up fees reimburse two types of expense: "first, the cost of putting together a 'stalking horse" bid; and second, expenses from which all bidders will benefit."  *In re Jon Peterson, Inc.*, 411 B.R. at 137.  Said differently, break-up fees are usually proposed to provide a prospective buyer with "some assurance that they will be compensated if the transaction is not completed because the seller determines to accept an alternative offer."  *See* Thomas J. Salerno, et al., <u>Advanced Chapter 11 Bankruptcy Practice</u> at § 7.137 (2010).

18.     Courts are divided in applying the business judgment rule or an administrative expense analysis to the propriety of break-up fees.  *See In re 996 Fifth Avenue Associates, L.P.*, 96 B.R. 24, 28 (Bankr. S.D. N.Y. 1989) and *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999).  The courts applying a variation of the business judgment rule usually analyze the following criteria in determining whether to award a break-up fee – whether the fee (i) was tainted by self-dealing or manipulation, (ii) hampered rather than encouraged bidding, and (iii) was reasonable relative to the proposed purchase price.  *See In re Integrated Resources, Inc.*, 147 B.R. at 662; *see also In re Hupp Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) (providing additional factors to consider in evaluating a break-up fee request, including, among others, whether the fee requested correlates with a maximization of value to the debtor's estate). The other test that the Third Circuit adopted, applies the general administrative expense jurisprudence of section 503(b) of the Bankruptcy Code and analyzes whether the fee was an actual and necessary cost and expense of preserving the estate.  *In re Tropia*, 352 B.R. 766, 768 (Bankr. N.D. W.Va. 2006) ("Break-up fees are allowed as an administrative expense claim against the estate if they satisfy the standard of section 503(b)(1).  The fee must reflect the actual and necessary cost of preserving the estate.").

19.     Regardless of the analytical approach taken, courts in this and other districts often find a break-up fee not to exceed 3% as reasonable as striking the appropriate balance between protecting the stalking horse purchaser's efforts and encouraging a competitive bidding process. *See e.g., In re Pier I Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va. Feb. 18, 2020) ("Bid Protections for any Stalking Horse Bidder(s) that may be selected shall not exceed three percent of any cash amount of any proposed purchase price"); *In re Toys "R" Us, Inc., et al.*, No. 17-34665 (KLP) (Bankr. E.D. Va. March 23, 2018).

20.     In the present case, the Break-Up Fee in its current form should not be approved because it is excessive and unreasonable relative to the purchase price.  Instead, the Break-Up fee should be 3% or less of the initial payment.

**II.  The Expense Reimbursement Should be Subject to Further Review**

21.     The Stalking Horse protections include, along with the Break-Up Fee, expense reimbursement of an unspecified amount.   Upon certain triggering events, the Debtor shall reimburse NVR for its "actual third-party fees and costs incurred in connection with this Contract and the transaction, including without limitation, engineering and attorneys' fees actual, reasonable, documented out-of-pocket expenses (including professional fees) incurred in connection with the transaction." (Contract para. 20(a)).  In addition to there being no limit on these expenses, nothing in the proposed Bidding Procedures contemplates the review of any such expenses being awarded to NVR by the Court or parties in interest, leaving the discretion to pay for such expenses solely to the Debtor.

22.     This is the second sale contract the Debtor has presented to this Court.  The first sale contract to JP Land Holdings was approved by this Court on July 26, 2021.  Dkt. # 215 and # 234.  The Debtor and the JP Land Holdings expended a great deal of time and money on due diligence including engineering studies and soil analysis.  Given the extensive due diligence period for the first sale contract, review of any expenses by NVR are necessary to ensure that expenses are not being duplicated.

23.     In addition, the Contract provides that "in the event that the Bankruptcy Court fails to enter the Bid Procedures Order (defined below), the Purchaser shall be entitled to receive

7

reimbursement of its actual third-party fees and costs incurred in connection with this Contract and the transaction contemplated hereby, including without limitation, engineering and attorneys' fees."

24.     The expense reimbursement provisions do not seem to be in the best interest of the Bankruptcy estate and appear to create additional financial obligations that may discourage another party from bidding.  The United States Trustee requests that to the extent the Court is inclined to approve the expense reimbursement, a mechanism is established whereby such expenses are further subject to the review of parties in interest as well as the Court through a transparent process.

### III.     The Bid Procedures Need Clarification

25.     How the Debtor will determine what constitutes a "Qualified Bid" is unclear.

26.     In addition, the contingencies in the Contract and their relationship to the Bid Procedures are unclear. The Bid Procedures are unclear as to how Debtor will evaluate a "Qualified Bid" given the contingencies in the Second Sale Contract which has a minimum price of $10,000,000 and possible maximum price of $17,000,000.  In particular, the transaction contemplates an initial payment of $10,000,000 payable the later of August 1, 2023 or twelve (12) months after the Bankruptcy Court's approval of the Seller's Second Amended Bankruptcy Plan (Contract para. 2(a)).  Additional Contract payments exceeding the initial $10,000,000 seem to be contingent.  The Contract provides for an additional payment of $2,000,000, which appears to be contingent and is payable sixty (60) days after the Plat Approval Date (Contract para. 2(e)).  The sales price may be higher, contingent on sales of additional real estate lots, (Contract para. 2(b)), or sale of non-residential land, (Contract para. 2(c)) with a total price not to exceed $17,000,000 (Contract para. 2).

27.     The Bid Procedures should be clear and must be in the best interest of the estate. *See In re Sea Island Co.*, No. 10-21034, 2010 WL 4393269, at *4 (Bankr. S.D. Ga. Sept. 15, 2010) (finding "insufficient justification for an initial overbid amount of $2.5 million [1.2% of $197.5 million cash offer] in addition to the protection and incentive already provided to the Stalking Horse Bidder in the form of a 3% break-up fee" because such "added protection would have only the effect of chilling rather than encouraging bidding" and imposing $1 million bidding increment [roughly .5% of $197.5 million cash offer]).

28.     Here, the lack of clarity in the Bid Procedures threatens to chill competitive bids without any offsetting benefit to the estate.

Wherefore, the United States Trustee requests, that (1) any breakup fees and expenses be limited to 3% of the initial payment of $10,000,000 (2) that any approved breakup fees and expenses be submitted in detail and subjected to review (under the standards of § 503(b) or otherwise), (3) that the Bid Procedures be amended to clarify the terms of a "Qualifying Bid", and (4) this Court grant such other and further relief as justice requires.

Respectfully Submitted,

Dated: June 27, 2022                             JOHN P. FITZGERALD, III
                                                 Acting United States Trustee Region 4


By: */s/ L. Jeanette Rice*
L. Jeanette Rice (12933)
Assistant U.S. Trustee
Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770
(301) 344-6220
Jeanette.Rice@usdoj.gov

9

## CERTIFICATE OF SERVICE

I hereby certify that on **June 27, 2022**, I caused a copy of the foregoing Opposition to be served by electronic means through the Court's CM/ECF system to the following parties receiving notices in this case.

Bradford F. Englander benglander@wtplaw.com, twhitt@wtplaw.com
Nancy D. Greene ndg@ndglaw.com
Bruce W. Henry bwh@henrylaw.com, kmo@henrylaw.com;jtm@henrylaw.com; mbp@henrylaw.com
Patrick J. Kearney pkearney@sgrwlaw.com, jnam@sgrwlaw.com
Nicole C. Kenworthy bdept@mrrlaw.net
Michael J. Klima bankruptcy@peroutkalaw.com
Michael J. Lichtenstein mjl@shulmanrogers.com, tlockwood@shulmanrogers.com
Jeffery Thomas Martin jtm@henrylaw.com, mbp@henrylaw.com
M. Evan Meyers bdept@mrrlaw.net
Kevin M. O'Donnell kmo@henrylaw.com, mbp@henrylaw.com;jtm@henrylaw.com
Jeffrey L. Tarkenton Jeffrey.tarkenton@wbd-us.com, beverly.saint@wbd-us.com; cathy.hinger@wbd   us.com;mnemith@wbd-us.com;rahul.tilva@wbd-us.com
Jacob Christian Zweig jzweig@evanspetree.com, crecord@evanspetree.com
Jennifer Larkin Kneeland jkneeland@watttieder.com zsyed@watttieder.com

I further certify that on June 27, 2022, I cause a copy of the foregoing Opposition to be served by first class mail, postage pre-paid on the following parties receiving notice in this case:

Nabil J. Asterbadi
2726 Chain Bridge Road, NW
Washington, DC 20016-3404

David W. Gaffey
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042

Fraser Forbes Company, LLC
Attn: Richard O. Samit
7811 Montrose Road, Suite 500
Potomac, MD 20854

William C. Harvey
Williams C. Harvey & Associates, Inc.

1146 Walker Road, Suite H
Great Falls, VA 22066

Streamline Advisors, LLC
Attn: Robert L. Patrick
c/o SC&H Group, Inc
910 Ridgebrook Road
Sparks, MD 21152-9480

SC&H Group, Inc
Attn: Robert L. Patrick
910 Ridgebrook Road
Sparks, MD 21152-9480

Jeffrey L. Tarkenton
WOMBLE BOND DICKINSON (US) LLP
2001 K Street, NW Suite 400 South
Seventh Flr.
Washington, DC 20006

*/s/ L. Jeanette Rice*
L. Jeanette Rice