IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
**Greenbelt Division**

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| ZACHAIR, LTD., | : | Case No. 20-10691-TJC |
| | : | Chapter 11 |
| Debtor(s) | : | |
| | : | |

**OPPOSITION OF SANDY SPRING BANK TO DEBTOR'S SECOND MOTION (A) APPROVING THE SALE OF THE DEBTOR'S PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) APPROVING THE SALES CONTRACT, (C) APPROVING BID PROCEDURES, (D) SCHEDULING BID DEADLINE, AUCTION AND SALE HEARING, (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND GRANTING CERTAIN RELATED RELIEF**

COMES NOW, Sandy Spring Bank ("SSB"), by counsel, and files this opposition to the Debtor's motion seeking an order a) approving sale of the Debtor's real property free and clear of liens and interests, b) approving a sales contract between the Debtor and NVR, Inc., c) approving bidding procedures, d) scheduling deadlines and setting dates for auction and final hearing, and e) for other relief as indicated therein (the "2nd Sale Motion"). SSB objects to the relief sought in the 2nd Sale Motion for the reasons set forth herein.

**I.     GENERAL BACKGROUND**

1.     The debtor Zachair, Ltd. ("Debtor" or "Zachair") is before this Court pursuant to a voluntary petition filed under Chapter 11 of the Bankruptcy Code on January 19, 2020 (the "Petition Date"). Zachair has continued in possession of its property and affairs since the Petition Date and is conducting its business as a Debtor in Possession.

1

2. The Debtor's principal asset is certain real property consisting of approximately 423.45 acres situated in Prince Georges County, Maryland (the "Property") as the same is identified or referenced at Schedule A/B 55.1 of the bankruptcy schedules filed by Zachair in this case. The Debtor has owned the Property since March, 1995, over 25 years. The Debtor is solely owned by Dr. Nabil Asterbadi and his wife as tenants by the entireties (the "Shareholders").

3. SSB is a secured creditor herein, holding a pre-petition claim in the approximate amount of $2.4 million secured by a first priority deed of trust recorded against the Property. SSB's secured claim has not been paid or serviced during the pendency of this Chapter 11 case, and additional interest accruals and attorneys' fees place the current balance of the pre-petition secured claim at over $2,900,000.00. SSB has also provided certain DIP financing secured by the Property, and the current balance of the DIP loan is approximately $330,000.00 plus interest.

4. The majority of the Property was subjected to certain surface mining for many years. Over the past decade or more the Debtor has been conducting Surcharge fill operations under which fill from third party sites has been received and dumped onto the quarry pits in the mined portions of the Property. The Surcharge operation was conducted under a mining permit from the Maryland Department of the Environment ("MDE") and a special exception from Prince George's County.

5. The Property has been subjected to substantial overfill relating to the dumping and Surcharge fill operations, the Debtor has failed to effect compliance with the requirements of its mining permits and special exception. Additionally, while the property is zoned for residential (and some ancillary commercial) development, no entitlements have been obtained beyond

zoning. The conduct of the Surcharge operation, consequent physical condition of the Property, and lack of entitlements all materially and directly affect the risks and costs of potential development of the Property.

6. It is of note that substantial income generated from the fill operations has been admitted by Dr. Asterbadi to have been completely withdrawn from the Debtor by the Shareholders. Upon information and belief, the Surcharge operations were providing between half and three quarters of a million dollars per year in cash income paid by entities for the ability to discharge their fill on the Property. Dr. Asterbadi has admitted that essentially all of this money, was withdrawn by or used for the benefit of the Shareholders since his retirement from medical practice about a decade ago. The Debtor's bankruptcy schedules disclosed withdrawals by Dr. Asterbadi and his wife of over one and a half million dollars in the two years preceding the filing of this Chapter 11 case.

7. For the past ten years, the Debtor has engaged in a series of unsuccessful efforts to sell the Property for a price sufficient to permit ultimate distributions to the Shareholders. The Property was originally placed under contract for sale by the Debtor in 2013, initially to an entity known as WV/B Palisades Development, LLC ("Palisades")(the contract and all amendments thereto referred to hereinafter as the "Contract"). In 2015, the Contract was assigned to and assumed by PD Hyde Field, LLC ("PD Hyde").

8. In 2018, a Notice of Default was sent by PD Hyde to the Debtor with respect to the Contract alleging a continuation of the Surcharge fill operations despite an agreement of the Debtor to terminate such operations. PD Hyde attached a soils analysis report which was

3

prepared using then current grading and topography data from Dewberry Consultants. PD Hyde estimated that at that time approximately 3.8 million cubic yards of excess fill existed which required removal or relocation.

9. Thereafter, and during the pendency of this Chapter 11 case, the Debtor entered into yet another contract for sale of the Property to JP Land Holdings, LLC dated June 21, 2021 (the "JP Land Contract"). After several extensions of its deadline for closing, JP Land Holdings, LLC gave notice in early January, 2022 of its termination of the JP Land Contract. The Debtor has offered no explanation for the termination, and it is not known if the decision was related to development challenges created by the mining and Surcharge fill operations. It is believed that the Prince George's County Department of Permitting, Inpections and Enforcement ("DPIE") has indicated that it will not permit residential development on the Surcharged areas.

II.     **THE NVR CONTRACT**

10. The Debtor now seeks approval for sale of the Property to NVR, Inc. ("NVR") under a contract entered into between the Debtor and NVR dated June 1, 2022 (the "NVR Contract"). The NVR Contract evidences a continuation of the Debtor's apparent refusal to consider any other sale alternative other than one in which the Debtor's Shareholders potentially benefit through an extended additional delay in a closing of sale in order to permit a prospective purchaser to pursue and obtain new entitlements with respect to the Property. This continued pursuit of enrichment of the Debtor's Shareholders comes at the financial detriment and risk to creditors of this estate.

11. The structure of the NVR Contract expressly contemplates and provides for a delay in any closing for as much as a year to eighteen months from an order ultimately approving the NVR Contract.[1] Subsequent to an initial study period, this time is meant to provide NVR with the opportunity to mitigate its risk of acquisition by pursuing entitlements for residential development of the Property. Under the terms of the NVR Contract, NVR may pursue all such entitlements and the Debtor is obligated to provide its cooperation in connection with any and all applications or submissions made with respect thereto. The Debtor having been unable to bring any of its three prior contract purchasers to closing, this delay is of particular concern and risk to SSB and general creditors of the estate.

12. Of particular concern is the fact that NVR is able to obtain this extended runway with security deposits that are grossly inadequate to compensate for additional accruals of real estate taxes, secured interest carry and professional fees that will accrue (and remain unpaid) during this time frame. NVR's initial deposit of $500,000.00 buys them a twelve (12) month runway, and they can purchase an additional 180 delay before closing by submission of an extension fee of $250,000.00.

13. In the two and a half years this case has been pending, the Debtor has unpaid and accrued real estate taxes and secured interest carry that exceed $500,000.00. More significantly, the Debtor has incurred professional fee claims in this case that have been approved in amounts

---

[1] As currently drafted, SSB estimates that NVR could delay a decision on potential closing until as late as early 2024. During this time, the Debtor and the Property will be subject to the accrual of additional real estate taxes, secured interest carry, and material professional fees, none of which are proposed or projected to be paid from any source other than what the Debtor hopes will be an ultimate closing under the NVR Contract.

5

exceeding $2,250,000.00 through September of 2021. It is estimated that unpaid professional fees now exceed three million dollars ($3,000,000.00), although the amount is unknown to SSB. SSB is unaware of any argument that the incurrence of these accrued liabilities has resulted in any corresponding increase or enhancement in the value of the Property. Accordingly, these amounts represent the measure by which general creditors of this estate have been pushed further down the road of recovery on their claims. The imposition of another eighteen months of additional accruals is simply an unreasonable risk to impose upon the creditors of this estate.

14. The NVR Contract is structured such that NVR will close only if it is able to assure itself of certain entitlements, *and* the market at such time is still consistent with substantial demand for residential units. Essentially the NVR Contract requires that the Court (and creditors) wager that market conditions in the winter of 2023-2024 will be favorable. Only if they are favorable will NVR close, and if unfavorable the creditors will be worse off, and trying to regroup in an unfavorable market.

### III. SSB OBJECTION

15. For the reasons stated hereinabove, each and all of which are incorporated herein by reference, SSB objects to the relief sought by the Debtor in the 2nd Sale Motion. Specifically, SSB objects strenuously to any approval of the NVR Contract at this time. SSB believes that a current sale of the Property, priced with current and attendant development risks, is in the best interests of creditors in this case. Accordingly, SSB is filing a proposed Disclosure Statement and Chapter 11 Plan contemporaneously with the filing of this Opposition.

16. SSB requests that this Court defer any determination on approval of the NVR Contract pending confirmation hearing(s) relating to the Debtor's 2nd Amended Plan and the SSB Disclosure Statement and Plan to be filed herein.

17. SSB objects to the 2nd Sale Motion, and summarizes the basis of its objections as follows:

- a. SSB objects to the inadequacy of the proposed Deposit and Extension Fee as proposed under the NVR Contract as being grossly inadequate to account for likely accruals of taxes, secured interest, and professional fees that will accrue prior to any closing.

- b. SSB objects to the Break-Up Fee proposed in the 2nd Sale Motion. Originally proposed to be in an amount of $600,000.00, SSB acknowledges that NVR has proposed a lower fee of "$420,000.00 plus out of pocket expenses." While this is certainly a step in the right direction, SSB objects to any granting of a Break-Up Fee that would be payable if this Court decided to confirm the SSB Plan as opposed to the Debtor's. Should the Debtor fail to obtain approval of the NVR Contract because the SSB Plan is confirmed, the imposition of a Break-Up Fee on the SSB Plan would work to the disservice and prejudice of general creditors of the estate. It is unclear from the current state of the pleadings whether NVR seeks this result.

- c. SSB objects to the proposal for delays of as much as another eighteen months or more to effect closing under the NVR Contract. The Debtor has spent the

past two and a half years engaging expert after expert to assist in the evaluation of development issues relating to the Property. SSB agreed to make a DIP Loan to finance these studies so the development risks could be defined and priced into the sale, to facilitate a sale and closing by the end of 2021. This did not occur. If the Debtor has not acquired enough information and substantiation to permit a proper handicapping of these risks by a proposed purchaser at this late date, it has no one to blame but itself. Additional delays of a year and a half or more, coupled with a continuation of a Debtor bereft of income and without funds to make payment of even the most basic of carrying costs, should not be countenanced.

d. SSB states that the additional delays, combined with the prospect of no ongoing debt service and the accrual of real estate tax liens which impair SSB's deed of trust liens, operate to deprive SSB of adequate protection of its interests in the Property. Adequate protection is not sufficient to subject SSB to the approval of the proposed option contract with NVR against its will.

e. Because the NVR Contract is proposed to be utilized as the sole source of funding for the Debtor's 2nd Amended Plan, SSB contends that this Court cannot approve the NVR Contract outside the confirmation process required for a Chapter 11 plan. SSB contends that for plan confirmation, the Court must necessarily find that an ultimate closing is likely in order to find the plan "feasible" as required under the Code. Under Sec. 1129(a) of the Code, the

Debtor would be required to show that confirmation of a plan would not be likely to be followed by a liquidation or further reorganization of the Debtor. 11 U.S.C. 1129(a)(11). Given the significant development issues facing the Debtor, this would require a material evidentiary burden. Moreover, a plan must be 'fair and equitable." Shareholder conduct in this case, when considered in light of the fact that further delays are sought principally to enhance potential value to the Shareholders, will give rise to material concerns in this regard.

18. SSB reserves the right to supplement or amplify this Objection.

WHEREFORE, SSB prays that the Court deny the Debtor's 2nd Sale Motion as filed herein, and that SSB have such other and further relief as this Court may deem just.

                                        SANDY SPRING BANK
                                        **By Counsel**

/s/ Bruce W. Henry
Bruce W. Henry, #05873
Kevin M. O'Donnell
HENRY & O'DONNELL, P.C.
300 N. Washington Street
Suite 204
Alexandria, VA  22314
(703) 548-2100
(703) 548-2105 (fax)
bwh@henrylaw.com
Counsel to Sandy Spring Bank

9

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of June, 2022, I caused a copy of the foregoing pleading to be served by electronic means through the Court's CM/ECF system to the following parties receiving notices in this case.

- **Bradford F. Englander**    benglander@wtplaw.com,   twhitt@wtplaw.com
- **Nancy D. Greene**    ndg@ndglaw.com
- **Bruce W. Henry**    bwh@henrylaw.com,   kmo@henrylaw.com;jtm@henrylaw.com;   mbp@henrylaw.com
- **Patrick J. Kearney**    pkearney@sgrwlaw.com,   jnam@sgrwlaw.com
- **Nicole C. Kenworthy**    bdept@mrrlaw.net
- **Michael J. Klima**    bankruptcy@peroutkalaw.com
- **Michael J. Lichtenstein**    mjl@shulmanrogers.com,   tlockwood@shulmanrogers.com
- **Jeffery Thomas Martin**    jtm@henrylaw.com,   mbp@henrylaw.com
- **M. Evan Meyers**    bdept@mrrlaw.net
- **Kevin M. O'Donnell**    kmo@henrylaw.com,   mbp@henrylaw.com;jtm@henrylaw.com
- **L. Jeanette Rice**    Jeanette.Rice@usdoj.gov,   USTPRegion04.GB.ECF@USDOJ.GOV
- **Jeffrey L. Tarkenton**    Jeffrey.tarkenton@wbd-us.com, beverly.saint@wbd-us.com; cathy.hinger@wbd- us.com;mnemith@wbd-us.com;rahul.tilva@wbd-us.com
- **US Trustee - Greenbelt**    USTPRegion04.GB.ECF@USDOJ.GOV
- **Jacob Christian Zweig**    jzweig@evanspetree.com,   crecord@evanspetree.com

I further certify that on the 27th day of June, 2022, I cause a copy of the foregoing pleading to be served by first class mail, postage pre-paid on the following parties receiving notice in this case:

Nabil J. Asterbadi
2726 Chain Bridge Road, NW
Washington, DC 20016-3404

Streamline Advisors, LLC
Attn: Robert L. Patrick  c/o SC&H Group, Inc
910 Ridgebrook Road
Sparks, MD 21152-9480

Fraser Forbes Company, LLC
Attn: Richard O. Samit
7811 Montrose Road, Suite 500
Potomac, MD 20854

　　　　　　　　　　　　　　　　　　　　　　　　 /s/ Bruce W. Henry
　　　　　　　　　　　　　　　　　　　　　　　　**Bruce W. Henry**