## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Zachair, Ltd., | ) | Case No.:  20-10691-TJC |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

### DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION

Whiteford, Taylor & Preston, LLP
Bradford F. Englander, Esq., Bar No. 11951
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Facsimile: (703) 280-3370
Email: benglander@wtplaw.com

*Counsel for the Debtor*

## **TABLE OF CONTENTS**

**ARTICLE I**      DEFINED TERMS AND RULES OF INTERPRETATION ............................. 1

    Section 1.01    Rules of Interpretation ...................................................................... 1

    Section 1.02    Defined Terms ................................................................................... 2

**ARTICLE II**     CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS.................. 11

    Section 2.01    Classification ................................................................................... 11

**ARTICLE III**    TREATMENT OF CLAIMS AND EQUITY INTERESTS .......................... 12

    Section 3.01    General................................................................................................ 12

    Section 3.02    Unclassified Claims......................................................................... 12

    Section 3.03    Impaired/Voting Classes of Claims Against the Debtor ............... 13

**ARTICLE IV**     ACCEPTANCE OR REJECTION OF THE PLAN............................... 18

    Section 4.01    Impaired Classes of Claims and Equity Interests Entitled to Vote................. 18

    Section 4.02    Acceptance by an Impaired Class................................................. 18

    Section 4.03    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code............... 19

    Section 4.04    Elimination of Vacant Classes...................................................... 19

**ARTICLE V**      MEANS FOR IMPLEMENTATION OF THE PLAN ................................. 19

    Section 5.01    Revesting of Assets ....................................................................... 19

    Section 5.02    Sale of the Property ....................................................................... 19

    Section 5.03    Releases of Record ........................................................................ 19

    Section 5.04    Exit Financing................................................................................. 20

    Section 5.05    Exemption from Transfer and Recordation Taxes ....................... 20

    Section 5.06    Income Tax Payments .................................................................... 20

    Section 5.07    Preservation of Priority.................................................................. 20

    Section 5.08    Corporate Action ........................................................................... 20

    Section 5.09    Effectuating Documents; Further Transactions............................ 21

    Section 5.10    Preservation of Rights of Action .................................................. 21

    Section 5.11    Retention of Professionals After Effective Date ........................... 21

    Section 5.12    Closing of Debtor's Case............................................................... 22

    Section 5.13    Operation of the Debtor Between the Confirmation Date and the Effective Date    22

    Section 5.14    Automatic Stay ............................................................................... 22

    Section 5.15    Destruction of Books and Records ................................................ 22

Section 5.16    Plan Administrator..................................................................................... 22

   (a)    Appointment of Plan Administrator ................................................................ 22

   (b)    Duties and Powers of Plan Administrator ...................................................... 23

   (c)    Compensation of Plan Administrator, Broker and Counsel ............................ 23

   (d)    Plan Administrator Expenses.......................................................................... 24

   (e)    Plan Administrator Sale Procedures ............................................................... 24

   (f)    Plan Committee ............................................................................................... 24

   (g)    Debtor Cooperation; Non-Interference........................................................... 24

   (h)    Payment by Equity; Termination of Plan Administrator................................. 24

**ARTICLE VI**    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................... 25

Section 6.01    Executory Contracts and Unexpired Leases ................................................... 25

Section 6.02    Claims Based on the Rejection of Executory Contracts and Unexpired Leases
25

**ARTICLE VII**    PROVISIONS GOVERNING DISTRIBUTIONS......................................... 25

Section 7.01    Calculation of Amounts to be Distributed ...................................................... 25

Section 7.02    Delivery of Distributions and Undeliverable or Unclaimed Distributions...... 26

Section 7.03    Compliance with Tax Requirements/Allocations............................................ 27

Section 7.04    Claims Paid or Payable to Third Parties ......................................................... 28

Section 7.05    Prepayment ..................................................................................................... 28

**ARTICLE VIII**    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
AND DISPUTED CLAIMS AND EQUITY INTERESTS................................................... 28

Section 8.01    Resolution of Disputed Claims....................................................................... 28

Section 8.02    Distribution Reserve Account ........................................................................ 30

Section 8.03    Distributions After Allowance ....................................................................... 30

Section 8.04    Disallowance of Claims.................................................................................. 30

Section 8.05    Amendments ................................................................................................... 30

Section 8.06    No Interest ...................................................................................................... 31

Section 8.07    Setoffs ............................................................................................................ 31

**ARTICLE IX**    EFFECT OF PLAN CONFIRMATION....................................................... 31

Section 9.01    Binding Effect................................................................................................. 31

Section 9.02    Discharge ........................................................................................................ 32

Section 9.03    Injunction ....................................................................................................... 32

Section 9.04    Exculpation and Limitation of Liability ......................................................... 32

**ARTICLE X**      CONFIRMATION AND CONSUMMATION OF THE PLAN .................... 33

    Section 10.01   Conditions to Confirmation of the Plan ........................................ 33

    Section 10.02   Conditions to the Effective Date ................................................ 33

    Section 10.03   Waiver of Conditions ................................................................ 33

    Section 10.04   Consequences of Non-Occurrence of Effective Date ................... 33

**ARTICLE XI**     RETENTION OF JURISDICTION ........................................................ 34

    Section 11.01   Retention of Jurisdiction ............................................................ 34

    Section 11.02   Failure of the Bankruptcy Court to Exercise Jurisdiction ............ 35

**ARTICLE XII**    MISCELLANEOUS PROVISIONS .................................................... 36

    Section 12.01   Modifications and Amendments ................................................ 36

    Section 12.02   Severability of Plan Provisions ................................................ 36

    Section 12.03   Successors and Assigns ............................................................ 36

    Section 12.04   Payment of Statutory Fees ........................................................ 36

    Section 12.05   Revocation, Withdrawal or Non-Consummation ......................... 37

    Section 12.06   Service of Documents ................................................................ 37

    Section 12.07   Plan Supplements ...................................................................... 37

    Section 12.08   Tax Reporting and Compliance .................................................. 37

# INTRODUCTION

Zachair, Ltd (the "Debtor"), hereby proposes the following chapter 11 plan of reorganization. The Debtor is the proponent of the Plan within the meaning of section 1129 of title 11 of the United States Code (the "Bankruptcy Code"). This Plan contemplates the distribution of the proceeds of the sale of a portion of the Debtor's assets and the resolution of the outstanding Claims against and Equity Interests in the Debtor. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtor's history, business and operations, (ii) a summary of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement (including all exhibits thereto) in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 of the Bankruptcy Code and Rule 3019 of the Bankruptcy Rules, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior as provided herein.

The Plan is a plan of reorganization. The Debtor has sought preliminary authority to sell substantially all of its Property to the Stalking Horse Purchaser, its designee or, subject to the terms of the Sale and Bid Procedures Order, another Purchaser. The Plan provides for the disposition of proceeds of the sale of the Property. The Plan also provides for Distributions to certain Holders of Administrative Claims and Priority Claims and to other Claim Holders and Interest Holders. The Plan further provides for the revesting of all remaining Estate assets to the Debtor on the Effective Date.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith have been approved for use in soliciting acceptances and rejections of the Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all Holders of Claims and Equity Interests to the extent required by section 1125 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR THAT ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN AS PROVIDED HEREIN.**

## ARTICLE I          DEFINED TERMS AND RULES OF INTERPRETATION

### Section 1.01   Rules of Interpretation

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined, including those capitalized terms used in the preceding Introduction, shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the

Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall control. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. In addition to the foregoing, any defined terms used in the Exhibits shall have the meaning ascribed to them in either the applicable Exhibit or in Article I of this Plan.

## Section 1.02   Defined Terms

"**Administrative Claim**" means a Claim for costs and expenses of administration of this Chapter 11 Case allowed under sections 503(b), 507(b), including but not limited to: (a) any actual and necessary costs and expenses incurred between the Petition Date and the Effective Date for preserving the Debtor's estate and operating the businesses of the Debtor (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by governmental units for taxes (including Claims in respect of taxes that accrued after the Petition Date, but excluding Claims in respect of taxes that accrued on or before the Petition Date unless such taxes are entitled to be treated as administrative claims under the Bankruptcy Code); and for which an application is filed with the Bankruptcy Court prior to the Administrative Claims Bar Date; (b) Professional Fee Claims, and (c) all fees and charges assessed against the Debtor's estate under section 1930, chapter 123 of title 28 of the United States Code.

"**Administrative Claims Bar Date**" means thirty (30) calendar days after the Effective Date.

"**Affiliate**" means "affiliate" as defined in section 101(2) of the Bankruptcy Code.

"**Allowed**" means, with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed) or any Equity Interest, (a) any Claim, proof of which (i) was Filed with the Bankruptcy Court, (ii) was deemed Filed pursuant to section 1111(a) of the Bankruptcy Code, or (iii) by a Final Order, was not required to be Filed; (b) any Claim or Equity Interest that has been, or hereafter is, listed in the Schedules as liquidated in an amount other than zero or unknown and which is not Disputed or contingent (or as to which the applicable Proof of Claim has not been withdrawn or Disallowed); (c) any Claim or Equity Interest which has been allowed (whether in whole or in part) by a Final Order (but only to the extent so allowed), and, in the case of (b) and (c) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been Filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; (d) any Claim or Equity Interest allowed under or pursuant to the terms of the Plan; (e) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code which has been allowed in accordance with section 503(h) of the Bankruptcy Code; (f) a Claim in respect of an Executory Contract or Unexpired Lease that either (1) is not a Disputed Claim or (2) has been allowed by a Final Order, in either case only if a Proof of Claim has been Filed or has otherwise been deemed Filed under applicable law; or (g) which is a Professional Fee Claim for which a fee award amount has been approved by order of the Bankruptcy Court; provided, however, that Claims or Equity Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

-2-

"**Avoidance Actions**" means any and all causes of action and the proceeds thereof which a trustee, debtor-in-possession, the estate or other appropriate party in interest may assert under sections 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

"**Ballot**" means each of the ballot forms distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

"**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to this Chapter 11 Case.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Maryland.

"**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of Title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedure for the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to this Chapter 11 Case or proceedings therein, as the case may be.

"**Bar Date**" means the dates established by the Bankruptcy Court as deadlines for the Holders of Claims to File proofs of Claim.

"**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in the State of Maryland.

"**Cash or $**" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

"**Chapter 11 Case**" means the chapter 11 case commenced by the Debtor administered under case number 20-10691 in the Bankruptcy Court.

"**Claim**" or "**Claims**" means a claim or claims against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

"**Claims Register**" means the official register of Claims maintained by the Bankruptcy Court.

"**Class**" means a category of Holders of Claims or Equity Interests pursuant to section 1122(a) of the Bankruptcy Code, as described in Article III of the Plan.

"**Closing Date**" means the date of closing under the Sales Contract.

"**Confirmation**" means the entry of the Confirmation Order on the docket of this Chapter 11 Case, subject to all conditions specified having been (a) satisfied, or (b) waived.

"**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of this Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

"**Creditor**" means any Holder of a Claim against any of the Debtor or its Estate.

"**Cure**" means the Distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

"**Debtor**" means Zachair, Ltd, a corporation organized and existing under the laws of the State of Maryland.

"**Deed of Trust**" means a first priority deed of trust on the Property, securing Stalking Horse Purchaser's obligations under the Sales Contract.

"**DIP Financing Documents**" means the Commercial Promissory Note dated March 1, 2021, First Modification to Deed of Trust and Security Agreement dated as of March 1, 2021, each in favor of Sandy Spring.

"**Disallowed**" means, with respect to any Claim, Equity Interest or portion thereof, any Claim against or Equity Interest in the Debtor which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the applicable Debtor, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been Filed or deemed Filed or Allowed or deemed Allowed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law in a liquidated non-contingent amount; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim; (vi) is evidenced by a Proof of Claim which has been Filed, or which has been deemed to be

Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such Proof of Claim was not properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim or Equity Interest is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such property, for which such Person, Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; or (ix) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such Claim or Equity Interest. In each case, a Disallowed Claim or Equity Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

"**Disclosure Statement**" means the Second Amended Disclosure Statement for the Plan, as amended, supplemented or modified from time to time, describing the Plan, that is prepared and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

"**Disputed**" means with respect to any Claim or any portion thereof (a) as to which the Debtor or any other party in interest, has Filed an objection, and such objection has not been withdrawn or overruled by a Final Order; (b) that is listed on the Debtor's Schedules as disputed (unless and to the extent such Claim has been deemed Allowed or deemed Allowed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law); or (c) a tort claim.

"**Disputed Claim Amount**" means (a) if a liquidated amount is set forth in a Proof of Claim relating to a Disputed Claim, (i) the liquidated amount or any portion thereof set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtor and the Holder of such Disputed Claim; or (iii) if a request for estimation is Filed by any party, the amount at which such Disputed Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in a Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtor and the Holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) zero, if the Disputed Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was Filed, or deemed to have been Filed, as applicable, and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court.

"**Distribution**" means any Distribution pursuant to the Plan to the Holders of Allowed Claims or Equity Interests.

"**Distribution Date**" means the date on which a Distribution is made pursuant to this Plan.

"**Distribution Record Date**" means (i) the Confirmation Date as to the Holders of Allowed Administrative Claims entitled to Distributions pursuant to the Plan and (ii) any such date established by the Debtor as to Holders of Other Secured Claims, Holders of Other Priority Claims and Holders of General Unsecured Claims.

"**Distribution Reserve Account**" means an account established by the Debtor on or prior to the Initial Distribution Date for the purpose of reserving funds for the payment of Disputed Claims.

"**Effective Date**" means the first Business Day following the date on which all conditions to Confirmation and the Effective Date, as set forth in Section 10.02 of the Plan have been satisfied or, if capable of being duly and expressly waived, as provided in Section 10.03 of the Plan, any such conditions has been waived.

"**Entity**" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtor including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, membership interests, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

"**Estate(s)**" means the estate of the Debtor created by section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case on the Petition Date.

"**Executory Contract**" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**Exit Financing**" means any loan, including without limitation a term loan and/or a line of credit, as may be entered into between the Debtor and lender (or lenders), either prior to or after the entry of the Confirmation Order, in the amount of at least $7,550,000 (net of lender's points, fees, prepaid interest, escrows and closing costs), or such lesser amount as the Debtor, in its sole discretion, may elect, the proceeds of which are to be used, in whole or part, to fund payments under or in connection with the Plan.

"**File, Filed or Filing**" means, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

"**Final Order**" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, re-argument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (ii) any appeal or petition for review, rehearing,

certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken for granted.

"**General Unsecured Claim**" means an unsecured Claim against a Debtor, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease, but excluding any Administrative Claims, Priority Tax Claims, and Other Priority Claims; provided, however, that any deficiency claim asserted by a holder of a Secured Claim shall be deemed a General Unsecured Claim.

"**Governmental Unit**" means all governmental units, which shall include all entities defined in section 101(27) of the Bankruptcy Code, including such entities that hold a Claim arising from prepetition tax years or periods or prepetition transactions to which Debtor was a party.

"**Holder**" or "**Holders**" means the legal or beneficial holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

"**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Class**" means a Class or Claims or Equity Interests that are Impaired.

"**Initial Distribution Date**" means the date on which the Debtor makes initial distributions to Holders of Allowed Claims pursuant to the Plan.

"**Lien**" means, with respect to any asset or property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an obligation, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of holders of General Unsecured Claims; provided, however, that a lien that has or may be avoided pursuant to any Avoidance Action shall not constitute a lien hereunder.

"**Mercedes-Benz Finance**" means Mercedes-Benz Financial Services USA LLC.

"**Mercedes SUV**" means the 2014 Mercedes-Benz GL63, VIN 4JGDF7EE3EA300402, co-owned by the Debtor and Dr. Asterbadi.

"**Mercedes SL**" means the 2015 Mercedes-Benz SL65 AMG, VIN WDDJK7KAXFF035220, co-owned by the Debtor and Dr. Asterbadi.

"**Net Closing Funds**" means the funds received by the Debtor on the Closing Date from the purchaser under the Sales Contract, less the aggregate amount of payments, or reserves for the payment of: (a) Allowed Claims, interest and other compensation under the Plan with respect to Classes 1, 2, 3, 4, 5, 6 and 7; (b) Administrative Claims; (c) Professional Fee Claims; (d) accrued and projected operating expenses; (e) U.S. Trustee fees; (f) the Tax Reserve; and (g) accrued and projected principal, interest, fees and charges with respect to Exit Financing.

"**Net Purchase Funds**" means the funds received by the Debtor on account of the Purchaser Payment, less the aggregate amount of payments, or reserves for the payment of: (a) Allowed Claims, interest and other compensation under the Plan with respect to Classes 1, 2, 3, 4, 5, 6 and 7; (b) Administrative Claims; (c) Professional Fee Claims; (d) accrued and projected operating and litigation expenses; (e) U.S. Trustee fees; (f) the Tax Reserve; and (g) accrued and projected principal, interest, fees and charges with respect to Exit Financing.

"**Order(s)**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any case or the docket of any other court of competent jurisdiction.

"**Other Administrative Claims**" means any and all Administrative Claims arising after the Administrative Claims Bar Date, other than Professional Fee Claims.

"**Other Priority Claims**" means any and all Allowed Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

"**PD Hyde Field**" means PD Hyde Field LLC, a limited liability company organized under the laws of the State of Maryland.

"**Person**" shall have the meaning provided in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means the date on which the Debtor Filed its petition for relief commencing the Chapter 11 Case, January 17, 2020.

"**Plan**" means this plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with its terms and the Bankruptcy Code or the Bankruptcy Rules.

"**Plan Administrator**" means Black Dog Receiver LLC, or such other person as Sandy Spring and the Debtor may agree upon in writing or, absent agreement, as directed by the Court.

"**Plan Administrator Consultants**" means consultants and advisors as may be hired by the Plan Administrator to assist and advise with respect to the marketing, sale and disposition of the Property, other than brokers and lawyers.

"**Plan Committee**" means a committee consisting of Sandy Spring Bank; Whiteford Taylor & Preston LLP in its capacity as an administrative creditor; and PD Hyde Field, in its capacity as a general unsecured creditor.

"**Post-Effective Date Interest Rate**" means the United States prime rate of interest published by the Wall Street Journal prior to the commencement of the Confirmation Hearing, or the lowest interest rate that the Bankruptcy Court determines is required to satisfy Section 1129(b) of the Bankruptcy Code with respect to a particular Class.

"**Pre-Effective Date Interest Rate**" means the federal judgment rate under 28 U.S.C. § 1961 in effect as of the Petition Date.

"**Priority Tax Claim**" means any and all Claims of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"**Professional**" means any professional employed in this Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328, 1103, 105(a), 363(c) or other order of the Bankruptcy Court.

"**Professional Fee Claims**" means compensation for legal, financial, advisory, accounting and other services by Professionals and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred on or prior to the Effective Date.

"**Proof of Claim**" means a proof of claim Filed with the Bankruptcy Court in this Chapter 11 Case.

"**Property**" means the real property owned by the Debtor, consisting of approximately 423.45 acres, located in Prince George's County, Maryland, as more specifically described in Exhibit A to the Sale and Bid Procedures Motion.

"**Property Consultants**" means the consultants and other advisors engaged by the Debtor pursuant to the *Order Granting Motion For Order Authorizing The Debtor To Employ And Compensate Consultants And Experts For Specific Services Rendered In Connection With The Debtor's Property*, entered on January 4, 2021, clerk's docket no. 182.

"**Pro Rata Share**" means with respect to any Distribution to a Class under the Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim or Equity Interest in such Class to the aggregate amount of all Allowed Claims or Equity Interests plus the Disputed Claim Amount of all Disputed Claims or the amount of Equity Interests that are Disputed in the same Class; provided that, Priority Tax Claims and Other Priority Tax Claims shall be aggregated for the purposes of calculating the Distribution to Holders of Priority Tax Claims and Holders of Other Priority Claim; provided further, that to the extent any Disputed Claims or Equity Interests are not Allowed by the Bankruptcy Court in whole or in part, the Pro Rata Share of all Allowed Claims or Equity Interests in such Class shall be adjusted to take into account the Disputed Claim Amount or the amount of Equity Interests that are Disputed (or portion thereof) associated with the Disputed Claim or Equity Interest that was not Allowed.

"**Purchaser Payment**" means the payments to be paid by the Stalking Horse Purchaser under the Sales Contract, or in the event of a sale to another Prevailing Purchaser, any contractual obligation to make payment to the Debtor on account of the sale of the Property.

"**Purchaser Payment Date**" means any date on which the Debtor receives payment under the Purchaser Payment.

"**Sale and Bid Procedures Motion**" means the *Debtor's Second Motion for an Order (A) Approving the Sale of the Debtor's Property Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Contract, (C) Approving Bid Procedures, (D) Scheduling Bid Deadline, Auction and Sale Hearing, (E) Approving Form and Manner of Notice Thereof, and (F) Granting Certain Related Relief*, filed on June 5, 2022, clerk's docket no. 321, including all exhibits thereto.

"**Sale and Bid Procedures Order**" means the proposed *Order (A) Approving the Sale of the Debtor's Property Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Contract, (C) Approving Bid Procedures, (D) Scheduling Bid Deadline, Auction and Sale Hearing, (E) Approving Form and Manner of Notice Thereof, and (F) Granting Certain Related Relief*, annexed as Exhibit E to the Sale and Bid Procedures Motion.

"**Sales Contract**" means the *Real Estate Sales Contract* dated June 1, 2022 (attached as Exhibit B to the Sale and Bid Procedures Motion), by and among the Debtor, the Stalking Horse Purchaser, and Watt Tieder Hoffar & Fitzgerald, LLP , as escrow agent, , as such contract may be amended; and, in the event of a sale of the Property to a Prevailing Bidder other than the Stalking Horse Purchaser, any contract between the Debtor and such Prevailing Bidder.

"**Sandy Spring**" means Sandy Spring Bank, a Maryland corporation.

"**Sandy Spring DIP Loan**" means that certain post-petition loan made by Sandy Spring to the Debtor pursuant to the *Line re DIP Loan Motion* Filed on November 4, 2020, clerk's docket no. 165, *Final Order Authorizing Debtor-In-Possession Financing and Use of Cash Collateral*, entered on November 9, 2020, clerk's docket no. 169.

"**Schedules**" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

"**Secured Claim**" means a Claim that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which the Estate has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code; to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtor and the Holder of such Claim. If the amount of any Claim exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff, it shall be treated as a General Unsecured Claim.

"**Settlement and Plan Support Agreement**" means the Settlement and Plan Support Agreement dated September 8th, 2021, by and among the Debtor, PD Hyde Field and Watt Companies, Inc.

"**Solicitation Procedures Order**" means the Order of the Bankruptcy Court approving the Debtor's solicitation of acceptances of the Plan and providing for the manner of such solicitation.

"**Stalking Horse Purchaser**" means NVR, Inc., a Virginia corporation organized and existing under the laws of the Commonwealth of Virginia.

"**Subordination Agreement**" means that certain Subordination and Standstill Agreement dated December 11, 2015 by and among the Debtor, Sandy Spring and PD Hyde Field.

"**Tax Reserve**" means a reserve to be established on the Closing Date with respect to estimated state and federal income taxes resulting from the sale of the Property.

"**TD Auto Finance**" means TD Auto Finance, LLC.

"**Tenant Leases**" means Unexpired Leases to tenants at the Property, whether entered into pre-petition or post-petition.

"**Unexpired Lease**" means a lease of non-residential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**Unimpaired**" means Claims in an Unimpaired Class.

"**Unimpaired Class**" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

"**Unsecured Claim**" means a Claim arising prior to the Petition Date against the Debtor that is neither a Secured Claim nor entitled to priority under section 507 of the Bankruptcy Code or any order of the Bankruptcy Court, which Claim may be a General Unsecured Claim.

"**U.S. Trustee**" means the Office of the United States Trustee for Region 4.

"**U.S. Trustee Fee Claims**" means fees arising under 28 U.S.C. § 1930(a)(6) of Title 28 of the United States Code with respect to this Chapter 11 Case.

"**Voting Deadline**" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Solicitation Procedures Order.

**ARTICLE II**        **CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

**Section 2.01   Classification**

Claims against the Debtor, other than Administrative Claims and Priority Tax Claims, are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

-11-

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Sandy Spring Prepetition Loan | Impaired | Yes |
| 2 | Sandy Spring DIP Loan | Unimpaired | No |
| 3 | Prince George's County Real Estate Taxes | Impaired | Yes |
| 4 | TD Bank Auto Loan | Impaired | Yes |
| 5 | Mercedes Benz Auto Loan | Impaired | Yes |
| 6 | PD Hyde Field Claim | Impaired | Yes |
| 7 | Other Priority Claims | Impaired | Yes |
| 8 | General Unsecured Claims | Impaired | Yes |
| 9 | Equity Interests | Impaired | Yes |

**ARTICLE III**        **TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**Section 3.01   General**

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of the Class and is classified in a different class to the extent that the Claim or Equity Interest qualifies within the description of that different Class. A Claim or Equity Interest is placed in a particular Class for the purposes of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

**Section 3.02   Unclassified Claims**

*(a)      Administrative Claims*

In full satisfaction, and settlement of and in exchange for each Allowed Other Administrative Claim, except to the extent that any Holder of an Other Allowed Administrative Claim has received payment prior to the Effective Date, agrees with the Debtor to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Other Administrative Claim shall receive payment in full, in Cash, on the later of (i) the Effective Date if due on or before that date and unpaid on the Effective Date, (ii) as soon as practicable after the date upon which such Other Administrative Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Other Administrative Claim and the Debtor.

Any Holder of an Other Administrative Claim shall, no later than the Administrative Claims Bar Date, File an application for allowance of such Other Administrative Claim. **The failure to File an application seeking the allowance of any Other Administrative Claim by the Administrative Claims Bar Date shall constitute a bar against the assertion or collection of any such Administrative Claim, and shall relieve the Debtor from any liability, responsibility or obligation with respect to such Administrative Claim. Without limiting the generality of the foregoing, no Distribution shall be made pursuant to this Plan with respect to any Other Administrative Claim (other than Professional Fee Claims) that is**

-12-

**not Filed by the Administrative Claims Bar Date.  The Debtor shall not be required to File any objection in order to confirm or determine the disallowance of any late-Filed motion for the allowance or payment of any Administrative Claim (other than Professional Fee Claims).**

Prior to the Confirmation Hearing, and again prior to entry of the final decree, the Debtor shall file reports regarding compensation paid to the Property Consultants.  Such reports shall: (a) identify each of the Property Consultants; (b) briefly describe the services performed by each of the Property Consultants; and (c) set forth the aggregate amount paid to each of the Property Consultants.

*(b)      Professional Fee Claims*

Any Professional seeking an award by the Bankruptcy Court of an Allowed Professional Fee Claim on account of Professional Fees incurred from the Petition Date through and including the Effective Date (i) shall, no later than forty five (45) days after the Effective Date, File a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date, and (ii) shall receive, as soon as reasonably practicable after such Claim is Allowed, in full settlement, and satisfaction of, and in exchange for, such Allowed Professional Fee Claims, Cash in the amount of the Allowed Professional Fee Claims.

*(c)      Priority Tax Claims*

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date or unless otherwise agreed by the Debtor and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive payment in full of its Allowed Priority Tax Claim: (i) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; (ii) in for by the Plan; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim.

*(d)      U.S. Trustee Fee Claims*

All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date.

All fees payable pursuant to section 1930 of Title 28 of the United States Code that are outstanding and assessed after the Effective Date shall be paid on a quarterly basis until the Chapter 11 case is closed, converted, or dismissed.  The reorganized Debtor liable for the payment of all quarterly fees due pursuant to section 1930 of Title 28 after the Effective Date.

The reorganized Debtor shall each provide the United States Trustee with post-confirmation quarterly reports that shall include all of their respective disbursements for that quarter using the data embedded Form 11-PCR.

The Debtor will file a Notice of Effective Date within seven days of the Effective Date.

**Section 3.03   Impaired/Voting Classes of Claims Against the Debtor**

*(a)      Sandy Spring Bank Pre-Petition Loan ("Class 1")*

-13-

<u>Classification</u>:  Class 1 consists of the Secured Claim of Sandy Spring under the Sandy Spring Pre-Petition Loan.

<u>Treatment</u>:  Except to the extent that the Holder of the Allowed Class 1 Claim agrees in writing to less favorable treatment:

1.  On the Effective Date, the Class 1 Claim shall be deemed Allowed in the amount set forth in proof of claim no. 21-1 (the "Sandy Spring Proof of Claim"), without prejudice to the Allowance of additional legal fees and costs, or post-petition interest.
2.  The Debtor shall pay in full the Allowed Class 1 Claim on the Effective Date.
3.  Interest shall accrue post-petition through December 31, 2021 at the rate of 6.25% per annum on the outstanding principal amount of the Class 1 Claim.  In the event that the Class 1 Claim is paid in full prior to January 1, 2023, the rate for January 1, 2022 through the pay off shall be computed at 8.0%.  In the event that the Class 1 Claim has not been repaid prior to January 1, 2023, the Class 1 Claim shall bear interest from January 1, 2022 through the pay off at the rate of prime plus 4.0%.
4.  The Holder of the Allowed Class 1 Claim shall retain its Lien on the Property to secure the Allowed Class 1 Claim until such Claim is paid.

<u>Voting</u>:  Class 1 is Impaired by the Plan.  The Holder of the Allowed Class 1 Claim is entitled to vote to accept or reject the Plan.

*(b)        Sandy Spring DIP Loan ("Class 2")*

<u>Classification</u>:  Class 2 consists of the Allowed Secured Claim of Sandy Spring under the Sandy Spring DIP Loan.

<u>Treatment</u>:  Except to the extent that the Holder of the Allowed Class 2 Claim agrees in writing to less favorable treatment:

1.  On the Effective Date, the Debtor shall pay, in Cash, the then outstanding principal amount of the Sandy Spring DIP Loan, along with any unpaid interest and legal fees accrued as of the Effective Date.
2.  Interest shall accrue post-petition through December 31, 2021 at the rate of 6.25% per annum on the outstanding principal amount of the Class 2 Claim.  In the event that the Class 2 Claim is paid in full prior to January 1, 2023, the rate for January 1, 2022 through the pay off shall be computed at 8.0%.  In the event that the Class 2 Claim has not been repaid prior to January 1, 2023, the Class 2 Claim shall bear interest from January 1, 2022 through the pay off at the rate of prime plus 4.0%.
3.  Sandy Spring shall not be required to file a proof of claim with respect to the Class 2 Claim.
4.  The Holder of the Allowed Class 2 Claim shall retain its Lien on the Property to secure the Allowed Class 2 Claim until such Claim is paid.

<u>Voting</u>:  Class 2 is unimpaired by the Plan.  The Holder of the Allowed Class 2 Claim is not entitled to vote to accept or reject the Plan.

*(c)        Prince George's County Real Estate Taxes ("Class 3")*

Classification:  Class 3 consists of the Allowed Secured Claims of Prince George's County, Maryland, for unpaid real estate taxes that are secured by the Property, plus any interest or penalties now existing or arising with respect to such tax claims, and less any available credits, including without limitation credits available on account of the Debtor's operation of an airfield.

Treatment:  Except to the extent that the Holder of the Allowed Class 3 Claim agrees in writing to less favorable treatment:

1. If the Debtor obtains Exit Financing on or before the Effective Date, on the Effective Date the Debtor shall pay, in Cash, the then outstanding amount of the Allowed Class 3 Claim to the extent that payment of such Claim is then required to avoid the imposition of any penalty.
2. If the Debtor has not obtained Exit Financing on or before the Effective Date, on the Closing Date the Debtor shall pay, in Cash, the then outstanding amount of the Allowed Class 3 Claim to the extent that payment of such Claim is then required to avoid the imposition of any penalty.
3. Any Class 3 Claim that has accrued, but is not due and payable as of the Closing Date, shall be paid by the then-owner of the Property when and as such payment is due under applicable law.
4. The Holder of the Allowed Class 3 Claim shall retain its Lien on the Property to secure the Allowed Class 3 Claim until such Claim is paid.

Voting:  Class 3 is Impaired by the Plan.  The Holder of the Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

*(d)    TD Auto Finance Secured Claim ("Class 4")*

Classification:  Class 4 consists of the Allowed Secured Claim of TD Auto Finance, which is secured by the Mercedes SL that is co-owned by the Debtor and Dr. Asterbadi.

Treatment:  Except to the extent that the Holder of the Allowed Class 4 Claim agrees in writing to less favorable treatment, in satisfaction of its Class 4 Claim:

1. The Holder of the Class 4 Claim shall retain its lien in the Mercedes SL pending payment in full of the Allowed Class 4 Claim.
2. The Debtor shall pay the Allowed Class 4 Claim in full on the Effective Date.
3. Pending the occurrence of the Effective Date and pursuant to the agreement of the parties:
    a. Dr. Asterbadi, at his expense, shall continue making payments to TD Auto Finance in the amount of $1,000 per month until the Closing Date.
    b. Any payments made by Dr. Asterbadi post-petition shall be credited against the Class 4 Claim.
    c. Pending payment in full of the Allowed Class 4 Claim, Dr. Asterbadi, at his sole cost and expense, shall maintain property and liability insurance on the Mercedes SL.  TD Auto Finance shall be identified as the first lien holder and loss payee with respect to property insurance on the Mercedes SL.  Dr. Asterbadi shall provide proof of insurance to TD Auto Finance from time to time upon request.

d.  Pending further order of the Bankruptcy Court, TD Auto Finance shall be stayed from exercising remedies with respect to the Mercedes SL.  Should payment(s) not be received timely and in good funds, or upon any other default with respect to Class 4, TD Auto Finance may send the Debtor and Dr. Asterbadi a notice of default and if the default is not cured within fifteen (15) days, TD Auto Finance shall be entitled to relief from the stay to permit TD Auto Finance to take possession of, and dispose of, the Mercedes SL in accordance with the contract and state law.

<u>Voting</u>:  Class 4 is Impaired by the Plan.  The Holder of the Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

*(e)      Mercedes-Benz Finance Allowed Secured Claim ("Class 5")*

<u>Classification</u>:  Class 5 consists of the Allowed Secured Claim of Mercedes-Benz Finance, secured by the Mercedes SUV that is co-owned by the Debtor and Dr. Asterbadi.

<u>Treatment</u>:  Except to the extent that the Holder of the Allowed Class 5 Claim agrees in writing to less favorable treatment, in satisfaction of its Class 5 Claim:

1.  The Holder of the Class 5 Claim shall retain its lien in the Mercedes SUV pending payment in full of the Allowed Class 5 Claim.
2.  The Debtor shall pay the Allowed Class 5 Claim in full on the Effective Date.

<u>Voting</u>:  Class 5 is Impaired by the Plan.  The Holder of the Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

*(f)      PD Hyde Field Claim ("Class 6")*

<u>Classification</u>:  Class 6 consists of the Allowed Claim of PD Hyde Field as set forth in the Settlement and Plan Support Agreement.

<u>Treatment</u>:  Except to the extent that the Holder of the Allowed Class 6 Claim agrees in writing to less favorable treatment as set forth in the Settlement and Plan Support Agreement:

1.  PD Hyde Field shall be deemed to have an allowed non-priority unsecured claim in the Bankruptcy Case in the amount of Three Million Two Hundred Thousand and No/100 Dollars ($3,200,000.00).
2.  If the Debtor obtains Exit Financing prior to the Effective Date, and if the Effective Date occurs on or before December 31, 2022, the Debtor shall pay a sum to be agreed upon by the Debtor and PD Hyde Field (the "<u>Effective Date Payment</u>") to PD Hyde Field concurrently with the funding of such financing, and shall pay an additional sum to be agreed upon (the "<u>Back End Payment</u>") to PD Hyde Field at the time of payments with respect to other general unsecured claims under the Plan.
3.  If the Debtor is not able to arrange or consummate Exit Financing, or the Debtor and PD Hyde Field do not reach agreement with respect to the amount of the payments referenced in the foregoing subsection, the Debtor shall pay the Allowed Class 6 Claim

-16-

in full *pari passu* with the payment of principal to other allowed general unsecured claims.

4. No interest shall be paid on or with respect to the Class 6 Claim.

Voting:  Class 6 is impaired under the Plan.  The Holder of Allowed Class 6 Claim is entitled to vote to accept or reject the Plan.

*(g)      Other Priority Claims ("Class 7")*

Classification:  Class 7 consists of all Other Priority Claims against the Debtor.

Treatment:  Except to the extent that a Holder of an Allowed Class 7 Claim agrees to a less favorable treatment, in satisfaction of its Class 7 Claim:

1. The Holder of an Allowed Class 7 Claim shall be paid the amount of its Allowed Class 7 Claim, plus interest from the Effective Date through the date of payment at the Post-Effective Date Interest Rate.
2. Subject to the payment in full of all Allowed Secured Claims, Allowed Administrative Claims, and Allowed Professional Fee Claims, Allowed Class 7 Claims shall be paid from available funds within thirty (30) days following each Purchaser Payment Date); provided, however, that all Allowed Class 7 Claims shall be paid no later than the fifth anniversary of the Petition Date.

Voting:  Class 7 is Impaired by the Plan.  The Holders of Allowed Class 7 Claims (if any) are entitled to vote to accept or reject the Plan.

*(h)      General Unsecured Claims ("Class 8")*

Classification:  Class 8 consists of Allowed General Unsecured Claims, other than the Claim of PD Hyde Field, which is separately classified.

Treatment:  Except to the extent that a Holder of an Allowed Class 8 Claim agrees to a less favorable treatment, in satisfaction of its Class 8 Claim, each Holder of an Allowed Class 8 Claim shall be treated as follows:

1. Each Holder of an Allowed Class 8 Claim shall be paid the Allowed Amount of such Claim in full, as set forth below.
2. Interest shall accrue on the outstanding amount of each Allowed Class 8 Claim from the Petition Date through the Effective Date at the Pre-Effective Date Interest Rate.
3. Interest shall accrue on the outstanding amount of the Allowed Class 8 Claim from the Effective Date through the date of payment of such Claims: (a) if Class 8 rejects the Plan, at the Post-Effective Date Interest Rate; or (b) if Class 8 accepts the Plan, at the rate of six percent (6.0%) per annum.
4. Except as provided below, payments shall be made in Cash on the later of the Closing Date, or the date such Claim becomes an Allowed Claim by a Final Order (or as soon as reasonably practicable thereafter).
5. Payments to Holders of Allowed Class 8 Claims shall be made only to the extent that Net Closing Funds and/or Net Purchase Funds are available.  Each Holder of an Allowed

Class 8 Claim shall be paid its Pro Rata Share of the Net Closing Funds and Net Purchase Funds.

<u>Voting</u>:  Class 8 is Impaired by the Plan.  The Holders of Allowed Class 8 Claims are entitled to vote to accept or reject the Plan.

*(i)      Equity Interests ("Class 9")*

<u>Classification</u>:  Class 9 consists of the Equity Interests in the Debtor.

<u>Treatment</u>:  The Holders of Equity Interests in the Debtor shall retain such interests.  Unless and until the Debtor has paid or reserved funds for the payment of all Allowed and Disputed Claims and anticipated post-Effective Date operating expenses, the Debtor shall not make any distributions or loans to Holders of any Equity Interests.  Notwithstanding the foregoing limitation, but conditioned upon the payment or reserve for payment of all Claims and expenses required under law or this Plan to be paid on the Effective Date, on the Effective Date: (a) the Debtor shall be authorized to pay or reimburse customary business expenses incurred on behalf of the Debtor, and consistent with past practices, by Holders of Equity Interests; and (b) to pay deferred compensation to Dr. Asterbadi at the rate of $2,000 per month retroactively to the Petition Date.  Subject to satisfaction of the conditions set forth above, and the additional conditions set forth below, the Debtor further shall be authorized to make distributions to Holders of Equity Interests to the extent that: (i) such distributions do not impair the Debtor's ability to make any payments required under the Plan in amounts, and at the times, projected in the exhibits to the Disclosure Statement; and (ii) after reserving for all projected operating expenses, the Debtor's cash on deposit is not less than $200,000.  Upon payment and satisfaction of all Allowed Claims and Administrative Expenses, and repayment and satisfaction of all obligations and indebtedness with respect to Exit Financing, all restrictions on distributions imposed by this Plan shall terminate and be of no further force or effect.

<u>Voting</u>:  Class 9 is Impaired by the Plan.  The Holders of Class 9 Equity Interests are entitled to vote to accept or reject the Plan.

## ARTICLE IV          <u>ACCEPTANCE OR REJECTION OF THE PLAN</u>

### Section 4.01   Impaired Classes of Claims and Equity Interests Entitled to Vote

Only Holders of Allowed Claims in each Impaired Class of Claims receiving a Distribution under the Plan, and Equity Interests, are entitled to vote as a Class to Accept or reject the Plan.  Accordingly, the votes of Holders of Claims and Equity Interests in all Classes shall be solicited with respect to the Plan.

### Section 4.02   Acceptance by an Impaired Class

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims or Equity Interests in such Class that have timely and properly voted to accept or reject the Plan.

-18-

**Section 4.03    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtor hereby requests Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**Section 4.04    Elimination of Vacant Classes**

Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**ARTICLE V         MEANS FOR IMPLEMENTATION OF THE PLAN**

**Section 5.01    Revesting of Assets**

On the Effective Date, all property of the Estate shall revest in the Debtor, subject to the Liens expressly preserved by this Plan, and to the terms and conditions of this Plan, but otherwise free and clear of all other liens, claims, interests and encumbrances.

**Section 5.02    Sale of the Property**

On the Closing Date, the Debtor shall transfer the Property to the Stalking Horse Purchaser, or if applicable, another Prevailing Bidder, pursuant to the terms of the Sales Contract.  If the Stalking Horse Purchaser is the Prevailing Bidder, the Sales Contract between the Debtor and the Stalking Horse Purchaser shall be deemed finally approved pursuant to the Confirmation Order.  In the event that another party is determined to be the Prevailing Bidder, the Sales Contract between the Debtor and such Prevailing Bidder shall be approved pursuant to the Confirmation Order.  The sale or lease of the Property shall be free and clear of all Liens, Claims and Encumbrances pursuant to Sections 363(f) and 1141 of the Bankruptcy Code.

**Section 5.03    Releases of Record**

Upon the request of the Debtor, any Entity that is entitled to receive any Distribution under this Plan, or whose Lien is extinguished or modified pursuant to this Plan, shall execute and deliver such documents and instruments as are necessary to release, modify or preserve of record any Lien, to the extent such Lien is extinguished, modified or preserved pursuant to this Plan. Notwithstanding any provision in this Plan, the Debtor shall not be required to make any Distribution, or deliver any document or instrument, to any Entity, unless and until such Entity has complied with this obligation.   The obligations set forth in this paragraph shall not be waived by any action or inaction of the Debtor, including without limitation commencement of Distributions to the affected Entity.

-19-

**Section 5.04   Exit Financing**

In the event that the Debtor arranges Exit Financing, the Debtor reserves the right to seek approval of Exit Financing either in connection with the Confirmation Hearing or upon separate motion. The Debtor may use the proceeds of Exit Financing for the purpose of payment of Claims, Administrative Expenses, pre-Confirmation and post-confirmation Professional Fees and other business expenses that are consistent with the terms of the Plan.

**Section 5.05   Exemption from Transfer and Recordation Taxes**

Pursuant to Bankruptcy Code section 1146(a), any transfers from the Debtor to any Entity, including without limitation: the sale or lease of the Property; or the issuance of any deed of trust or the granting of any Lien on the Property, pursuant to this Plan in the United States shall not be subject to any stamp tax, transfer tax, or similar tax, and the Confirmation Order shall prohibit and enjoin the appropriate state or local governmental officials or agents from assessing or collecting any such tax or governmental assessment, from delaying or conditioning the recordation of any instrument on account of the non-payment of transfer or recordation taxes, and shall require such officials or agents to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Without limiting the generality of the foregoing, the following transactions will be exempt from all recordation and transfer taxes: (a) the deed conveying the Property to the Stalking Horse Purchaser (or Prevailing Bidder); (b) the Deed of Trust; and (c) any deed of trust securing the Exit Financing. The foregoing bar against the assessment and collection of stamp tax, transfer tax, or similar tax applies regardless whether such tax is assessed against, or collectible from, the transferor or the transferee. Except as set forth above, nothing herein is intended to extend the exemption under section 1146(a) to any subsequent transfer of the Property or any portion thereof by a purchaser to any other person, including any deed of trust that secures financing obtained by such purchaser.

**Section 5.06   Income Tax Payments**

The Holders of Equity Interests in the Debtor shall be responsible for the payment of income taxes resulting from the sale of the Debtor's property and operations of the Debtor's business.

**Section 5.07   Preservation of Priority**

Notwithstanding the occurrence of the Confirmation Date or the Effective Date, all Claims, including without limitations Administrative Claims, shall retain their respective priority under the Bankruptcy Code and applicable non-bankruptcy law.

**Section 5.08   Corporate Action**

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, the Debtor, or any other Entity or Person or further Order of the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure of the Debtor, and any corporate action required by the Debtor in connection therewith, shall be deemed to have occurred and shall be in effect, without any

requirement of further action by the Debtor or the Estate.  The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

**Section 5.09   Effectuating Documents; Further Transactions**

The Debtor is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any further Bankruptcy Court Order, approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**Section 5.10   Preservation of Rights of Action**

Other than causes of action against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtor reserves any and all Causes of Action, including without limitation any actions specifically enumerated in the Disclosure Statement. On and after the Effective Date, the Debtor may pursue such Causes of Action.

No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor will not pursue any and all available Causes of Action against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtor reserves the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan.  The Debtor shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court to the fullest extent permitted by section 1123 of the Bankruptcy Code and all other applicable law.

Except for Claims, causes of action, counterclaims and defenses against PD Hyde Field and its Affiliates, all of which are expressly reserved, on the Effective Date, the Debtor hereby waives and releases all Avoidance Actions against all Persons and Entities.

**Section 5.11   Retention of Professionals After Effective Date**

(1)    <u>Retention Arrangements</u>.  From and after the Effective Date, the Debtor may, without further order of the Bankruptcy Court, employ, or continue the employment of, various professionals, including, but not limited to, counsel, consultants, and financial advisors, as needed to assist the Debtor in fulfilling its obligations under this Plan, and on whatever fee arrangement it deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements.

(2)   <u>Payment of Professionals</u>.  Professionals engaged by, or who continue to provide services to, the Debtor after the Effective Date shall not be required to file applications for compensation in order to receive the compensation provided for herein, but rather may be compensated in the ordinary course of business pursuant to their respective agreements with the Debtor.

### Section 5.12   Closing of Debtor's Case

For the avoidance of doubt, the closing of the Debtor's Bankruptcy Case shall not have any effect, in any manner, on the Causes of Action that the Debtor may assert in accordance with the Plan. Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Bankruptcy Case, and all Claims have been adjudicated, the Debtor reserves the right to seek authority from the Bankruptcy Court to close the Bankruptcy Case in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

### Section 5.13   Operation of the Debtor Between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to manage its estate as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### Section 5.14   Automatic Stay

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in this Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

### Section 5.15   Destruction of Books and Records

The Debtor has the right to seek authority to destroy or abandon any books and records of the Debtor or its Estate.  However, prior to closing the Case, the  Debtor shall not destroy or abandon any such books and records without obtaining prior approval of the Bankruptcy Court after notice to creditors of any such request.

### Section 5.16   Plan Administrator

#### (a)   <u>Appointment of Plan Administrator</u>

The Plan Administrator shall be appointed if, and only if, prior to the conclusion of the Confirmation Hearing: (1) the Stalking Horse Purchaser terminates the Sales Contract, and (2) no alternative sale contract has been approved that provides sufficient cash (either through direct payment by the purchaser or Exit Financing) for payment on or before December 31, 2022 of at least: the Allowed and reasonably projected Claims of Sandy Spring, real estate tax claims secured by the Property, Administrative Expenses (including United States Trustee fees), Priority Tax Claims, and closing costs.

### (b) **Duties and Powers of Plan Administrator**

Upon its appointment, the Plan Administrator shall have the power and duty to market and sell the Property in a commercially reasonable manner on an "as is, where is" basis, for a net sales price that, at a minimum, equals the sum of the Allowed and reasonably projected: Claims of Sandy Spring, real estate tax claims secured by the Property, Administrative Expenses (including United States Trustee fees), Priority Tax Claims, compensation and expenses of the Plan Administrator and the Plan Administrator's broker and legal counsel, compensation and expenses of the Plan Administrator Consultants, and costs of sale (the "**Threshold Sale Price**"), The Plan Administrator shall have the authority: (1) to engage a licensed real estate broker who is qualified and approved by the Court pursuant to the terms of Section 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedures; (2) to market the Property; (3) to enter into one or more contracts on behalf of the Debtor for the sale of the Property that are consistent with the terms of this Plan; (4) to sell the Property free and clear of liens, claims and encumbrances; (5) to engage legal counsel who is qualified an approved by the Court pursuant to the terms of Section 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedures.

If, after marketing the Property, the Plan Administrator does not obtain a contract with a cash purchase price that equals or exceeds the Threshold Sale Price, the parties whose claims and liens comprise the Threshold Sale Price reserve the right to negotiate discounts sufficient to allow Court approval and closing on the proposed sale. If the affected parties agree upon such discounts (and other legal requirements are satisfied), the Plan Administrator may seek Court approval of the sale. If any affected party does not agree to the proposed disposition, the Plan Administrator shall not be authorized to seek or obtain Court approval of the sale, or the authority to consummate the proposed sale, and shall file a report with the Court as to status and shall cease marketing the Property.

The Plan Administrator shall exercise reasonable efforts to maximize the sale price of the Property. However, provided that the sale equals or exceeds the Threshold Sale Price, the Plan Administrator shall be authorized to file a motion seeking approval of the proposed sale.

### (c) **Compensation of Plan Administrator, Broker and Counsel**

The Plan Administrator shall be entitled to payment of $300.00 per hour for its services, plus 1.5% of the gross sale price obtained in a sale of the Property by the Plan Administrator. Additionally, Allowance of such payment shall be subject to Court approval upon duly notices application. Compensation for the Plan Administrator, broker and Plan Administrator's legal counsel shall have the same priority as chapter 11 Administrative Expenses and, if a sale is approved and closes, shall be paid from the proceeds of such sale. Although payment to the Plan Administrator, broker, and legal counsel shall not be authorized absent a sale that either meets the Threshold Sale Price or is subject to an agreed discount, the fees of the Plan Administrator, broker and legal counsel shall be allowed with the same priority of payment as chapter 11 Administrative Expenses and shall be paid when other Administrative Expense are paid, and in accordance with such priority.

### (d)  **Plan Administrator Expenses**

Sandy Spring, in its sole discretion, may agree to make advances for the fees and costs incurred with respect to Plan Administrator Consultants incurred in connection with the Plan Administrator's conduct of his duties, other than the Plan Administrator's fees, broker's commission and legal fees and costs.  No advance or payment may be made with respect to the compensation of the Plan Administrator, broker or legal counsel.  Such advances shall be secured pursuant to the Sandy Spring deeds of trust.

### (e)  **Plan Administrator Sale Procedures**

Any sale of the Property by the Plan Administrator shall be subject to Court approval upon motion and shall be deemed to be a sale pursuant to this Plan.  Such sale shall be free and clear of liens, claims and encumbrances, and the purchaser shall be entitled to all protections available under the Bankruptcy Code, including under Section 363(f) and Section 363(m).  Any sale by the Plan Administrator shall be exempt from transfer and recordation taxes as set forth in Section 5.05 of this Plan.

### (f)  **Plan Committee**

Upon the appointment of the Plan Administrator, the Plan Committee shall be deemed appointed.  In the event that any member of the Plan Committee declines to serve or resigns, the Debtor, in consultation with the remaining members of the Plan Committee, shall select and appoint a replacement member who is within the same class or type of creditor as the creditor who declined or resigned.   The members of the Plan Committee shall serve without compensation on account of their services on the Plan Committee.  The Plan Administrator shall consult with the Plan Committee regarding the sale of the Property, including without limitation by: (1) providing to the Plan Committee all letters of intent, expressions of interest and draft contracts, prior to the execution thereof; (2) conducting periodic status calls or meetings; (3) providing copies of all work product of, and material communications with, the Plan Administrator Consultants and advisors (excepting privileged attorney/client communications) In the event that the Plan Administrator communicates with any member of the Plan Committee, all members of the Plan Committee shall be included in such communication (or provided a reasonable opportunity to participate).  Communications among the Plan Administrator and the Plan Committee shall be maintained in confidence, subject to their further agreement or order of the Court.

### (g)  **Debtor Cooperation; Non-Interference**

The Debtor shall cooperate in all regards with the Plan Administrator's sale efforts, and shall not interfere in such sale efforts.  Notwithstanding the foregoing, the Debtor shall have standing to support, respond to, or oppose any motion by the Plan Administrator to obtain Court approval of any sale.

### (h)  **Payment by Equity; Termination of Plan Administrator**

In the alternative to a sale by the Plan Administrator, the Debtor's equity owners, or their assignees, shall have the right to arrange payment to the Debtor in full and in cash at closing in

an amount that is not less than the amount necessary to pay <u>all</u> allowed Administrative Expenses and <u>all</u> Allowed Claims (including without limitation compensation of the Plan Administrator, broker and counsel), with interest as required under law. The amount of the payment by the Debtor's equity owners or assignees may be reduced solely to the extent of a written agreement signed by a Creditor or holder of an Administrative Expense, agreeing to a discount with respect to such Claim or Administrative Expense. Upon closing of such a transaction and payment in full of all amounts due, the appointment of the Plan Administrator shall be terminated. Nothing in this subsection 5.16(h) shall affect the Debtor's obligations regarding the Sales Contract or the Stalking Horse Purchaser.

## ARTICLE VI        EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### Section 6.01   Executory Contracts and Unexpired Leases

Except as otherwise provided herein of in the Confirmation Order, the Plan, or any other Plan Document, the Confirmation Order shall constitute an order under section 365 of the Bankruptcy Code rejecting all Executory Contracts and Unexpired Leases to which the Debtor is a party on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Petition Date or (c) is the subject of a pending motion to assume or reject on the Confirmation Date. For the avoidance of doubt, this section shall not be deemed to reject any insurance policy in which the Debtor is a beneficiary.

For the avoidance of doubt, the Settlement and Plan Support Agreement and the Sales Contract are assumed as of the Effective Date.

### Section 6.02   Claims Based on the Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by an Order of the Bankruptcy Court, any Proofs of Claim based upon the rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed no later than 30 days after the Effective Date. **Any Claim based upon the rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan which is not Filed and served on the Debtor within thirty (30) days after the Effective Date shall be forever barred and shall not be enforceable against the Debtor or its Estate, or its successors, assigns, or properties.**

## ARTICLE VII        PROVISIONS GOVERNING DISTRIBUTIONS

### Section 7.01   Calculation of Amounts to be Distributed

Each Holder of an Allowed Claim against the Debtor shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtor. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VII. Notwithstanding anything to the contrary in the Plan, no Holder of

an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

**Section 7.02    Delivery of Distributions and Undeliverable or Unclaimed Distributions**

*(a)    Record Date for Distribution*

On the Distribution Record Date, the Claims Register shall be closed and the Debtor or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

*(b)    Delivery of Distributions in General*

    1.    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall, in the Debtor's reasonable discretion, be deemed to have been made by the Debtor on the Effective Date, unless the Debtor and the applicable Holder of such Claim agree otherwise.

    2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtor, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or a Final Order.

    3.    Distributions

On and after the Effective Date, the Debtor shall make the Distributions required to be made on account of Allowed Claims under the Plan on such date.  Any Distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Debtor in the Distribution Reserve Account and distributed on the next Distribution Date that occurs after such Claim is Allowed in accordance with the Plan.  Except as expressly stated with respect to the treatment of a particular Class, no interest shall accrue or be paid on the unpaid amount of any Distribution paid pursuant to the Plan.

*(c)    Minimum; De Minimis Distributions*

Notwithstanding any other provision of the Plan to the contrary (including the treatment of any Claims or Classes), (a) the Debtor shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Debtor shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount

of all Distributions authorized to be made on such date is less than $5,000.00, in which case such Distributions shall be deferred to the next Distribution date, or (ii) if the amount to be distributed to that Holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder.

*(d)      Undeliverable Distributions and Unclaimed Property*

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Debtor has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder without accrual of interest during that time; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 120 days from the date the initial Distribution is made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtor automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be settled, compromised, and forever barred.

*(e)      Manner of Payment Pursuant to the Plan*

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtor by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtor.  Cash payments made pursuant to this Plan in the form of checks issued by the Debtor shall be null and void if not cashed within 120 days of the date of the issuance thereof.  Requests for reissuance of any check shall be made directly to the Debtor.

**Section 7.03    Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtor is authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements.  Each Creditor is required to provide the Debtor with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution.  If a Holder of an Allowed Claim does not provide the Debtor with an executed Form W-9 or similar form within 90 days of written request, said Creditor shall be deemed to have forfeited their Distribution and the Claim of such Creditor shall be forever barred.

**Section 7.04   Claims Paid or Payable to Third Parties**

*(a)      Claims Paid by Third Parties; Recourse to Collateral*

The Debtor shall be authorized to reduce in whole or in part a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, including on account of recourse to collateral held by third parties that secure such Claim.  To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment, in whole or in part, from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the Distribution to the Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

*(b)      Claims Payable by Insurance, Third Parties; Recourse to Collateral*

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable.  To the extent that one or more of the Debtor's insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

*(c)      Applicability of Insurance Policies*

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of any of the Debtor's insurance policies with respect to such policies, and the rights of the Debtor under any such insurance policies shall vest in the Debtor as of the Effective Date.

**Section 7.05   Prepayment**

Except as otherwise expressly provided in this Plan or the Confirmation Order, the Debtor shall have the right to prepay, without any fee, charge, premium or penalty, all or any portion of an Allowed Claim, at any time on or after the Effective Date.

**ARTICLE VIII          PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND EQUITY INTERESTS**

**Section 8.01   Resolution of Disputed Claims**

*(a)      Allowance of Claims and Equity Interests*

Prior to the Effective Date, the Debtor shall have and shall retain any and all rights and defenses that the Debtor has with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

(b)      *Prosecution of Objections to Claims or Equity Interests*

Subject in all respects to the provisions hereof, other than with respect to Professional Fee Claims, the Debtor shall have the authority to File objections to Claims or Equity Interests, and the exclusive authority to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtor's Estate to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise. For the avoidance of doubt the U.S. Trustee's right to object to Claims, including Professional Fee Claims and Claims asserted under section 503(b)(3) and (b)(4) of the Bankruptcy Code, is reserved.

(c)      *Claims Estimation*

The Debtor may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including section 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Debtor may elect to pursue additional objections to the ultimate Distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and

not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

*(d)      Expungement or Adjustment to Claims Without Objection*

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Debtor, and any Claim that has been amended may be adjusted thereon by the Debtor without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## Section 8.02   Distribution Reserve Account

Distributions with respect to Disputed Claims shall be deposited into the Distribution Reserve Account in accordance with the terms of this Plan. The amount deposited shall be determined by the Debtor. The Debtor may invest any Cash that is withheld in the Distribution Reserve Account. Notwithstanding any such investment and the addition to the Distribution Reserve Account of any income earned in respect thereof, in the event such Claim ultimately becomes an Allowed Claim, nothing in this Plan shall be deemed to entitle the holder of a Disputed Claim to post-petition or post-Effective Date interest on such Claim, except to the extent expressly provided with respect to the treatment of each Class.

## Section 8.03   Distributions After Allowance

On the next Distribution Date after the date when the order or judgment of the Bankruptcy Court allowing all or part of a Disputed Claim becomes a Final Order, the Debtor will (1) distribute to the holder of such Claim any property in the Distribution Reserve Account that would have been distributed to such beneficiary on the Distribution Dates on which distributions previously were made to beneficiaries if the Claim in issue had been an Allowed Claim (in whole or in part, as applicable) on such earlier Distribution Dates; and (2) distribute any remaining property held in the Distribution Reserve Account on account of any resolved Disputed Claim in accordance with this Plan. After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Claims, any remaining property held in the Distribution Reserve Account will revert to the Debtor.

## Section 8.04   Disallowance of Claims

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtor, and any Claim that has been amended may be adjusted thereon by the Debtor without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## Section 8.05   Amendments

After the Bar Date, as applicable, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that, even with such Bankruptcy Court authorization, a Claim may be amended by the Holder of such Claim solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

**Section 8.06   No Interest**

Unless otherwise specifically provided for in the Plan, by applicable law, or agreed-to by the Debtor, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim. Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final Distribution paid on account of such Claim occurs after the Effective Date. Notwithstanding the foregoing, if Holders of Allowed General Unsecured Claims receive a distribution of 100%, they shall be paid interest from the Petition Date until the date their Allowed General Unsecured Claims are paid in full at the federal judgment interest rate that was in effect on the Petition Date.

**Section 8.07   Setoffs**

*(a)      By the Debtor*

Except as otherwise provided in this Plan, the Debtor may, pursuant to Bankruptcy Code sections 553, 558 or applicable non-bankruptcy laws, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, Claims of any nature whatsoever that the Debtor may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such Holder.

*(b)      By Non-Debtors*

Unless otherwise stipulated in writing by the Debtor, or asserted pursuant to a timely filed Proof of Claim, any party against whom a claim or counterclaim is asserted by the Estate must assert or must have asserted any setoff rights, right of subrogation, or recoupment of any kind against such claim at the time it answers such claim, or such right of setoff, subrogation or recoupment will be deemed waived and forever barred. Notwithstanding the foregoing, nothing herein shall affect the setoff rights of any taxing authority. In no event shall any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtor unless (i) such Holder has Filed a Proof of Claim in this Chapter 11 Case by the applicable Claims Bar Date asserting the Claim forming the basis for such setoff, (ii) such Holder has filed a motion with the Bankruptcy Court authorizing it to effect such setoff, and (iii) a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.

## ARTICLE IX        EFFECT OF PLAN CONFIRMATION

**Section 9.01   Binding Effect**

This Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Equity Interests, and their respective successors and assigns.

## Section 9.02   Discharge

Pursuant to Bankruptcy Code section 1141(d)(1), and subject to the occurrence of the Effective Date, Confirmation will discharge all Claims against the Debtor except for the obligations and Liens expressly created or preserved by this Plan.

## Section 9.03   Injunction

**Except as otherwise provided in this Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date all entities who have held, hold, assert or asserted, or may hold Claims, Administrative Claims or against, or Equity Interests in, the Debtor are permanently enjoined from taking any of the following actions against the Debtor, its Estate, any of its property or Assets, on account of any such actual or asserted Claims, Administrative Claims or Equity Interests that arose before the Effective Date, except for the obligations and Liens expressly created or preserved by this Plan:**

> **(a)   commencing or continuing, in any manner or in any place, any action or other proceeding;**
>
> **(b)   enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order;**
>
> **(c)   creating, perfecting, or enforcing any lien or encumbrance;**
>
> **(d)   asserting a setoff (except as to those setoffs that were asserted prior to the petition date), or right of subrogation against any debt, liability, or obligation due to the Debtor, except as set forth in Section 8.07 of this Plan; and**
>
> **(e)   commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained in this Plan shall preclude such entities from exercising their rights pursuant to and consistent with the terms of this Plan or the Confirmation Order.**

## Section 9.04   Exculpation and Limitation of Liability

**Notwithstanding anything to the contrary herein, the Debtor, its Professionals retained in the Chapter 11 Case, its officers and employees, shall not have or incur any liability to any holder of a Claim or Equity Interest for any act, event, or omission in connection with, or arising out of, the Chapter 11 Case, formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan, consummating the Plan, or the administration of the Plan or the property to be distributed under the Plan, unless it shall be determined in a Final Order to have constituted willful misconduct or gross negligence.**

**ARTICLE X          CONFIRMATION AND CONSUMMATION OF THE PLAN**

**Section 10.01  Conditions to Confirmation of the Plan**

In addition to any other condition to Confirmation as may be imposed by law, the following are conditions to the Confirmation of the Plan:

1. The Court has entered an order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code § 1125 shall have been entered by the Bankruptcy Court.
2. The Sales Contract, as may be amended, shall be in effect.
3. The Bankruptcy Court shall have granted the Sale and Bid Procedures Motion.
4. The Debtor shall have obtained a commitment letter, satisfactory in form and substance to the Debtor in its sole discretion, with respect to Exit Financing.

**Section 10.02  Conditions to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing in accordance with Section 10.03 of this Plan:

1. The Confirmation Order shall have been entered in this Chapter 11 Case in a form and substance reasonably acceptable to the Debtor.
2. The Confirmation Order shall have become a Final Order.
3. The Confirmation Order shall not be subject to any stay.
4. Concurrently with or prior to the occurrence of the Effective Date, either (a) Exit Financing shall have been procured and funded, or (b) Closing shall have occurred under the Sales Contract and the Debtor shall have received the cash payment due at closing under the Sales Contract.
5. All Exhibits shall be, in form and substance, reasonably acceptable to the Debtor, and, to the extent applicable, shall have been executed and delivered by all parties who are signatory thereto.
6. All documents executed, entered into in connection with, or necessary for the consummation of this Plan have been reviewed, approved, and consented to by the Debtor.

**Section 10.03  Waiver of Conditions**

Each of the conditions set forth in Sections 10.01 and 10.02 of this Plan, except for entry of the Confirmation Order, may be waived in whole or in part by the Debtor.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor as a basis not to consummate this Plan regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**Section 10.04  Consequences of Non-Occurrence of Effective Date**

In the event that the Effective Date does not occur, the Debtor reserves all rights to seek an order

from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement or treatment of Claims provided for in this Plan be null and void.  In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtor may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions as may be approved by the Court either before or after the expiration of such 30-day period.

## ARTICLE XI        RETENTION OF JURISDICTION

### Section 11.01 Retention of Jurisdiction

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, this Chapter 11 Cases and the Plan to the fullest extent permitted by law (provided, however, that notwithstanding the foregoing, with respect to all civil proceedings arising under the Bankruptcy Code or arising in or related to this Chapter 11 Cases and the Plan, the Bankruptcy Court shall have original but not exclusive jurisdiction, in accordance with section 1334(b) of Title 28 of the United States Code), including, among other things, jurisdiction to:

a) allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Equity Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

b) hear and determine all applications for compensation and reimbursement of Professional Fee Claims; provided, however, that the payment of the fees and expenses of the Professionals of the Debtor incurred from and after the Effective Date shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

c) hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

d) effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

e) hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, this Chapter 11 Case, any litigation rights or the Plan;

f) enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other

agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

g) hear and determine any and all disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

h) consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

i) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

j) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

k) hear and determine any matters arising in connection with or relating to the Plan, the schedules to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the schedules to the Plan, the Disclosure Statement, or the Confirmation Order;

l) enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with this Chapter 11 Case;

m) except as otherwise limited herein, recover all assets of the Debtor and property of the Estate, wherever located;

n) hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

o) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

p) enter a final decree closing the Chapter 11 Case.

**Section 11.02  Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to this Chapter 11 Case, including the matters set forth in Section 11.01 of the Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**ARTICLE XII**          <u>**MISCELLANEOUS PROVISIONS**</u>

**Section 12.01  Modifications and Amendments**

The Debtor may alter, amend or modify this Plan or any Exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date.  If any material amendments to this Plan are made after the solicitation package is sent out, but before the Confirmation Hearing, the Debtor reserves the right to seek a determination from the Bankruptcy Court as to whether re-solicitation is necessary.  After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Bankruptcy Code section 1101(2), the Debtor may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of this Plan.

**Section 12.02  Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, then the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 12.03  Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Entity.

**Section 12.04  Payment of Statutory Fees**

All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date.

All fees payable pursuant to section 1930 of Title 28 of the United States Code that are outstanding and assessed after the Effective Date shall be paid on a quarterly basis until the Chapter 11 case is closed, converted, or dismissed.  The reorganized Debtor liable for the payment of all quarterly fees due pursuant to section 1930 of Title 28 after the Effective Date.

The reorganized Debtor shall each provide the United States Trustee with post-confirmation quarterly reports that shall include all of their respective disbursements for that quarter using the data embedded Form 11-PCR.

The Debtor will file a Notice of Effective Date within seven days of the Effective Date.

## Section 12.05  Revocation, Withdrawal or Non-Consummation

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to file subsequent plans.  If the Debtor revokes or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Entity, (ii) prejudice in any manner the rights of the Debtor or any other Entity, or (iii) constitute an admission of any sort by the Debtor or any other Entity.

## Section 12.06  Service of Documents

Any notice, request or demand required or permitted to be made or provided to or upon the Debtor under this Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, or (iv) first class mail, and (c) deemed to have been duly given or made when actually delivered, and shall be delivered to:

> Dr. Nabil Asterbadi
> 2726 Chain Bridge Road, N.W.
> Washington, D.C. 20016

With a required copy to:

> Bradford F. Englander
> Whiteford Taylor & Preston LLP
> 3190 Fairview Park Drive, Suite 800
> Falls Church, VA  22042

## Section 12.07  Plan Supplements

Exhibits to this Plan not attached hereto shall be filed in one or more Plan Supplements.  Any Plan Supplement (and amendments thereto) filed by the Debtor shall be deemed an integral part of this Plan and shall be incorporated by reference as if fully set forth herein.  Substantially contemporaneously with their filing, the Plan Supplements may be viewed at the office of the clerk of the Bankruptcy Court or its designee during normal business hours, by visiting the Bankruptcy Court's website at ecf.mdb.uscourts.gov (PACER or CM/ECF account required).  Holders of Claims and/or Interests may obtain a copy of any Plan Supplements free of charge upon reasonable written request to the Debtor.

## Section 12.08  Tax Reporting and Compliance

The Debtor is hereby authorized to request an expedited determination under Bankruptcy Code

section 505(b) of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

Dated: August 31, 2022

*/s/ Bradford F. Englander*

Whiteford, Taylor & Preston, LLP
Bradford F. Englander, Esq., Bar No. 11951
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Facsimile: (703) 280-3370
Email: benglander@wtplaw.com

*Counsel for the Debtor*

*/s/ Nabil J. Asterbadi*

Nabil J. Asterbadi,
President of Zachair Ltd.

*12347009*