IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Zachair, Ltd., | ) | Case No.: 20-10691-TJC |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

### UNITED STATES TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEE

John P. Fitzgerald, III, Acting United States Trustee for Region 4 ("United States Trustee"), by counsel, moves this Court to direct the appointment of a Chapter 11 Trustee pursuant to Section 1104 of the Bankruptcy Code. As will be discussed in detail below, a chapter 11 Trustee should be appointed because Dr. Nabil Asterbadi, President of the Debtor, has conflicts and is grossly mismanaging the affairs of the Debtor. In support of this motion, the United States Trustee states as follows:

1. The Court has jurisdiction to hear and decide this motion. 28 U.S.C. § 1334.

2. The United States Trustee seeks the relief requested herein pursuant to 11 U.S.C. §§ 105, 1104(a), and Fed. R. Bankr. P. 9013, 9014.

3. The United States Trustee has standing to raise, appear and be heard on the matters set forth in this pleading pursuant to 11 U.S.C. § 307 and files this Motion in furtherance of his administrative duties under 28 U.S.C. § 586.

4. Pursuant to Local Bankr. Rule 9013-2, no separate memorandum of law or fact will be filed.

5. Pursuant to Local Bankr. Rule 9013-6, the United States Trustee consents to the entry of a final order or judgment by the Bankruptcy Court on this matter.

1

**Background**

6. On January 17, 2020, the Debtor voluntarily filed a petition for relief under chapter 11 of the Bankruptcy Code.

7. No committee of unsecured creditors has been appointed. The Section 341 meeting of creditors was conducted on February 24, 2020.

8. The Debtor is a Maryland corporation formed on January 6, 1994. The Debtor owns an assemblage of real property totaling approximately 423.45 acres located in Prince George's County, Maryland ("the Property"). *See* Second Amended Disclosure Statement with Respect to Debtor's Second Amended Plan of Reorganization [Dkt. No. 366] ("Disclosure Statement").

9. The Debtor operates a portion of the Property as an airfield. The Airfield generates revenue for the Debtor through the rental of hangar and parking spaces for aircraft. In addition to the Airfield, pursuant to a mining permit issued by the Maryland Department of the Environment ("MDE") portions of the Property previously were mined for sand and gravel. The cavities created by the sand and gravel mining were used for surcharge fill operations (the "Surcharge Operations"). The Debtor contracted for the acceptance of clean fill dirt removed from other third-party sites in exchange for a fee. For several years, such fees generated the majority of the Debtor's operating revenues. In early March 2020, MDE advised the Debtor that it must cease the surcharge fill operations. Disclosure Statement at p. 4.

10. The Debtor is owned by Dr. Nabil Asterbadi ("Dr. Asterbadi") and his wife Maureen Asterbadi ("Mrs. Asterbadi"). Dr. Asterbadi and Mrs. Asterbadi also serve as the only directors of the Debtor. Dr. Asterbadi serves as the President and Secretary of the Debtor, and

Maureen Asterbadi serves as the Vice-President of the Debtor. There are no other officers or senior management. Disclosure Statement at pp. 4-5.

11. Dr. Asterbadi and Mrs. Asterbadi benefited significantly from the fill operations on the Property. For example, the 2018 and 2017 K-1s issued by Debtor show they received $870,493 in income for those two years.

12. The Property has already been extensively marketed before and after the bankruptcy case was filed.

13. At the time the bankruptcy case was filed, the Debtor and Dr. Asterbadi were embroiled in litigation over one failed marketing effort with PD Hyde Field. PD Hyde Field was a venture formed for the purpose of acquiring and developing the Property. On November 15, 2018, PD Hyde Field filed a complaint (the "PD Hyde Complaint") against the Debtor and Dr. Asterbadi in the Circuit Court for Prince George's County, Maryland (the "Circuit Court"), styled *PD Hyde Field LLC v. Zachair, Ltd., et al.*, Civil Action No. 18-42893, alleging breaches of the purchase contract for the Property. The PD Hyde Complaint alleges that the Debtor breached certain provisions of the parties' contract relating to the condition of the Property. Specifically, PD Hyde Field alleged that the Debtor allowed Surcharge Operations to continue to be conducted on the Property in violation of the purchase contract, as amended. Those operations allegedly were also conducted in violation of MDE permits and approved surcharge plans, resulting in excess and unsuitable fill being on the Property. PD Hyde Field alleges that the quantity of excess fill on the Property is substantial. PD Hyde Field claims that these breaches prevented it from closing on the Property by the outside closing date under the purchase contract. Disclosure Statement at p. 4.

14. The Debtor's 2019 federal tax return states that its shareholders, Dr. Asterbadi and Mrs. Asterbadi, owed the Debtor $831,809.00 in shareholder loans as of December 31, 2019. Disclosure Statement at p. 9.

15. During the pendency of this case, Fraser Forbes Company LLC has extensively marketed the Property. Disclosure Statement at pp. 18-19.

16. Initially, the Debtor obtained a contract to sell the Property to JP Land Holdings. After many extensions of the test and studies period, that contract did not result in a sale of the Property. Disclosure Statement at pp. 18-19.

17. Thereafter, the Debtor continued to market the property and received a contract from NVR, Inc. ("NVR"). On June 5, 2022, the Debtor filed a Second Motion to Sell Free and Clear of Liens, proposing to sell the Property to NVR. [Dkt. No. 321].

18. On June 22, 2022, the Debtor filed its Second Amended Plan of Reorganization [Dkt. No. 332] and Second Amended Disclosure Statement With Respect To Debtor's Second Amended Plan of Reorganization, whereby the Debtor sought to consummate the plan through a sale of the Property to NVR, or to an alternative bidder. [Dkt. No. 333].

19. Severn Savings Bank objected to the sale of the Property to NVR and on June 27, 2022, Severn Savings Bank filed a competing Proposed Disclosure Statement [Dkt. No. 336] and Plan of Reorganization [Dkt. No. 337].

20. On July 1, 2022, the Court entered the Bid Procedures Order conditionally approving NVR as the stalking horse purchaser. [Dkt. No. 343]. The Court also (a) approved bid procedures for the Auction of the Property (the "Bid Procedures"); (b) scheduled the Auction of the Property; and (c) required, if the Auction was held, that the Debtor shall notify all Qualified Bidders of the identity of the Prevailing Bidder. *See* Bid Procedures Order, ¶ 15. In accordance

with the approved Bid Procedures and the Bid Procedures Order, the Auction was scheduled for October 7, 2022 at 10:00 a.m. [Dkt. No. 377-2 and Dkt. No. 377-3].

21. On September 1, 2022, the parties appeared for a hearing and Sandy Spring Bank and the Debtor informed the Court that they had reached an agreement whereby Sandy Spring Bank would withdraw its competing plan.  [Dkt. Nos. 368 and 371].

22. NVR did not exit the tests and studies period under the terms of its stalking horse contract with the Debtor.  Prior to the auction, NVR submitted a Qualified Bid and contract that provided for a $7.5 million, all-cash, purchase price with closing to occur before December 31, 2022, provided the Debtor meets closing conditions which include the closure of the airport that presently operates on the Property.  Transcript of Auction attached as **Exhibit 1.**

23. Only one other bidder submitted a bid prior to the Auction, for $6.5 million, with $5.5 million cash paid at closing and a $1 million promissory note with payment due in several years. The second bidder elected not to increase its bid or attend the Auction.  *See* Exhibit 1.

24. NVR appeared at the auction and expected as the highest bidder to be named as the Prevailing Bidder under the Bid Procedures Order and Bid Procedures.  At the Auction, Dr. Asterbadi, announced that "the debtor is canceling the auction." *Id*. at 10:4-5. Dr. Asterbadi was represented by counsel at the Auction, Joseph Selba, Esq. *Id*. at 11:14-17. When asked what the basis was for purportedly cancelling the Auction, Dr. Asterbadi and his counsel refused to answer. *Id*. at 11:14-12:10.

25. In its motion seeking approval of the Bid Procedures [Dkt. No. 321] (the "Bid Procedures Motion"), the Debtor explained that "[s]elling the Property in accordance with the Bid Procedures is necessary to preserve and maximize its value, consistent with the Debtor's fiduciary duties to its economic stakeholders." Bid Procedures Motion, ¶ 2.

26. Under the Bid Procedures Order and the approved Bid Procedures, the Debtor was required to hold any required Auction "not less than one week prior to the expected date of the confirmation hearing." Bid Procedures Order, ¶ 15(b). The Auction occurred on October 7, 2022, and the hearing on the Debtor's pending chapter 11 plan was scheduled for October 19, 2022. The Bid Procedures Order further provides that "[i]f the Auction is held, as soon as reasonably practicable after the Auction, the Debtor shall notify all Qualified Bidders of the identity of the Prevailing Bidder." Bid Procedures Order, ¶ 15(c). The Debtor did not follow the steps in the Bid Procedure Order.

27. On October 14, 2022, NVR filed an Emergency Motion to (I) Enforce the Court's Order (A) Conditionally Approving the Sale of the Debtor's Property Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Conditionally Approving the Contract, (C) Approving the Bid Procedures, (D) Scheduling Bid Deadline, Auction and Sale Hearing, (E) Approving Form and Manner of Notice Thereof, and (F) Granting Certain Related Relief (DE 343); and (II) Declare NVR, Inc. as Prevailing Bidder [Dkt. No. 383] ("NVR's Motion"), seeking to have NVR declared the Prevailing Bidder at the auction of the Property.

28. On October 19, 2022, the Court held a hearing on the NVR's Motion. During the hearing, Dr. Asterbadi testified, and Debtor's counsel introduced a Terms for Stipulation re Process for Sale and Plan Confirmation ("Stipulation"). Dr. Asterbadi's testimony and the Stipulation make it clear that Dr. Asterbadi attempted to cancel the auction because he wants to continue to market the Property to obtain a higher price so that he, as equity owner, can receive funds from the sale even in violation of the Absolute Priority Rule. **Exhibit 2**.

29. At the conclusion of the hearing, the Court granted NVR's Motion and named NVR as the Prevailing Bidder of the auction.

**Legal Standard**

30. Section 1104 of the Bankruptcy Code provides that "[a]t any time after the commencement of the case but before confirmation of plan, on request of a party in interest or the United States Trustee, after notice and a hearing, the court shall order the appointment of a trustee–

> (1) for cause, including fraud, dishonesty, incompetence or gross mismanagement, either before or after the commencement of the case . . . or
>
> (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate . . . ."

31. A determination of cause to appoint a Chapter 11 Trustee is within the Court's discretion. *Committee of Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239, 242 (4th Cir. 1987). The concepts of fraud, dishonesty, incompetence and gross mismanagement encompass a wide range of conduct, and courts must be given the discretion necessary to determine if the debtor's conduct rises to a level sufficient to warrant the appointment of a trustee. *Id*.

32. Factors on which the decision whether to appoint a trustee have turned include:

   a. Materiality of the misconduct;
   b. Evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors or customers;
   c. The existence of pre-petition voidable preferences or fraudulent transfers;
   d. Unwillingness or inability of management to pursue estate causes of action;
   e. Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor;
   f. Self-dealing by management or waste or squandering of corporate assets.

*In re Intercat, Inc.*, 247 F.R. 911, 921 (Bankr. S.D. Ga. 2000) (citing *Committee of Dalkon Shield Claimants v. A.H. Robins Company, Inc.*, 828 F.2d 239, 242 (4th Cir.1987)).

33. Courts have found that a trustee should be appointed when the debtor in possession cannot perform its fiduciary duties. *See In re Russell*, 60 B.R. 42, 45 (Bankr. W.D. Ark. 1985); *In re Ford*, 36 B.R. 501, 504 (Bankr. W.D. Ky. 1983). In this case, through their actions and omissions, the Debtors have demonstrated that they are unable (and unwilling) to perform their obligations as independent fiduciaries. *See Kremen v. Hartford Mut. Ins. Co. (In re J.T.R. Corp.)*, 958, F.2d 602, 605 (4th Cir. 1992). As will be discussed below, the record is replete with facts that support findings of gross mismanagement, incompetence, and/or dishonesty.

34. Cause exists to appoint a Chapter 11 Trustee in this case because Dr. Asterbadi has conflicts of interest that are and will continue to interfere with his ability to fulfill his fiduciary duties to the Debtor, and the Debtor's fiduciary duties to the Estate.

35. It is axiomatic that a debtor-in-possession owes fiduciary duties to the bankruptcy estate. "The fiduciary duties include a duty of care to protect the assets, a duty of loyalty and a duty of impartiality." *In re Bowman,* 181 B.R. 836, 843 (Bankr. D. Md. 1995).

36. To fulfill its duty of loyalty, a debtor-in-possession must avoid self-dealing conflicts of interest and the appearance of impropriety. *In re Eurospark Indus., Inc.*, 424 B.R. 621, 627 (Bank. E.D. New York 2010); *In re Coram Healthcare Corp.*, 271 B.R. 228, (Bankr. D. Del. 2001); *In re San Juan Hotel Corp.*, 847 F.2d. 931 (1st Cir. 1988). These obligations include a duty of care to protect the assets of the estate and to manage wisely the estate's legal claims. *In re Bowman,* 181 B.R. at 843; *In re Eurospark Indus., Inc.*, 424 B.R. at 627.

37. "A debtor in possession does not act in its own interest but in the best interest of the creditors of the estate." *In re Bowman,* 181 B.R. at 843. The job of the debtor in possession is to make sure the creditors are paid. *Id.* As representative of the estate, the debtor occupies a

trust relationship subject to fiduciary obligations that include a prohibition against self-dealing. *In re Van Brunt*, 46 B.R. 29 (Bankr. W.D. Wisc.1984). Because a debtor-in-possession stands in a fiduciary relationship with its creditors, its fiduciary obligation includes refraining from acting in a manner that could damage the estate or hinder a successful reorganization of the business. *In re Thurmond*, 41 B.R. 464 (Bankr.D.Or.1983).

38. Courts have considered the existence of a conflict of interest to constitute both "cause" under § 1104(a)(1) and "in the interests of creditors" under § 1104(a)(2) for purposes of appointing a Chapter 11 trustee. *In re SunCruz Casinos*, 298 B.R. 821 830 (Bankr. S.D. Fla. 2003) (one of the factors for determining whether "cause" under § 1104(a)(1) exists is "[c]onflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor"); *In re Taub*, 427 B.R. at 227 (noting that under § 1104(a)(2) "[a] trustee should also be appointed to replace a debtor-in-possession who 'suffer[s] from material conflicts of interest'" . . . "[a] conflict of interest can arise where a debtor has multiple roles that give rise to conflicting duties and obligations") (citation omitted); *In re Modanlo*, 342 B.R. 238, 242 (D. Md. 2006) (affirming the bankruptcy court's holding and reasoning for appointment of a trustee, including "the debtor's wearing of multiple hats and holding of multiple and perhaps conflicting duties to the creditors or shareholders of different companies as well as to the creditors of this estate").

39. It is clear that Dr. Asterbadi's interests are not aligned with the interests of the bankruptcy estate.

40. Dr. Asterbadi attempted to cancel the auction because he wants to continue to market the Property to obtain a higher price. The Stipulation makes it clear that Dr. Asterbadi

9

wants to obtain a higher price for the Property so that he, as an equity owner, can benefit from the sale.

41. The continued marketing of the Property is not the in best interest of the estate or creditors because given that current market conditions make it unlikely that the Debtor will obtain a higher price for the Property.

42. Continued delay in selling the property is increasing administrative expenses to the detriment of the unsecured creditors. During the two and a half years this case has been pending, the Debtor has been unable to make payment of accruing real estate taxes, interest payments on the Severn Saving Bank secured claims, and/or professional fees incurred by the Debtor and that have been approved for payment through September of 2021 in amounts exceeding $2,250,000.00. Real estate taxes and post-petition accrued interest on Severn Savings Bank's secured claims are estimated to exceed $500,000.00. The estimated total unpaid professional fees now exceed $3,000,000.00. The result is that after two and a half years in Chapter 11, general unsecured creditors of this estate are at least $3.5 million dollars further away receiving payment on their claims.

43. Dr. Asterbadi is seeking to obtain personal benefits from the sale of the Property to the detriment of the unsecured creditors, all while owing the Debtor $831,809.00. A chapter 11 trustee should be appointed to pursue collection of these loans from Dr. and Mrs. Asterbadi.

44. Cause also exists to appoint a chapter 11 trustee because there is gross mismanagement of the Debtor's affairs.

45. Dr. Asterbadi has mismanaged the affairs of the Debtor by his continued attempts to market the Property when extensive marketing of the Property has only resulted increased

administrative expenses and has significantly diminished the proposed distribution to the unsecured creditors.

46. Dr. Asterbadi has mismanaged the affairs of the Debtor by attempting to cancel the auction of the Property as provided by the order approving the bid procedures resulting in multiple legal filings and a full day hearing at considerable cost to all parties.

47. In addition, the Debtor is not fulfilling its duties as required by the Bankruptcy Code. The Debtor has failed to file Monthly Operating Reports as required by 11 U.S.C. §§ 1107(a) and 11 U.S.C. § 1106(a)(1). The Debtor has not filed Monthly Operating Reports for the months of August and September 2022. A failure to file Monthly Operating Reports constitutes grounds to have a case dismissed or converted under 11 U.S.C. § 1112 and also serves as a basis to appoint a chapter 11 trustee. *See In re Pittman*, 58 B.R. 502 (Bankr. S.D. Tex. 1986).

48. Finally, as it is unlikely that Dr. Asterbadi will cooperate in consummating a sale of the Property to NVR or to confirming a plan which includes a sale to NVR, therefore, appointment of a chapter 11 trustee would be in the interest of creditors, any equity security holders, and the estate so that the chapter 11 trustee can consummate the sale of the Property to NVR and confirm a chapter 11 plan.

WHEREFORE, in consideration of the foregoing, the United States Trustee respectfully requests that the Court enter an Order appointing a Chapter 11 Trustee and for such other and further relief as the nature of his cause may require.

Dated: October 27, 2022                **JOHN P. FITZGERALD, III**
                                       Acting United States Trustee, Region 4

                                       By Counsel

                                       */s/ L. Jeanette Rice*
                                       L. Jeanette Rice, Bar No. 12933

Assistant U.S. Trustee<br>
6305 Ivy Lane, Suite 600<br>
Greenbelt, MD 20770<br>
(301) 344-6220<br>
Fax: (301) 344-8431<br>
Email: Jeanette.Rice@usdoj.gov

### **CERTIFICATE OF SERVICE**

I hereby certify that on <u>October 27, 2022,</u> I caused a copy of the foregoing pleading to be served by electronic means through the Court's CM/ECF system to all parties receiving notices in this case as follows:

- Richard L. Costella    rcostella@tydings.com, jmurphy@tydings.com
- Bradford F. Englander    benglander@wtplaw.com, twhitt@wtplaw.com
- Jennifer Kneeland    jkneeland@watttieder.com
- Philip Tucker Evans    philip.evans@hklaw.com, kimi.odonnell@hklaw.com;hapi@hklaw.com
- Nancy Greene    ndg@ndglaw.com
- Patrick J. Kearney    pkearney@sgrwlaw.com, jnam@sgrwlaw.com
- Nicole C. Kenworthy    bdept@mrrlaw.net
- Michael J. Klima    bankruptcy@peroutkalaw.com
- Michael J. Lichtenstein    mjl@shulmanrogers.com, tlockwood@shulmanrogers.com
- Jeffery Thomas Martin    jtm@henrylaw.com, mbp@henrylaw.com
- M. Evan Meyers    bdept@mrrlaw.net
- Kevin M. O'Donnell    kmo@henrylaw.com, mbp@henrylaw.com;jtm@henrylaw.com
- Elizabeth Anne Scully    escully@bakerlaw.com
- Joseph Michael Selba    JSelba@tydingslaw.com, jselba@tydings.com
- Jeffrey L. Tarkenton    Jeffrey.tarkenton@wbd-us.com, beverly.saint@wbd-us.com; cathy.hinger@wbd-us.com;mnemith@wbd-us.com;rahul.tilva@wbd-us.com
- Jacob Christian Zweig    jzweig@evanspetree.com, crecord@evanspetree.com

<u>/s/L. Jeanette Rice</u><br>
L. Jeanette Rice