**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Zachair, Ltd., | ) | Case No.:  20-10691-TJC |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

**SECOND AND FINAL APPLICATION OF WHITEFORD, TAYLOR & PRESTON, LLP**
**FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF**
**EXPENSES AS COUNSEL FOR THE DEBTOR FOR THE PERIOD**
**FROM OCTOBER 1, 2021 THROUGH OCTOBER 31, 2022**

Whiteford, Taylor & Preston, LLP ("WTP"), counsel for Zachair, Ltd. (the "Debtor"), files this *Second and Final Application of Whiteford Taylor & Preston LLP for Allowance of Compensation and Reimbursement of Expenses as Counsel for the Debtor for the Period from October 1, 2021 through October 31, 2022* (the "Application") pursuant to sections 326, 327, 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure, and Local Rule 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland.  In this Application, WTP seeks (i) final allowance of legal fees in the amount of $676,650.00 and reimbursable expenses in the amount of  $12,482.99 incurred during the period from October 1, 2021, through October 31, 2022 (the "Application Period"), and (ii) final allowance of legal fees in the amount of $1,671,090.50 and reimbursable expenses in the amount of $31,961.77 for the period from January 17, 2020 through September 30, 2021 previously approved on an interim basis. Notwithstanding the foregoing, WTP has agreed to cap payment of its legal fees at $2,200,000.00 provided that it receives payment of its allowed legal fees and reimbursable expenses on or before December 28, 2022.

In support of the Application, WTP respectfully states as follows:

**Jurisdiction**

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157.

**Background**

2.      On January 17, 2020 (the "Petition Date"), the Debtor filed with the Bankruptcy Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing this chapter 11 case.

3.      Dr. Nabil Asterbadi ("Dr. Asterbadi") was designated to perform the duties imposed on the Debtor by the Bankruptcy Code.

4.      On November 10, 2022, the Court entered an order appointing Lawrence A. Katz (the "Chapter 11 Trustee") as the chapter 11 trustee in this chapter 11 case.  *See* Dkt. No. 420.

**Employment of Whiteford, Taylor & Preston, LLP**

5.      On February 10, 2020, the Debtor filed its *Application for Authority to Employ Whiteford Taylor & Preston LLP as Counsel for the Debtor* (the "WTP Retention Application") seeking to employ WTP as counsel for the Debtor effective as of January 17, 2020.  *See* Dkt. No. 20.  The services within the scope of the WTP's engagement included:

    a.  providing the Debtor legal advice with respect to its powers and duties as debtor in possession and in the operation of its business and management of its property;

    b.  representing the Debtor in defense of any proceedings instituted to reclaim property or to obtain relief from the automatic stay under § 362(a) of the Bankruptcy Code;

    c.  representing the Debtor in any proceedings instituted with respect to the Debtor's need for use of cash collateral and/or debtor in possession financing;

2

d.  preparing any necessary applications, answers, orders, reports and other legal papers, and appearing on the Debtor's behalf in proceedings instituted by or against the Debtor;

e.  assisting the Debtor in the preparation of its schedules, statement of financial affairs, and any amendments thereto, which the Debtor may be required to file in this case;

f.  assisting the Debtor in the preparation of a plan of reorganization and disclosure statement;

g.  assisting the Debtor with all legal matters, including, among others, all securities, corporate, real estate, employee relations, general litigation, and bankruptcy legal work; and

h.  performing all of the legal services for the Debtor which may be necessary or desirable herein.

6.      On June 10, 2020, the Court entered its *Order Authorizing Employment of Whiteford Taylor & Preston LLP as Counsel for the Debtor* (the "WTP Retention Order") granting the WTP Retention Application and authorizing the employment of WTP as counsel for the Debtor.  *See* Dkt. No. 78.

### Prior WTP Fee Applications

7.      This Application is WTP's second and final application for filed in this case.

8.      On November 5, 2021, WTP filed its *First Interim Application of Whiteford Taylor & Preston LLP for Allowance of Compensation and Reimbursement of Expenses as Counsel for the Debtor for the Period from January 17, 2020, through September 30, 2021* [Dkt. No. 268] (the "WTP First Application") seeking interim allowance of fees in the amount of $1,671,090.50 and expenses in the amount of $31,961.77.  The WTP First Application included a reduction of WTP's requested fees in the amount of $85,000.00 in the exercise of its billing discretion.

9.      On December 16, 2021, the Court entered an order granting the WTP First Application (the "WTP First Application Order") [Dkt. No. 283].

### Significant Events During the Chapter 11 Case

#### A.  Post-Petition Debtor-in-Possession Financing

10.     On September 8, 2020, the Debtor filed a motion (the "DIP Motion") seeking to obtain senior secured post-petition financing (the "DIP Financing") pursuant to the terms and conditions of that certain loan agreement by and between the Debtor, as borrower, and Legalist DIP SPV II, LP ("Legalist"), as lender [Dkt. No. 107].  On October 21, 2020, PD Hyde Field, LLC ("PD Hyde") filed an objection to the DIP Motion [Dkt. No. 128].  On October 23, 2020, the Debtor's prepetition lender, Sandy Spring Bank ("Sandy Spring"), filed its opposition to the DIP Motion [Dkt. No. 134].

11.     The objections filed by PD Hyde and Sandy Spring were highly contested.  The parties engaged in extensive discovery, including both document discovery and numerous depositions.  Ultimately, Sandy Spring made an offer to the Debtor to resolve the DIP Motion by providing the DIP Financing itself.  On November 4, 2020, the Debtor filed its *Line re DIP Loan Motion*, in which the Debtor disclosed that Sandy Spring would provide the DIP Financing to the Debtor under the terms and conditions agreed upon by the parties [Dkt. No. 165].  On November 9, 2020, the Court entered the *Final Order Authorizing Debtor-in-Possession Financing and Use of Cash Collateral* (the "Final DIP Order"), authorizing the Debtor to obtain debtor-in-possession financing in the amount of up to $360,000 provided by Sandy Spring [Dkt. No. 169].

#### B.  Retention and Employment of Professionals

12.     In addition to the Debtor's retention of WTP, the Debtor has retained the services of several other attorneys, accountants, appraisers, and other professionals necessary to represent its

interests in this bankruptcy proceeding, including the following professionals:

a. <u>Streamline Advisors and SC&H Group</u> – On February 11, 2020, the Debtor filed its *Application for Authority to Employ Streamline Advisors, LLC as Financial Advisor for the Debtor* (the "Streamline Application") seeking to employ Streamline Advisors, LLC ("Streamline") as its financial advisor [Dkt. No. 21].   On March 3, 2020, the Bankruptcy Court entered an order approving the employment of Streamline as financial advisor to the Debtor [Dkt. No. 43]. Subsequent to Streamline's engagement, its managing member, Robert L. Patrick, resigned from Streamline and joined SC&H Group Inc. ("SC&H").   On November 4, 2020, the Debtor filed its *Application for Authority to Substitute and Employ SC&H Group, Inc. as Financial Advisor for the Debtor In Place of Streamline Advisors LLC*  (the "SC&H Application") seeking to substitute and employ SC&H as its financial advisor, effective as of September 1, 2020 [Dkt. No. 164].   The terms and conditions of SC&H's engagement are the same as the terms and conditions on which Streamline was engaged.   On November 24, 2020, the Bankruptcy Court entered an order approving the employment of SC&H as financial advisor to the Debtor [Dkt. No. 173].

b. <u>William C. Harvey & Associates, Inc.</u> – On February 12, 2020, the Debtor filed its *Application for Authority to Employ William C. Harvey & Associates, Inc. as Appraiser for the Debtor* (the "WCH&A Application") seeking to employ William C. Harvey & Associates, Inc. ("WCH&A") as its appraiser [Dkt. No. 26].   On March 5, 2020, the Bankruptcy Court entered an order approving the employment of WCH&A as appraiser to the Debtor [Dkt. No. 78].

c. <u>Fraser Forbes Company LLC</u> – On May 26, 2020, the Debtor filed its *Application for Authority to Employ Fraser Forbes Company LLC as Real Estate Agent and Broker for the Debtor* (the "Fraser Forbes Application") seeking to employ Fraser Forbes Company LLC ("Fraser Forbes") as its real estate agent and broker [Dkt. No. 67].   On June 16, 2020, the Bankruptcy Court

entered an order approving the employment of Fraser Forbes as real estate agent and broker to the Debtor [Dkt. No. 81].

      d.  <u>Womble Bond Dickinson (US) LLP and Holland & Knight LLP</u> – On September 17, 2020, the Debtor filed its *Motion for Order Under 11 U.S.C. § 327(e) Authorizing Employment and Retention of Womble Bond Dickinson (US) LLP as Special Counsel for Debtor-in-Possession* (the "WBD Application") seeking to employ Womble Bond Dickinson (US) LLP ("WBD") as its conflicts counsel and special counsel in connection with a lawsuit against PD Hyde [Dkt. No. 110]. On October 8, 2020, the Bankruptcy Court entered an order approving the employment of WBD as conflicts and special counsel to the Debtor [Dkt. No. 120]. On February 11, 2021, the Debtor filed its *Application for Authority to Employ Holland & Knight LLP, as Special Counsel for the Debtor* (the "H&K Application") seeking to substitute and employ Holland & Knight LLP ("H&K"), in place of WBD, as its special counsel in connection with a lawsuit against PD Hyde Field [Dkt. No. 197]. The Debtor filed the H&K Application to continue to retain and employ Louis J. Rouleau, Esq., the principal litigator for the Debtor in the litigation with PD Hyde Field, who resigned from WBD and joined H&K as of January 13, 2021. On March 15, 2021, the Bankruptcy Court entered an order approving the employment of H&K as special counsel to the Debtor [Dkt. No. 208].

      e.  <u>Carl E. Mosley, CPA and Mendelson & Mendelson, CPAs, P.C.</u> – On January 8, 2021, the Debtor filed its *Application for Authority to Employ Carl E. Mosley, CPA and CC Services Corporation as Tax Accountant for the Debtor* (the "Mosley Application") seeking to employ Carl E. Mosley and CC Services Corporation ("Mosley") as its tax accountant [Dkt. No. 190]. On January 22, 2021, the Debtor withdrew the Mosley Application due to objections to Mosley's retention from certain parties in interest [Dkt. No. 192]. Accordingly, on January 22, 2021, the Debtor filed its *Application for Authority to Employ Mendelson & Mendelson, CPAs, P.C.*

*as Tax Accountant for the Debtor* (the "Mendelson Application") seeking to employ Mendelson & Mendelson, CPAs, P.C. ("Mendelson") as its tax accountant [Dkt. No. 193].  On February 11, 2021, the Bankruptcy Court entered an order approving the employment of Mendelson as tax accountant to the Debtor [Dkt. No. 196].

       f.   <u>O'Malley, Miles, Nylen & Gilmore, P.A.</u> – On January 15, 2021, the Debtor filed its *Application for Authority to Employ O'Malley, Miles, Nylen & Gilmore, P.A. as Land Use and Zoning Counsel for the Debtor* (the "OMNG Application") seeking to employ O'Malley, Miles, Nylen & Gilmore, P.A. ("OMNG") as its land use and zoning counsel [Dkt. No. 191].  On February 4, 2021, the Bankruptcy Court entered an order approving the employment of OMNG as land use and zoning counsel to the Debtor [Dkt. No. 194].

       13.    The Debtor's professionals have served critical roles in various stages of this chapter 11 case and have been essential to the progress made in its bankruptcy case.  WTP has expended significant efforts and time in ensuring the proper retention and compensation of these professionals in accordance with the applicable sections of the Bankruptcy Code, Bankruptcy Rules and Local Rules.

**C.**   **Compensation of Professionals**

       14.    In addition to the WTP First Application, the Debtor has assisted with and filed a number of applications for compensation for professional fees and reimbursement of expenses for various professionals retained in this chapter 11 case:

   (a) <u>William C. Harvey & Associates, Inc.</u>: On February 25, 2021, WCH&A filed its *First Interim Application of William C. Harvey & Associates, Inc., Appraiser for the Debtor, for Allowance of Compensation for the Period from January 17, 2020, through November 3, 2020* (the "First WCH&A Application for Compensation") seeking the interim allowance of

compensation in the amount of $45,923.25 for the period of January 17, 2020 through November 3, 2020 [Dkt. No. 201]. On March 24, 2021, the Bankruptcy Court entered an order granting the First WCH&A Application for Compensation [Dkt. No. 210].

(b) Streamline Advisors, LLC: On November 5, 2021, Streamline Advisors filed its *First Interim Application of Streamline Advisors, LLC as Financial Advisor for the Debtor for Allowance of Compensation for the Period from January 17, 2020, through August 31, 2020* (the "First Streamline Application for Compensation") seeking the interim allowance of compensation in the amount of $61,215.00 for the period of January 17, 2020 through August 31, 2020 [Dkt. No. 269].  On December 16, 2021, the Bankruptcy Court entered an order granting the First Streamline Application for Compensation [Dkt. No. 284].

(c) SC&H Group, Inc.: On November 5, 2021, SC&H Group filed its *First Interim Application of SC&H Group, Inc. as Financial Advisor for the Debtor for Allowance of Compensation for the Period from September 1, 2020, through September 30, 2021* (the "First SC&H Application for Compensation") seeking the interim allowance of compensation in the amount of $44,170.00 for the period of September 1, 2020 through September 30, 2021 [Dkt. No. 270]. On December 16, 2021, the Bankruptcy Court entered an order granting the First SC&H Application for Compensation [Dkt. No. 285].

(d) Mendelson & Mendelson, CPAs, P.C.: On November 5, 2021, Mendelson filed its *First Interim Application of Mendelson & Mendelson, CPAs, P.C. as Tax Accountant for the Debtor for Allowance of Compensation and Reimbursement of Expenses for the Period from January 22, 2021, through September 30, 2021* (the "First Mendelson Application for Compensation") seeking the interim allowance of compensation in the amount of $9,866.25 and expenses in the amount of $1.61 incurred for the period of January 22, 2021 through September

30, 2021 [Dkt. No. 271]. On December 16, 2021, the Bankruptcy Court entered an order granting the First Mendelson Application for Compensation [Dkt. No. 286].

(e) <u>O'Malley, Miles, Nylen & Gilmore, P.A.</u>: On November 5, 2021, OMNG filed its *First Interim Application of O'Malley, Miles, Nylen & Gilmore, P.A. as Land Use and Zoning Counsel for the Debtor for Allowance of Compensation for the Period from January 15, 2021, through September 30, 2021* (the "First OMNG Application for Compensation") seeking the interim allowance of compensation in the amount of $4,402.50 for the period of January 15, 2021 through September 30, 2021 [Dkt. No. 272]. On December 16, 2021, the Bankruptcy Court entered an order granting the First OMNG Application for Compensation [Dkt. No. 287].

On July 25, 2022, OMNG filed its *Second Interim Application of O'Malley, Miles, Nylen & Gilmore, P.A. as Land Use and Zoning Counsel for the Debtor for Allowance of Compensation for the Period from October 1, 2021, through June 9, 2022* (the "Second OMNG Application for Compensation") seeking the interim allowance of compensation in the amount of $9,198.00 for the period of October 1, 2021 through June 9, 2022 [Dkt. No. 348]. On August 23, 2022, the Bankruptcy Court entered an order granting the Second OMNG Application for Compensation [Dkt. No. 362].

(f) <u>Womble Bond Dickinson (US) LLP</u>: On November 5, 2021, WBD filed its *First Interim Application of Womble Bond Dickinson (US) LLP as Special Counsel for the Debtor for Allowance of Compensation for the Period from November 5, 2020, through September 30, 2021* (the "First WBD Application for Compensation") seeking the interim allowance of compensation in the amount of $71,593.00 for the period of November 5, 2020 through September 30, 2021 [Dkt. No. 273]. On December 16, 2021, the Bankruptcy Court entered an order granting the First WBD Application for Compensation [Dkt. No. 288].

(g) <u>Holland & Knight LLP</u>: On November 5, 2021, H&K filed its *First Interim Application of Holland & Knight LLP as Special Counsel for the Debtor for Allowance of Compensation and Reimbursement of Expenses for the Period from January 13, 2021, through September 30, 2021* (the "First H&K Application for Compensation") seeking the interim allowance of compensation in the amount of $348,722.50 and expenses in the amount of $5,312.58 for the period of January 13, 2021 through September 30, 2021 [Dkt. No. 274]. On December 16, 2021, the Bankruptcy Court entered an order granting the First H&K Application for Compensation [Dkt. No. 289].

15. WTP presently is assisting these professionals with the preparation and filing of any necessary final applications for compensation.

**D.  Motion to Employ Development Consultants**

16. On December 8, 2020, the Debtor filed its *Motion for Order Authorizing Debtor to Employ and Compensate Consultants and Experts for Specific Services Rendered in Connection With the Debtor's Real Property* (the "Motion to Employ Development Consultants"), seeking the entry of an order authorizing the Debtor to employ and compensate consultants, engineers, and other experts for specific services rendered in connection with the marketing and sale of the Property [Dkt. No. 175]. On December 16, 2020, the Debtor filed a line in which the Debtor, in consultation with Fraser Forbes, identified professionals to be employed in the ordinary course of business (the "Development Professionals"). On January 4, 2021, the Court entered an order granting the Motion to Employ Development Consultants [Dkt. No. 182].

**E.    Settlement of PD Hyde Field Litigation**

17.    Prior to the Petition Date, on November 15, 2018, PD Hyde filed a complaint against the Debtor and Dr. Asterbadi in the Circuit Court for Prince George's County, Maryland, styled, *PD Hyde Field LLC v. Zachair, Ltd., et al.,* Civil Action No. 18-42893 (the "PD Hyde Litigation"), in connection with certain disputes arising from a contract to purchase the Property. Thereafter, on March 14, 2019, PD Hyde Field recorded a Memorandum of Lis Pendens (the "Lis Pendens") in the Land Records of Prince George's County, Maryland. As a result of the Lis Pendens, the Debtor was unable to sell or refinance the Property outside of bankruptcy. PD Hyde filed proof of claim no. 18-1 (the "PD Hyde Proof of Claim") in the Bankruptcy Case asserting a claim in the aggregate amount of $5,617,818.00, and that $1,200,000.00 of such claim is secured.

18.    WTP and H&K, on behalf of the Debtor, engaged in extensive and lengthy negotiations over a period of approximately 18 months to resolve the PD Hyde Litigation. Ultimately, the parties were successful in reaching an acceptable compromise of the dispute. On September 9, 2021, the Debtor filed its *Motion for Approval of Settlement and Plan Support Agreement Under Bankruptcy Rule 9019* [Dkt. No. 249] (the "Settlement Motion"), seeking to settle and resolve the PD Hyde Litigation. WTP prepared documents to memorialize the settlement between the parties, including the Settlement Motion and settlement agreement. On October 15 2021, the Court entered an order granting the Settlement Motion. *See* Dkt. No. 264.

**F.    Marketing and Sale of the Property**

19.    Since the commencement of the case, the Debtor has focused intensely on selling its primary asset, the Property, to satisfy its obligations to creditors and parties in interest. The Debtor has retained several experienced professionals in connection with marketing and sale of the Property

since the Petition Date to assist it with these sale efforts, including WTP, WCH&A, Fraser Forbes, OMNG, and the Development Professionals. *See* Dkt. Nos. 47, 81, 178, 182 and 194.

20.     On June 11, 2021, the Debtor filed a motion [Dkt. No. 215] (the "First Sale Motion") seeking to sell the Property to JP Land Holdings LLC ("JP Land Holdings") pursuant to a sales contract (the "First Sales Contract"), subject only to the possibility of an overbid and the other conditions described therein. On July 27, 2021, the Court entered an order granting the First Sale Motion (the "First Sale Order") [Dkt. No. 235].  After consideration and assessment of the First Sales Contract and the Property, JP Land Holdings ultimately decided to not proceed with the purchase of the Property.

21.     Following the termination of the First Sales Contract, Fraser Forbes continued to market the Property. After receiving indications of interest from several potential buyers, Fraser Forbes began to engage in advanced discussions regarding a potential sale transaction for the Property with such parties. After reviewing and carefully considering the letters of intent or expressions of interest, the Debtor determined, in consultation with its advisors, that the best and highest offer was from NVR, Inc. ("NVR"). The Debtor and NVR thereafter prepared, negotiated, and executed the NVR Sales Contract.

22.     On June 5, 2022, the Debtor filed a motion (the "Sale and Bid Procedures Motion") [Dkt. No. 321], seeking the Court's approval of: (i) the sale of the Property to NVR pursuant to NVR Sales Contract; (ii) the sale of the Property free and clear of liens, claims, interests, and encumbrances to the Prevailing Bidder; (iii) approval of the bid procedures and the sale notice; and (iv) other related relief.  On July 1, 2022, the Court entered an order approving the Sale and Bid Procedures Motion, subject to terms and conditions set forth therein. *See* Dkt. No. 343 (the "Sale and Bid Procedures Order").

23.     The NVR Sales Contract was automatically terminated when NVR did not deliver to the Debtor a notice of intent to proceed at the conclusion of NVR's tests and studies period pursuant to the NVR Sales Contract.  While NVR did not exit the tests and studies phase of the NVR Sales Contract, NVR subsequently submitted a bid to the Debtor that provided for a $7,500,000.00, all-cash, purchase price on an as-is, where-is basis with closing to occur before December 31, 2022, subject to certain conditions including the closure of the airport that presently operates on the Property.  *See* Dkt. No. 383-1.

24.     On October 7, 2022, the Debtor held an auction of the Property.  No other bids were submitted in excess of the $7,500,000.00 as-is, where-is bid submitted by NVR.

25.     On October 14, 2022, NVR filed a motion (the "NVR Emergency Motion") [Dkt. No. 383], seeking to enforce the terms of the Sale and Bid Procedures Order and declare that NVR as the prevailing bidder for the purchase of the Property.  On November 1, 2022, the Court entered an order granting the NVR Emergency Motion. *See* Dkt. No. 404.

**G.   Plan and Disclosure Statement**

26.     After exploring several exit strategies, the Debtor, in consultation with its professionals, determined that pursuing a chapter 11 plan of reorganization would maximize creditor recoveries.  On June 28, 2021, the Debtor filed its *Plan of Reorganization* (as may be supplemented, modified or amended, the "Plan") and *Disclosure Statement for Debtor's Plan of Reorganization* (as may be supplemented, modified or amended, the "Disclosure Statement").  *See* Dkt. Nos. 224, 225, 245, 246, 247, 250, 257 and 258.

27.     In conjunction with the filing of the Plan and Disclosure Statement, the Debtor also filed a motion for approval of the Disclosure Statement (the "Disclosure Statement Motion") [Dkt.

No. 227]. On October 15, 2021, the Court entered an order approving the Disclosure Statement Motion. *See* Dkt. No. 263.

28.     On March 9, 2022, the Court held a status conference in connection with the confirmation of the Plan. *See* Dkt. No. 315. Following the status conference, on June 22, 2022, the Debtor filed its *Second Amended Plan of Reorganization* (as subsequently modified or amended, the "Second Amended Plan") and *Second Amended Disclosure Statement With Respect to Debtor's Second Amended Plan of Reorganization* (as subsequently modified or amended, the "Second Amended Disclosure Statement"). *See* Dkt. Nos. 332, 333, 365 and 366. On September 9, 2022, the Court entered an order approving the Second Amended Disclosure Statement. *See* Dkt. No. 375. Following a confirmation hearing (the "Confirmation Hearing"), the Court entered an order confirming the Second Amended Plan on November 15, 2022. *See* Dkt. No. 422.

**H.   Exit Financing**

29.     To facilitate its ability to accelerate consummation of the Plan and payments to creditors, the Debtor solicited interest from numerous potential lenders to provide Exit Financing. Ultimately, the Debtor selected Three Line Capital LLC ("Three Line") as its potential lender. On August 13, 2021, the Debtor and Three Line entered into a term sheet regarding Exit Financing. The term sheet was not binding, except with respect to the payment of due diligence fees and costs and a break-up fee to Three Line. On August 23, 2021, the Debtor filed its *Motion for an Order (A) Authorizing and Approving the Term Sheet and Payment of Fees with Regard to Exit Financing; (B) Granting Super-Priority Claim; and (C) Granting Related Relief* [Dkt. No. 241] (the "Exit Fee Motion"). On September 13, 2021, the Court entered its order granting the Exit Fee Motion. *See* Dkt. No. 251. On September 30, 2021, Three Line delivered a commitment letter for Exit Financing (the "Commitment Letter"). However, because the First Sales Contract with JP Land Holdings was

terminated, as discussed above, the Exit Financing did not close timely. The Debtor continued in discussions with Three Line for Exit Financing in connection with the contemplated sale to NVR pursuant to the NVR Sales Contract. Upon NVR's decision to terminate the NVR Sales Contract and instead submit its $7,500,000.00 as-is, where-is bid, the need for Exit Financing ceased.

### Summary of Application

30.     During the Application Period, WTP has tracked and allocated its fees to account for time spent on several matters. WTP's fees requested in this Application during the Application Period total $676,650.00. WTP also incurred $12,482.99 in reimbursable expenses during the Application Period. Itemized time records for services provided and itemized expenses incurred during the Application Period are attached hereto as **Exhibit A** and are incorporated herein by reference.

31.     A summary of the time spent by each WTP professional in connection with the above-described engagement is set forth below:

| Name | Title | Hours | 2021 Rate (2022 Rate) | Avg. Rate | Amount |
|---|---|---|---|---|---|
| Bradford F. Englander | Partner | 546.2 | $695 ($730) | $723.57 | $395,212.00 |
| Christopher A. Jones | Partner | 5.3 | $660 ($695) | $695.00 | $3,683.50 |
| David W. Gaffey | Partner | 257.6 | $490 ($525) | $513.87 | $132,373.50 |
| Kimberly J. Min | Partner | 2.9 | $615 ($645) | $645.00 | $1,870.50 |
| Stephen E. Luttrell | Partner | 50.9 | $470 ($505) | $497.37 | $25,316.00 |
| Kaitlin R. Zarro | Associate | 19.1 | $470 ($505) | $505.00 | $9,645.50 |
| Jae Won Ha | Associate | 269.9 | $385 ($410) | $402.18 | $108,549.00 |
|  | **Total:** | **1151.9** |  |  | **$676,650.00** |

32.     The blended rate for all WTP attorney professionals engaged in this matter during the Application Period is $587.42.

33.     A chart identifying each category of service provided by WTP during the Application Period is set forth below:

| Matter Number | Matter Description | Hours | Fee Amount |
|---|---|---|---|
| 100 | Case Administration | 42.3 | $26,645.50 |
| 102 | Secured Lender Issues | 18.3 | $13,303.00 |
| 104 | Operational Issues | 38.5 | $26,967.50 |
| 105 | Sales of Assets | 567.6 | $361,915.50 |
| 106 | Investigations, Avoidance Actions, and Affirmative Claims | 73.6 | $37,878.50 |
| 107 | Professionals; Retention and Fee Applications | 92.6 | $41,131.50 |
| 108 | Plan and Disclosure Statement | 319 | $168,808.50 |
|  | **Total:** | **1151.9** | **$676,650.00** |

## Services Provided During the Application Period

34.     During the Application Period, WTP performed significant services for the Debtor. WTP has categorized its time by project billing categories.   Those project billing during the Application Period are set forth below.   The professional services performed by WTP were necessary and appropriate to the administration of this complex case, and were in the best interests of the Debtor, and its estate and creditors.   Accordingly, WTP respectfully submits that the compensation and expense reimbursement sought herein is reasonable and appropriate under the facts and circumstances of this case and should be allowed.

### a.   Matter 100: Case Administration

**Hours: 42.3**
**Amount: $26,645.50**
**Description:** This matter category includes time spent on a variety of tasks that were necessary to ensure the efficient administration of this chapter 11 case and which do not fit within another more specific billing category.   Among other tasks, WTP professionals engaged in telephone calls, emails, and in-person meetings to formulate case strategies and discuss case tasks with their team members and other parties, including with Dr. Asterbadi and other professionals retained in this case.   The professional services falling within this category are

limited due to the specificity of the other billing categories. Wherever possible, WTP's services were recorded in a more detailed billing category.

### b.  Matter 102: Secured Lender Issues

**Hours: 18.3**
**Amount: $13,303.00**
**Description:**  This matter category includes time WTP attorneys spent resolving issues regarding and inquiries from raised by the Debtor's secured creditors in this chapter 11 bankruptcy case.  Specific tasks in this category during the Application Period include making draw requests to Sandy Spring under the Debtor's DIP Financing facility, resolving cash collateral issues with Sandy Spring, and communicating with Sandy Spring regarding other issues arising in this case.

### c.  Matter 104: Operational Issues

**Hours: 38.5**
**Amount: $26,967.50**
**Description:** This matter category includes time spent on tasks relating to the operation of the Debtor's business and other related matters that arose during the course of this case. Specifically, WTP professionals communicated with the Airport Manager, Stan Fetter, regarding operating expenses, tenants, leases, aviation contracts, fuel oil and all other issues relating to the general operations of the Airfield; analyzed MDE reports and correspondence on various issues relating to the Airfield such as environmental impact from the Surcharge Operations; prepared for and attended meetings with MDE; worked with governmental entities regarding zoning and permit issues; engaged with with Metro Earthworks regarding the Airfield and site stabilization; and assisted Dr. Asterbadi with administrative tasks necessary to the Debtor's operation of the Airfield.

### d. **Matter 105: Sales of Assets**

**Hours: 567.6**
**Amount: $361,915.50**
**Description:** This matter category includes time spent by WTP attorneys providing services relating to the Debtor's marketing and sale process. WTP professionals were engaged in every aspect of the marketing and sale process for the Property. Specifically, WTP professionals provided the following services related to the marketing and sale process: drafting, reviewing, negotiating and executing the NVR Sales Contract; reviewing reports prepared by the Debtor's other consultants and professionals; drafting, filing and obtaining the Court's approval of the Sale and Bid Procedures Motion; conducting due diligence regarding the sale of the Property and consulting with the Debtor's other professionals, including Fraser Forbes regarding the same; preparing and attending the auction of the Property; and responding to numerous inquiries of creditors and potential third party bidders throughout the marketing and sale process period in an effort to ensure that the sale process moved forward as fairly and transparently as possible.

### e. **Matter 106: Investigations, Avoidance Actions, and Affirmative Claims**

**Hours: 73.6**
**Amount: $37,878.50**
**Description:** This matter category includes time spent by WTP attorneys providing services relating to investigating potential avoidance actions of the Debtor; advising the Debtor regarding potential avoidance actions; and preparing and filing a notice of abandonment of avoidance actions.

### f.  Matter 107: Professionals; Retention and Fee Applications

**Hours: 92.6**
**Amount: $41,131.50**
**Description:** This matter category includes time spent on tasks necessary to retain, employ and compensate various professionals employed in this case in accordance with the applicable sections of the Bankruptcy Code, Bankruptcy Rules and Local Rules, including, but not limited to, filing the applications to retain and employ professionals and preparing interim and final applications for allowance of compensation and reimbursement of expenses. Specifically, WTP professionals spent significant time assisting the Debtor's other various advisers in drafting, filing, and obtaining the Court's approval of their fee applications.

### g.  Matter 108: Plan and Disclosure Statement

**Hours: 319.0**
**Amount: $168,808.50**
**Description:** This category includes time spent on tasks related to the negotiation, drafting, and filing of multiple versions of the Plan, Disclosure Statement and other related supplemental pleadings.  Specifically, WTP professionals negotiated, drafted, revised, and filed multiple versions of the Plan and the related plan supplement; coordinated with the Debtor and the Debtor's other advisors regarding amendments to the Plan and the preparation of various plan supplements; conducted research regarding various issues in connection with the Plan, including issues relating to the implementation and confirmation of the Plan; responded to and negotiated a resolution of the competing chapter 11 plan filed by Sandy Spring; prepared for and attended the confirmation hearing on the Debtor's Second Amended Plan; and communicated with the Debtor and its other advisors regarding the implementation of the Plan and the Debtor's emergence from chapter 11.

## Lodestar Analysis

35.     Under section 330(a)(1) of the Bankruptcy Code, the Court may award reasonable compensation to a professional person for all actual, necessary services rendered by such professional based on the nature, extent and value of the services rendered, the time spent on such services and the cost of comparable services in other cases.   The Court may also reward reimbursement for all actual, necessary expenses incurred.

36.     Courts frequently look to the "lodestar" formula in assessing a professional's fees. Under this approach, courts consider the number of hours of service reasonably devoted to a case multiplied by the professional's reasonable hourly rate.   The resulting sum may be adjusted to reflect the characteristics of the particular case and the reputation of the professional.   *Perdue v. Kenny A.*, 559 U.S. 542 (2010).

37.     Bankruptcy courts often consider the specific lodestar factors set forth in *Johnson v. Georgia Highway Express, Ltd.*, 488 F.2d 714 (5th Cir. 1974), as applied to bankruptcy cases in *In re First Colonial Corporation of America*, 544 F.2d 1291, 1298-99 (5th Cir.), *cert. denied*, 431 U.S. 904 (1977).  The United States Court of Appeals for the Fourth Circuit adopted the *Johnson* tests in *Barber v. Kimbrells, Ltd.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934 (1978).   In *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir. 1981), the Fourth Circuit held that the District Court should apply the lodestar approach, which encompasses the *Johnson* factors (a) and (e) as set forth below, and then adjust the fee with the guidance of the remaining *Johnson* factors.   The following are the *Johnson* factors:

> (a) the time and labor required;
> (b) the novelty and difficulty of the questions;
> (c) the skill required to properly perform the professional services;
> (d) the preclusion of other employment by the professional due to acceptance of the case;
> (e) the customary fee;

      (f)  whether the fee is fixed or contingent;
      (g)  time limitations imposed by the client or the circumstances;
      (h)  the amount involved and the results obtained;
      (i)  the experience, reputation, and ability of the professional;
      (j)  the "undesirability" of the case;
      (k)  the nature and length of the professional relationship with the client; and
      (l)  awards in similar cases.

*Johnson*, 488 F.2d at 717-719; *Barber*, 577 F.2d at 226 n.28; *Anderson*, 658 F.2d at 248 n.2.

      38.    WTP submits the following lodestar and *Johnson* factor analysis in support of its request for allowance of fees:

      **a.**    **The time and labor required**.  As the time records submitted with this Application as **Exhibit A** illustrate, WTP has worked tirelessly with the Debtor and its other professionals to represent the interests of the Debtor for nearly three years.  WTP professionals have dedicated substantial time to this case totaling approximately 4,100 hours since the Petition Date.  WTP believes that the time and labor expended is appropriate and reasonable for the matters upon which its professionals provided services and the results obtained.

      **b.**    **Novelty and difficulty of the questions involved and skill applied**.  This case has involved numerous and complex legal and factual issues, including issues regarding debtor-in-possession financing, the PD Hyde Litigation, the marketing and sale of the Property, approval of the Sale and Bid Procedures Motion, competing chapter 11 plans, and confirmation of the Second Amended Plan.

      **c.**    **The preclusion of other employment by the firm due to acceptance of this case**.  WTP has devoted considerable and valuable resources to its representation of the Debtor in this case.  Due to the requirements of this case, WTP necessarily was diverted from other matters in which it was, or might have been, involved in order to devote itself to the competent representation of the Debtor.

d.      **The customary fee for similar work**.  WTP submits that the fees sought herein are warranted, and are generally less than or equal to comparable fees in the Greenbelt, Maryland area for work as the Debtor's bankruptcy counsel.

e.      **Whether the fee is fixed or contingent**.  Pursuant to the Bankruptcy Code, all fees sought by WTP are subject to final approval of this Court. The fees are based on hourly rates and are not contingent on the outcome of any particular event.

f.      **Time limitations imposed by the client or circumstances**.  During the Application Period, the exigencies of the case often required that WTP provide services for the Debtor on an expedited basis.

g.      **The amounts involved and the results obtained**.  The fees requested by WTP are reasonable and necessary given the myriad issues facing the Debtor in this case and the successful results obtained.

h.      **Experience, reputation and ability of professionals**.  The principal WTP attorneys on this case have substantial experience in chapter 11 matters, and routinely provide similar legal services for debtors in other chapter 11 cases in this Court and elsewhere.

i.      **The "undesirability" of the case**.  While this case is not "undesirable," it has presented significant challenges for WTP and the Debtor's other professionals.  WTP has met these challenges and achieved considerable progress in resolving this bankruptcy case.

j.      **The nature and length of the firm's professional relationship with the client**.  The pre-petition Debtor retained WTP to represent it in connection with its eventual bankruptcy filing in June 2019.  WTP began representing the Debtor in this bankruptcy case upon the Petition Date.  WTP has substantial knowledge and experience with respect to the Debtor, its assets, and its operations.

       **k.**    **Awards in similar cases**.  WTP submits that its request for compensation is well within the usual and customary awards granted in similar cases.

### Expenses

39.    WTP incurred $12,482.99 in reimbursable expenses during the Application Period. An itemized description of WTP's reimbursable expenses is included in **Exhibit A** attached hereto. The following chart summarizes the total disbursements by category:

| Disbursement Category | Cost |
|---|---|
| Federal Express | $98.84 |
| Photocopies | $65.34 |
| Courier Expense | $122.23 |
| Color Photocopies | $178.50 |
| Postage | $2,491.70 |
| Lexis | $2,022.13 |
| Filing Fee | $188.00 |
| Transcripts/Depositions | $444.00 |
| Copies | $6,484.75 |
| Pacer Service | $387.50 |
| **Total Costs:** | **$12,482.99** |

### Agreed Cap on WTP Compensation

40.    The legal fees and expenses incurred by WTP during this case through October 31, 2022, total $2,347,740.50 in fees and $44,444.76 in reimbursable expenses (the "Total WTP Fees and Costs"),[1] consisting of the fees in the amount of $1,671,090.50 and expenses in the amount of $31,961.77 allowed on an interim basis under the WTP First Application Order and fees in the amount of $676,650.00 and expenses in the amount of $12,482.99 sought in this Application.

41.    As stated on the record at the Confirmation Hearing, WTP has agreed to cap its compensation for legal services rendered in this case at $2,200,000.00, plus reimbursement of out of pocket expenses, provided that WTP receives payment of its allowed fees and expenses on or before

---

[1] This amount does not include the $85,000.00 in discretionary fee reductions made in WTP's exercise of billing discretion in the First Fee Application.

December 28, 2022 (the "Compensation Cap"). WTP accordingly seeks final approval of the Total WTP Fees and Costs, subject to the Compensation Cap on payment of WTP's legal fees (if applicable) of $2,200,000.00.

42. Further, as noted above, the Total WTP Fees and Costs are determined as of October 31, 2022. WTP incurred additional legal fees and reimbursable expenses after such date, including in connection with the hearing to consider confirmation of the Debtor's Second Amended Plan and its efforts to meet all conditions to closing on the sale of the Property to NVR. In the event that WTP does not receive payment of its allowed legal fees and expenses on or before December 28, 2022, WTP reserves the right to file a supplemental final fee application seeking approval of such additional amounts.

**WHEREFORE**, WTP respectfully requests that this Court enter an Order:

(a) Approving and allowing on a final basis compensation for WTP in the amount of $676,650.00 in legal fees and $12,482.99 in reimbursable expenses incurred during the Application Period;

(b) Approving and allowing on a final basis compensation for WTP in the amount of $1,671,090.50 in legal fees and $31,961.77 in reimbursable expenses allowed on an interim basis under the WTP First Application Order;

(c) Authorizing the Chapter 11 Trustee to pay to WTP all amounts approved and allowed in this Application, subject to the Compensation Cap;

(d) Authorizing WTP to file a supplemental final fee application seeking allowance of legal fees and reimbursable expenses incurred after October 31, 2022, in the event that WTP does not receive payment of amounts allowed in this Application on or before December 28, 2022, subject to the Compensation Cap; and

(e)    granting such other and further relief which is just and equitable.

Dated: November 23, 2022                    ZACHAIR, LTD.

                                            */s/ Bradford F. Englander*
                                            Whiteford, Taylor & Preston, LLP
                                            Bradford F. Englander, Esq., Bar No. 11951
                                            3190 Fairview Park Drive, Suite 800
                                            Falls Church, Virginia 22042
                                            Telephone: (703) 280-9081
                                            Facsimile: (703) 280-3370
                                            Email: benglander@wtplaw.com

                                            *Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing Application will be served electronically by the Court's CM/ECF system on the following parties:

- **Richard L. Costella**    rcostella@tydings.com, jmurphy@tydings.com
- **Marguerite Lee DeVoll**    mdevoll@watttieder.com, shope@watttieder.com
- **Bradford F. Englander**    benglander@wtplaw.com, twhitt@wtplaw.com
- **Philip Tucker Evans**    philip.evans@hklaw.com, kimi.odonnell@hklaw.com;hapi@hklaw.com
- **Nancy Greene**    ndg@ndglaw.com
- **Lawrence A. Katz**    lkatz@hirschlerlaw.com, llewis@hirschlerlaw.com
- **Patrick J. Kearney**    pkearney@sgrwlaw.com, jnam@sgrwlaw.com
- **Nicole C. Kenworthy**    bdept@mrrlaw.net
- **Michael J. Klima**    bankruptcy@peroutkalaw.com
- **Jennifer Larkin Kneeland**    jkneeland@watttieder.com, zsyed@watttieder.com
- **Michael J. Lichtenstein**    mjl@shulmanrogers.com, tlockwood@shulmanrogers.com
- **Jeffery Thomas Martin**    jtm@henrylaw.com, mbp@henrylaw.com
- **M. Evan Meyers**    bdept@mrrlaw.net
- **Kevin M. O'Donnell**    kmo@henrylaw.com, mbp@henrylaw.com;jtm@henrylaw.com
- **L. Jeanette Rice**    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- **Elizabeth Anne Scully**    escully@bakerlaw.com
- **Joseph Michael Selba**    JSelba@tydingslaw.com, jselba@tydings.com
- **Jeffrey L. Tarkenton**    Jeffrey.tarkenton@wbd-us.com, beverly.saint@wbd-us.com;cathy.hinger@wbd-us.com;mnemith@wbd-us.com;rahul.tilva@wbd-us.com
- **US Trustee - Greenbelt**    USTPRegion04.GB.ECF@USDOJ.GOV
- **Jacob Christian Zweig**    jzweig@evanspetree.com, crecord@evanspetree.com

I hereby further certify that on November 23, 2022, a copy of the foregoing Application was also served by first-class mail, postage prepaid, on the parties listed below.

Nabil J. Asterbadi
2726 Chain Bridge Road NW
Washington, DC 20016

Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770

Lawrence A. Katz
Hirschler Fleischer
8270 Greensboro Drive, Suite 700
Tysons, VA 22102

*/s/ David W. Gaffey*
David W. Gaffey, Esq.