## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "**Agreement**") is made and entered into effective as of July 1, 2024, by and among (1) Lawrence A. Katz, in his capacity as Plan Administrator[1] ("**Katz**" or "**Plan Administrator**"), (2) Maureen Bell Asterbadi ("**Mrs. Asterbadi**"), and (3) Nabil Asterbadi ("**Dr. Asterbadi**"). Katz, Mrs. Asterbadi, and Dr. Asterbadi are each referred to herein as a "**Party**" and together as the "**Parties**".

## RECITALS

WHEREAS, on January 17, 2020, Zachair, Ltd. ("**Zachair**") filed a petition commencing bankruptcy case number 20-10691 (the "**Main Case**") in the United States Bankruptcy Court for the District of Maryland, Greenbelt Division (the "**Court**");

WHEREAS, on August 31, 2022, Zachair filed the *Debtor's Second Amended Plan of Reorganization* (as confirmed, the "**Plan**") in the Main Case [Doc. 365];

WHEREAS, on November 10, 2022, the Court entered that certain *Order Approving Appointment of Chapter 11 Trustee* [Doc 420], whereby Katz was appointed as chapter 11 trustee for Zachair;

WHEREAS, on November 15, 2022, the Court entered that certain *Order Confirming Debtor's Second Amended Plan of Reorganization and Finally Approving Sale of Property Free and Clear of Liens, Claims, Encumbrances and Other Interests* [Doc. 422] (the "**Confirmation Order**");

WHEREAS, pursuant to the Confirmation Order, Katz became the Plan Administrator on the Effective Date of the Plan;

WHEREAS, on January 16, 2023, Katz filed with the Court that certain *Complaint (I) To Recover Shareholder Loans, (II) For Breach Of Fiduciary Duty, And (III) For Unjust Enrichment* (the "**Complaint**"), commencing adversary proceeding number 23-00014 (the "**Adversary Proceeding**");

WHEREAS, after the commencement of the Adversary Proceeding, Mrs. Asterbadi acquired and became the Holder of the Allowed Unsecured Claims listed on the following chart and filed a claim transfer notice for each with the Court as indicated (the "**Acquired MBA Claims**"):

| Name | Allowed Amount | Transfer Notice Docket No. |
|---|---|---|
| Womble Bond Dickinson (US) LLP Attn: Opel Benoit | $172,414.47 | Doc 515 |
| PD Hyde | $3,200,000.00 | Doc 510 |

---

[1] Unless otherwise indicated, capitalized terms shall have the meanings ascribed them in the Plan and Confirmation Order (each defined below).

| Dewberry Consultants LLC / Dewberry Engineers, Inc. | $47,466.60 | Doc 532[2] |
|---|---|---|
| Verizon Wireless Verizon Wireless Correspondence Team | $1,497.65 | Doc 537 |
| Pepco | $881.15 | Doc 536 |
| Maryland Department of the Environment | $1,000.00 | Doc 534 |
| Imperial PFS | $1,051.50 | Doc 533 |
| Fry, Michael C. | $1,687.24 | Doc 535 |
| Clinton Fence | $1,054.00 | Doc 531 |
| Arlyn Construction Co | $1,753.00 | Doc 530 |
| Washington Suburban Sanitary Commission | $142.45 | Doc 549 |
| Total | $3,428,948.06 | |

WHEREAS, Mrs. Asterbadi filed a proof claim (POC 20-1) in the Main Case for a general unsecured claim in the amount of $0 (the "**Filed MBA Claim**" and together with the Acquired MBA Claims, the "**Allowed MBA Claims**");

WHEREAS, the Parties (over the course of several months) have agreed to settle all disputes and matters between and among them in the Main Case, Adversary Proceeding and otherwise, by (as further detailed below): (a) imposing a cap (and floor) on the amount of the distribution to Mrs. Asterbadi on account of the Allowed MBA Claims equal to $175,000 and distributing said sum to her as set forth herein, (b) an initial distribution by Katz of funds in the Estate, less a reasonable reserve for wind-down expenses, (c) Court-ordered recognition of the abandonment of all right, title, and interest by Zachair and the Plan Administrator in the 2014 Mercedes Benz GL63 SUV, VIN No. 4JGDF7EE3EA300402, and 2015 Mercedes SL65 AMG Roadster, VIN No. WDDJK7KAXFF035220 (together, the "**Vehicles**") (as well as the lack of any form of liability by Zachair and the Plan Administrator relating to the Vehicles and assumption by Dr. Asterbadi of all such liability), (d) subordination (to all other Claims in the Main Case) of the $7,000 Allowed Unsecured Claim of Dr. Asterbadi (POC No. 19), (e) pursuit by Katz of the reimbursement of certain expenses from NVR, Inc. ("**NVR**"), as he deems appropriate, with any recoveries (net of attorney's fees and expenses) to be distributed solely to holders of Allowed Unsecured Claims other than the Allowed MBA Claims; (f) mutual releases, and (g) assumption by Dr. Asterbadi and Mrs. Asterbadi of Zachair federal and state income tax liabilities (recognizing that none of the Parties are presently aware of any such liabilities) as set forth herein; and

WHEREAS, the Parties have reached this Agreement at arms' length and in good faith, without any coercion or undue influence, with the benefit of their respective independent legal counsel.

---

[2] A duplicate "claim" of Dewberry Consultant's, LLC was docketed on August 24, 2020 [POC No. 22]. The docketed "claim" was not accompanied by the Official Proof of Claim form; instead, the "claim" consisted of the proposal between Zachair and Dewberry which formed the basis of Dewberry's claim. Notwithstanding the foregoing, Mrs. Asterbadi acquired Dewberry's claim (evidenced by POC Nos. 15 and 22) in the aggregate amount of $47,466.60.

2

## THE AGREEMENT

NOW, THEREFORE, in consideration of the mutual releases set forth herein and other good, fair, and reasonably equivalent value and consideration, which the Parties agree is good and valuable consideration for the various covenants and understandings set forth in this Agreement, the Parties hereby agree as follows:

1. Court Approval. The Parties acknowledge that this Agreement requires approval by the Court. Within five (5) calendar days after full execution of this Agreement by the Parties, the Parties shall file a joint motion ("**Settlement Motion**") with the Court in the Main Case seeking entry of a final order approving this Agreement (the "**9019 Order**"), which shall expressly (i) approve the terms and conditions of this Agreement in all respects; and (ii) authorize and direct the Parties to take actions appropriate to consummate the transactions set forth in this Agreement. The 9019 Order shall be in form and substance acceptable to the Parties. The Plan Administrator shall serve the Settlement Motion on the Office of the United States Trustee, the full mailing Matrix, and any other current or former party-in-interest as determined by the Plan Administrator or requested by Dr. and Mrs. Asterbadi.

2. Dismissal of Adversary Proceeding. Within five (5) calendar days after the 9019 Order becoming final, non-appealable and not subject to a stay (the "**Approval Settlement Date**"), the Parties shall file, for the Court to sign and enter, a stipulated order dismissing the Adversary Proceeding with prejudice, with the Parties bearing their own costs (the "**Dismissal Stipulation**"). Notice of the occurrence of the Approval Settlement Date may be filed in the Main Case by any Party or the Parties jointly (with notice solely via ECF and as may otherwise be agreed to by the Parties).

3. Subordination of Claim of Dr. Asterbadi. Immediately upon the occurrence of the Approval Settlement Date (a) the $7,000 Allowed Unsecured Claim of Dr. Asterbadi (POC No. 19) shall be deemed to be (and shall be) subordinated to all other Allowed Unsecured Claims. For the sake of clarity, and except as otherwise set forth in this Agreement, the subordinated claim of Dr. Asterbadi shall not be entitled to any recoveries or payments from the Plan Administrator, Zachair, or otherwise (regardless of source) until all (a) post-confirmation liabilities of the Plan Administrator and Zachair and (b) Allowed Claims are paid in full.

4. Cap/Floor on Distributions on Account of the Allowed MBA Claims. Mrs. Asterbadi shall be entitled to receive distributions on account of the Allowed MBA Claims in the aggregate amount of $175,000.

5. Initial Distribution by the Plan Administrator. Within five (5) business days after the Approval Settlement Date, the Plan Administrator shall (a) pay the Allowed Priority Unsecured Claim of the Internal Revenue Service in the amount of $6,038.07 (POC No. 3-6) (the "**IRS Claim**") and (b) make an initial pro rata distribution to all holders of Allowed Unsecured Claims in the aggregate amount of $185,000 (the "**Initial Pro Rata Distribution**"). For the avoidance of doubt, the Plan Administrator shall make distributions in accordance with the below pro rata amounts and projected distributions:

3

| Allowed Unsecured Claim(s) | Amount of Claim | Pro Rata Percentage | Pro Rata Percentage after Payment of MBA Allowed Claims | Projected Initial Pro Rata Distribution |
|---|---|---|---|---|
| Allowed MBA Claims | $3,428,948.06 | 95.72% | | $175,000 |
| American Express | $42,208.43 | 1.18% | 27.50% | $2,750 |
| Meyers Rodbell Rosenbaum | $110,736.60 | 3.09% | 72.15% | $7,215 |
| Nabil Asterbadi | $0.00[3] | 0% | 0% | $0 |
| Comcast | $528.43 | 0.01% | 0.35% | $35 |
| Grayhound Trash Removal | $0.00[4] | 0% | 0% | $0 |
| State Farm | $0.00[5] | 0% | 0% | $0 |
| TOTAL CLAIMS | $3,582,421.52 | | | $185,000 |

6. Vehicles: Immediately upon the occurrence of the Approval Settlement Date, all right, title and interest of the Plan Administrator, Zachair and the bankruptcy estate in and to the Vehicles shall be deemed abandoned to Dr. Asterbadi for all purposes, and neither the automatic stay nor the discharge injunction shall impede the rights of TD Auto Finance or Mercedez Benz Financial Services USA, LLC, or their respective successors and assigns, to take possession of or dispose of the Vehicles in accordance with applicable non-bankruptcy law. For the avoidance of doubt, neither the Plan Administrator, Zachair nor the bankruptcy estate, nor any of their respective attorneys, accountants, or other professional advisors, shall retain any form of liability relating to or arising out of the Vehicles, and Dr. Asterbadi shall assume all such liability. The 9019 Order shall confirm that pursuant to the Plan and Confirmation Order, the Vehicles were abandoned by the Plan Administrator and Zachair, and that neither the Plan Administrator nor Zachair (nor any

---

[3] Dr. Asterbadi has agreed that his Allowed Unsecured Claim shall be subordinated. It is thus not entitled to receive distributions until all unsubordinated Allowed Unsecured Claims have been paid in full.

[4] Grayhound Trash Removal, Inc. ("GTR") filed a voluntary chapter 7 bankruptcy proceeding on August 19, 2022 (Case No. 22-14553) in the United States Bankruptcy Court for the District of Maryland, Baltimore Division. Cheryl Rose, the Chapter 7 Trustee, filed her Final Report Before Distribution on March 22, 2024 [Doc 66]. GTR's Allowed Unsecured Claim is $108.30. Because the projected distribution on account of GTR's Allowed Unsecured Claim is *de minimis* (approximately $15) and will cause the GTR estate to incur administrative expenses in excess of the projected distribution, Ms. Rose has requested that no distribution be made on account of GTR's Allowed Unsecured Claim.

[5] In accordance with the Consent Order Resolving Treatment of the Scheduled Claim of State Farm Mutual Automobile Insurance Company as to Zachair Ltd. [Doc 552], the State Farm claim is disallowed.

4

of its creditors, save Dr. Asterbadi) shall have any form of liability relating to the Vehicles, and Dr. Asterbadi assumes all such liability.

7. <u>Net NVR Expense Recovery.</u> Pursuant to paragraph 8 of the Order Granting NVR, Inc.'s Emergency Motion to Enforce (DE 383), Approving the Sale of the Debtor's Property Free and Clear of Liens, Claims, Interests and Encumbrances to NVR, Inc., and Directing the Debtor to Execute and Perform under the NVR Contract [Doc. 404], Katz has asserted that he is entitled to seek reimbursement from NVR for expenses incurred in connection with the maintenance of the Property, up to $100,000. Katz has indicated that he shall seek reimbursement from NVR for all eligible expenses ("**NVR Expense Recovery**"). Any fees incurred by Katz or his professionals to pursue the NVR Expense Recovery shall be deducted from the NVR Expense Recovery (if any) and shall not be chargeable against any other Estate assets. The Net NVR Expense Recovery (if any) shall be distributed on a pro rata basis to American Express, Meyers Rodbell Rosenbaum and Comcast on account of their respective Allowed Unsecured Claims (collectively, the "**Third Party Allowed Unsecured Claims**").

8. <u>Supplemental Distributions.</u> Katz shall make one or more supplemental pro rata distributions of the Net NVR Expense Recovery (if any) and any additional amounts remaining after the wind-down of the estate to the holders of Third Party Allowed Unsecured Claims, in such amounts and at such times as Katz shall determine in his sole discretion.

9. <u>Mutual Releases.</u> For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the releases set forth herein shall become immediately effective upon the occurrence of the Approval Settlement Date, filing of the Dismissal Stipulation, and completion of the Initial Pro Rata Distribution. The Parties understand and agree that the following mutual releases are given by each of them on behalf and for the benefit of themselves and, to the extent applicable, their respective directors, officers, employees, agents, attorneys of record in the Main Case and Adversary Proceeding ("**Counsel of Record**"), affiliates, successors and assigns, as well as on behalf of any subsidiary or affiliated company, firm or partner of any of them. The scope of the releases set forth below includes claims and matters that are or, if commenced, would be, in any way shape or form related to the Main Case and/or Adversary Proceeding, and all matters that were or could have been raised or asserted between or among the Parties in connection with the Main Case and/or Adversary Proceeding. It is the intention of the Parties to release one another from all claims. Expressly excluded from the scope of the releases are the obligations of each Party to comply with the terms of this Agreement and the rights of each Party to enforce the terms of this Agreement.

    a. To the fullest extent permitted by law, Dr. Asterbadi and Mrs. Asterbadi hereby release and forever discharge Zachair (whether as debtor-in-possession or otherwise) and the Plan Administrator and his affiliates, partners, parent entities, agents and assigns, and each of their officers, directors, employees, agents, trustees, employees, Counsel of Record, accountants and representatives of any kind (the "**Plan Administrator Released Parties**"), from each and every right, claim, debt and cause of action, whether asserted or unasserted, known or unknown, arising out of or relating to any claims that Dr. Asterbadi and/or Mrs. Asterbadi has, had, or may have against the Plan Administrator Released Parties.

b. To the fullest extent permitted by law, the Plan Administrator (on behalf of himself as Plan Administrator, and on behalf of Zachair) hereby releases and forever discharges Dr. and Mrs. Asterbadi, and their affiliates, partners, parent entities, agents and assigns, and each of their officers, directors, employees, agents, trustees, employees, Counsel of Record, accountants and representatives of any kind (the "Asterbadi Released Parties"), from each and every right, claim, debt and cause of action, whether asserted or unasserted, known or unknown, arising out of or relating to any claims that the Plan Administrator or Zachair (whether as debtor-in-possession or otherwise) had, has, or may have against the Asterbadi Released Parties.

10. Federal and Maryland Income Tax Liabilities. The Parties represent to each other that (a) they are unaware of any federal income tax liabilities of Zachair other than the IRS Claim and (b) the *Consent Order Resolving Treatment of the Scheduled Claim and the Related Tax Due to the Comptroller of the State of Maryland as to Zachair Ltd.* [Doc 516] controls the treatment of the scheduled claim of the Comptroller of the State of Maryland and related taxes. Nevertheless, and notwithstanding anything to the contrary, effective upon the occurrence of the Approval Settlement Date, filing of the Dismissal Stipulation, and completion of the Initial Pro Rata Distribution, Dr. and Mrs. Asterbadi shall be liable for unpaid federal income tax debts (if any) and unpaid Maryland income tax liabilities (if any) of Zachair. For clarity, this liability excludes the IRS Claim, which shall be paid by the Plan Administrator pursuant to paragraph 5 hereof.

11. Limited Representations and Warranties. The representations of the Parties are limited to the following, each subject to the terms of this Agreement, including Court approval as provided in herein: (a) no Party has assigned, transferred, or conveyed any rights or claims it may have against any other Party to any other person or entity; (b) each of the Parties has full power and authority to enter into and perform this Agreement without the consent of or duty to notify any other person, entity, or regulatory authority (save the Court approval and notice provisions set forth herein); (c) each person signing this Agreement is duly authorized and has legal capacity to execute and deliver this Agreement; and (d) the execution and delivery of this Agreement and the performance of such Party's obligations hereunder have been duly authorized and the Agreement is a valid and legal agreement binding on such Party and enforceable in accordance with its terms. For the avoidance of doubt, the Plan Administrator's authority to bind anyone is effective only upon entry of the Settlement Order and the occurrence of the Approval Settlement Date.

12. No Other Representations or Warranties. The only representations and warranties of the Parties are those set forth in the immediately preceding paragraph. It is agreed that Dr. Asterbadi, Mrs. Asterbadi and the Plan Administrator are completely familiar with all relevant matters related to their relationships (and to the extent they may not be so familiar, such lack of familiarity shall have no bearing on this settlement, this Agreement, or the releases provided for herein), have read this Agreement and have consulted legal counsel, or knowingly chose not to consult legal counsel, before executing same; they have relied upon their own due diligence (or lack thereof) and judgment and/or that of their respective legal counsel in executing this Agreement and have not relied on or been induced by any representation (save the representations in the preceding paragraph of this Agreement), statement or act by any other party. Each Party enters into the

Agreement voluntarily, with full knowledge of its significance. The Agreement is in all respects complete and final (subject only to Court approval as set forth above).

13. Legal Fees and Costs. Each Party shall pay its own respective costs and attorneys' fees incurred with respect to this Agreement, the Main Case and the Adversary Proceeding.

14. Non-Compliance. In the event a Party fails to comply with the terms of this Agreement, then the Party failing to comply with the terms of this Agreement agrees and promises to pay all of the legal fees and expense of the Party who complied with the Agreement and had to enforce its rights under the Agreement.

15. Entire Agreement. This Agreement constitutes the entire agreement with respect to the subject matter addressed herein and supersedes any prior written and/or verbal agreements between the Parties.

16. Amendments. This Agreement may not be orally modified altered, amended, or vacated without written consent of the Parties.

17. Headings. All headings and captions in this Agreement are for convenience only and shall not be interpreted to enlarge or restrict the provisions of this Agreement.

18. Waiver and Modification. The failure of the Parties to insist, in any or more instances, upon the strict performance of any of the covenants of this Agreement, or to exercise any option herein contained, shall not be construed as a waiver, or a relinquishment for the future of such covenants or option, but the same shall continue and remain in full force and effect.

19. Jurisdiction and Choice of Law. By this Agreement, each of the Parties submits to the jurisdiction of the Court for any action to enforce or interpret this Agreement. This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland as to all matters (regardless of the laws that might otherwise govern under applicable conflict of laws principles). The Parties waive all rights to alternative dispute resolution. The Parties waive any rights to a jury trial.

20. Counterparts and Electronic Signatures. This Agreement may be executed in counterparts and all such counterparts when so executed shall together constitute the final Agreement as if one document had been signed by all of the Parties. This Agreement may be executed by an electronic or facsimile copy and each signature thereto shall be and constitute an original signature, as if all Parties had executed a single original document.

21. Language Construed as Jointly Drafted by the Parties. The Parties hereby acknowledge that each of them has had a full opportunity to participate in the drafting of this Agreement and, accordingly, any claimed ambiguity shall be construed neither for nor against any of the Parties.

22. No Admission of any Liability for Wrongdoing. The Parties acknowledge and agree that this Agreement is not an admission by any Party of any wrongdoing or liability in connection with the Complaint, Adversary Proceeding or otherwise. The 9019 Order shall so provide.

23. <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and (as applicable) their respective executors, heirs, successors and assigns, and, any subsequently appointed Chapter 7 Trustee (or any other bankruptcy trustee or debtor-in-possession).

**IN WITNESS HEREOF,** the Parties hereto have executed this Agreement under seal on the day and year set forth above.

By: */s/ Lawrence A. Katz*
Name: Lawrence A. Katz Plan Administrator


By: _____
Name: Nabil Asterbadi


By: _____
Name: Maureen Bell Asterbadi

23. <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and (as applicable) their respective executors, heirs, successors and assigns, and, any subsequently appointed Chapter 7 Trustee (or any other bankruptcy trustee or debtor-in-possession).

   **IN WITNESS HEREOF**, the Parties hereto have executed this Agreement under seal on the day and year set forth above.

By: _____
Name: Lawrence A. Katz Plan Administrator

By: _____
Name: Nabil Asterbadi

By: _____
Name: Maureen Bell Asterbadi

8